## IN THE CIRCUIT COURT FOR BALTIMORE COUNTY, MARYLAND

**ASHLY ALEXANDER**
12 Stoneridge Court, Unit 26
Baltimore, MD 21239-1339

    *On behalf of herself individually and*
    *similarly situated persons.*

    Plaintiff

*v.*

**CARRINGTON MORTGAGE SERVICES,
LLC**
599 West Putnam Ave.
Greenwich, CT 06830
<u>SERVE ON:</u>
The Corporation Trust, Incorporated
2405 York Road, Suite 201
Lutherville-Timonium, MD  21093-2264

    Defendant

Civil Case: ___C-03-CV-20-002729___

---

### CLASS ACTION COMPLAINT
### &
### REQUEST FOR JURY TRIAL

---

    Plaintiff Ashly Alexander ("**Alexander** or "**Named Plaintiff**"), on her individual behalf and on behalf of similarly situated individuals defined *infra*, by her attorneys, Phillip R. Robinson and the Consumer Law Center LLC and pursuant to MD. RULE 2-231, sues Carrington Mortgage Services LLC ("**Carrington**" or "**Defendant**").  Alexander, on behalf of herself and similarly situated persons, demands a trial by Jury on all counts for which a right to trial by jury is allowed and, in support of her Class Action Complaint, states:

<u>INTRODUCTION</u>

1.      In instances, such as the underlying matters involving Carrington, the mortgage servicer places its interest and pattern of unsafe and unsound mortgage service practices above the remedial rights of homeowners and consumers.  Moreover, Carrington unfairly and deceptively ignores its statutory and contractual duties including those which were agreed to as part of its license to legally operate in the State of Maryland.

2.      In this action Carrington has imposed certain fees and charges onto the residential mortgage accounts of Alexander and the putative class members she seeks to represent for accepting payments by telephone and/or by the Internet.  These so-called convenience fees to accept payments of consumer debts by telephone or over the Internet are not authorized by the documents governing the Plaintiff's loan, Maryland law, and the putative class members' loans.  In addition,

a.      Since the consumer debts subject to this action involve mortgage loans and related real property in the State of Maryland, the statute of frauds that applies in Maryland does not permit the Defendant to impose and charge fees that are not memorialized in a written agreement.  Further, as a licensed Maryland mortgage lender Carrington is barred from altering the agreements governing its relationships with Alexander and the putative class members unless any such agreement is in writing and executed by all the parties.  Md. Code Regs. 09.03.06.08.

b.      The so-called convenience fees are an unlawful profit center imposed and collected by Carrington and are not simply pass-through costs to Alexander and the putative class members.  Rather, they represent materially excessive sums over Carrington's actual costs to accept a fee by electronic means over the phone or over the Internet.  Carrington's actual costs to its various vendors who facilitate the telephonic and electronic payments charge pennies for the transaction, but Carrington imposes fees ranging from 10 to 50 times more than its actual costs.

3.      As a result of Carrington's practices described herein, Alexander and the putative class members have sustained damages and losses since their rights and protections under the law have been disregarded by Carrington.  These damages and losses include the imposition and collection of fees by Carrington which it has no right to impose and collect.

## JURISDICTION AND VENUE

4.       This Court has jurisdiction asserted for the claims herein because Carrington transacts business, performs work in, and has interest in real property, and provides services in Maryland and Baltimore County, Maryland.   *See e.g. Pacific Mortg. and Inv. Group, Ltd. v. Horn*, 100 Md.App. 311, 324 (Md.App.,1994)(a person who "buys and sells [] mortgage liens has done more than merely transacted business…but has, in fact, carried on a regular business").

5.      This Court also has jurisdiction for the claims asserted because the injuries caused by Carrington to the Plaintiff and certain of the putative class members occurred in Maryland.

6.      Further, Carrington owns real property, or has an interest in real property in the State of Maryland and Baltimore County thereby subjecting itself to the jurisdiction of this Court.

7.      The Court has declaratory judgment authority pursuant to CTS & JUD. PROC. § 3-409.

## PARTIES

8.       Plaintiff Ashly Alexander ("Alexander") is a natural person who owns the real property known as 12 Stoneridge Ct., Unit 26 Baltimore, MD 21239 ("Alexander Property").  Alexander is also the borrower on the mortgage loan subject to this action which is associated with the Alexander Property and was utilized entirely for personal, consumer purposes ("Alexander Loan").  The Alexander Loan is a federally related mortgage.

9.      Defendant Carrington is a collector and a licensed mortgage servicer in the State of Maryland (NMLS Lic. No. 17404). Carrington is also a subsidiary of its parent company, Carrington Holding Company ("CHC"). CHC describes itself as a holding company "whose primary businesses work in sync with one another to provide a broad range of real estate services encompassing nearly all aspects of single-family residential real estate transactions in the United States." (*see* https://carringtonhc.com/about-us/ (last visited June 9, 2020)). Carrington qualifies as a mortgage servicer pursuant to 12 C.F.R. § 1024.2 since it holds and is responsible for the servicing Alexander's federally related mortgage loan (as that term is defined by 12 U.S.C.A. § 2602(1)). In relation to the Alexander Loan and certain putative class members, Carrington qualifies as a "lender" pursuant to COM. LAW § 12-101(f).

## FACTUAL ALLEGATIONS

### *General Allegations About Carrington's Knowledge*

10.     All persons, including licensed mortgage lender/servicers in the State of Maryland like Carrington, are expected to know the law—including the laws governing their activities.  As part of its license to even conduct business in the State of Maryland, Carrington "has a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, servicing, purchase, or sale of any mortgage loan." MD. CODE REGS. 09.03.06.20. Alexander and other Maryland borrowers like Alexander are third party beneficiaries of MD. CODE REGS. 09.03.06.20.

11.     The Court of Appeals in 2005 recognized that a real estate professional who had no direct communication with a borrower nevertheless had a duty to the consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the true facts in the real estate transaction on which the borrower (and other parties) would rely in

order to complete the transaction.  *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005).  This duty of care applies to Carrington as its work involves secured, consumer mortgage loans subject to Maryland and Federal laws those discussed herein.

12.     Pursuant to 12 C.F.R. § 1024.38(b)(1)(i), Carrington is required to "[p]rovide accurate and timely disclosures to a borrower as required by [12 C.F.R. § 1024.38] or other applicable law."  Pursuant to 12 C.F.R. § 1024.35(b)(5), Carrington is not permitted to "impos[e]… a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower."  It is unreasonable and a violation of its duties for Carrington to impose and collect sums never properly agreed to by the borrower pursuant to Md. Code Regs. 09.03.06.08.

13.     Pursuant to 12 U.S.C.A. § 2605(k)(1)(C)(E), Carrington has duties to the Plaintiff and putative class members to (i) take appropriate steps to avoid foreclosure (and not churn the collection of fees and costs not permitted under the law or actually incurred) and (ii) comply with any other obligation(s) found by the Bureau of Consumer Financial Protection (by regulation) to be appropriate to carry out the consumer protection purposes of 12 U.S.C.A. § 2605.  Amongst these obligations are the servicer's duties to comply with state laws and regulations that are not expressly preempted by RESPA; in other words, Congress and the CFPB expressly intended for RESPA to work in concert with state regulation.  *See e.g.*  12 U.S.C.A. § 2605(h) and 12 C.F.R. § 1024.33(d) (expressly limiting preemption to certain notice issues).

14.     The Maryland Mortgage Fraud Protection Act, REAL PROP. § 7-401, *et seq.*, establishes a statutory duty upon Carrington to disclose to mortgage borrowers, homeowners, and its predecessor servicers with respect to the mortgage lending process in an honest and truthful manner.  *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 531 (D. Md. 2013); *Castle v. Capital One, N.A.*, No. CIV.A. WMN-13-1830, 2014 WL 176790, at *5 (D.

Md. Jan. 15, 2014; *Stovall v. SunTrust Mortgage, Inc.*, No. CIV.A. RDB-10-2836, 2011 WL 4402680 (D. Md. Sept. 20, 2011).

**Factual Allegations Relevant to Plaintiff Alexander**

15.     Alexander acquired the Alexander Property with Sydney Wright on November 2, 2005.  The couple financed their purchase of the Alexander Property in part with an extension of credit in the sum of $200,000.00 made on the same date by America's Wholesale Lender ("Alexander Loan").  The proceeds of the Alexander Loan were utilized entirely for personal, consumer purposes by Alexander and Wright. After the death of Ms. Wright, Alexander became the sole owner of the Alexander Property on October 23, 2017.

16.     The Alexander Loan was assigned to The Bank of New York Mellon, f/k/a the Bank of New York as Trustee for the Certificateholders of the CWABS Inc., Asset-Backed Certificates, Series 2005-13 on or about February 24, 2012. The Alexander Loan was subsequently transferred to The Bank of New York Mellon, f/k/a the Bank of New York as Trustee for registered Holders of CWABS Inc., Asset-Backed Certificates, Series 2005-13 ("CWABS").

17.     Carrington was retained by CWABS to service the Alexander Loan.

18.     The Alexander Loan does not permit Carrington to charge convenience fees for accepting payments from Alexander related to the Alexander Loan by telephone or by the Internet. None of the loan documents governing the Alexander Loan (which include the Note, the Deed of Trust, and the modification dated  effective January 1, 2016) permit Carrington to charge convenience fees for accepting payments from Alexander by telephone or by the Internet.

19.     Notwithstanding that there is no written agreement between Alexander and Carrington for Carrington to impose and collect convenience fees from Alexander, Carrington has

done so without the right to do so.  Specifically, Carrington has imposed and collected from Alexander convenience fees for collecting her payments on the Alexander Loan over the internet on the following dates: 9/16/2019, 8/30/2019, 7/1/2019, 6/3/2019, 4/8/2019, 3/4/2019, 2/4/2019, 1/3/2019, 12/3/2018, 11/5/2018, and 10/2/2018.

20.     In each of the payments identified in the previous paragraph, a portion of Alexander's payments were partial payments to her then outstanding unpaid indebtedness then due under the Alexander Loan.

21.     In 2019 Alexander became aware that she had been paying additional convenience fees to Carrington while making her payments online, but was not sure the basis of the charge. Trying to be proactive, she contacted Carrington by letter on September 3, 2019 pursuant to 12 U.S.C.A. § 2605(e), 12 CFR §1024.35, and 12 CFR §1024.36. Alexander requested that Carrington explain the following:

        a.     What the "default costs paid" represented in the first statement Carrington sent her;

        b.     What authorized Carrington to charge the convenience fees to accept payments electronically, since none of the documents governing the loan (i.e., the Note, the Deed of Trust, and the modification) authorized such costs;

        c.     How much (if anything) it actually cost Carrington to take Alexander's payments electronically; and

        d.     An accounting of the fees which Alexander had paid on the loan since Carrington acquired servicing.

22.     Carrington received the letter at the address it has designated for correspondence under RESPA on September 6, 2019.

23.     Carrington responded to Alexander's letter on September 20, 2019. It made the following representations in response to her inquiries.

       a.     Carrington represented that the "default costs paid" were uncollected fees advanced by the prior servicer in July and August 2016, which were owed at the time the loan transferred.

       b.     Carrington represented in conclusory terms that the fees it charged for electronic payments were "reasonable;" were "permitted by law;" and were acceptable because other companies charged such fees.

       c.     Carrington made no response to Alexander's inquiry about whether the governing loan documents permitted convenience fees.

24.     Carrington never refunded the convenience fees it took from Alexander.

25.     The Alexander Loan is not satisfied.

26.     Alexander has been damaged and sustained losses as a proximate cause of Carrington's improper, unfair, and/or deceptive practices in relation to the collection of the Alexander Loan including payment and collection of convenience fees not permitted as a matter of Maryland law and the terms and conditions of the Alexander Loan. Alexander has also suffered informational injuries as a result of Carrington's conduct related to information Congress and the General Assembly found to be relevant and material under Federal and State laws. Carrington's knowing retention of the funds it took and failure to acknowledge that the loan documents did not authorize it to demand or collect a convenience fee even after directly asked by Alexander created uncertainty, frustration, worry, and fear for Alexander who was denied the information identified by Congress and the General Assembly as necessary in the mortgage servicing arena and as vital to the successful achievement of the goals intended for the remedial laws at issue and are the ones

most critical for consumers, without which consumers suffer the most significant harm or risk of harm.   Congress could not have given a clearer indication of its determination that this informational injury creates a material case or controversy by permitting Alexander to recovery statutory damages as a result of the violations subject to this action.

27.     Alexander is also entitled to statutory damages as discussed *infra*.

<strong><u>CLASS ALLEGATIONS</u></strong>

28.      The Named Plaintiff brings certain claims, *infra*, on behalf of classes of similarly situated persons related to Defendant Carrington under MD. RULE 2-231 defined as follows:

      a.      **Maryland Usury Fee Class:**  Alexander proposes, as the definition of the Maryland Convenience Fee Class, that it be defined as follows:

> Those persons in the State of Maryland for whom for whom (i) Carrington has acted as a maker of a mortgage loan related to a secured, mortgage loan at any time or a mortgage servicer of a mortgage loan owner related to a secured, mortgage since January 1, 2019; (ii) where Carrington charged their mortgage loan accounts with convenience fees for it to accept whole or partial payments; and (iii) the mortgage loan accounts had not been satisfied more than six months before the commencement of this action.

      b.      **Maryland MCDCA Class:** Alexander proposes, as the definition of the MCDCA Class, that it be defined as follows:

> All individuals in Maryland who since October 1, 2018 (i) paid a "convenience fee," (ii) collected in whole or in part by Carrington, (iii) in order to make a payment on a residential mortgage debt, and (iv) where the term "convenience fee" was not specifically enumerated in the original agreement creating such debt.

29.     Alexander qualifies as a member of the Maryland Usury Fee Class and the Maryland MCDCA Class and proposes to be appointed by the Court as the Named Plaintiff for the Maryland Usury Fee Class and the Maryland MCDCA Class.

9

30.     Excluded from each of the putative classes are any person who falls within the definitions if the person is (i) an employee or independent contractor of Carrington; (ii) a relative of an employee or independent contractor of Carrington; or (iii) an employee of the Court where this action is pending.

31.     The Maryland Usury Fee Class and the Maryland MCDCA Class definitions in ¶ 28 as limited by ¶ 30 may be amended or modified.

32.     The particular members of the (i) Maryland Usury Fee Class and (ii) the Maryland MCDCA Class are capable of being described without difficult managerial or administrative problems.  The members of the putative classes are also readily identifiable from the information and records in the possession or control of Carrington or its affiliates and agents and from public records.  Carrington is required to maintain this information for the entire class periods. *See e.g.* Md. Code Regs. 09.03.06.04.

33.     The putative classes are sufficiently numerous and exceed more than one hundred persons each, such that individual joinder of all members is impractical.  This allegation is based on a data search of public records which identify that thousands of public complaints have been filed against Carrington showing that it services more than one hundred residential, mortgage loans and was the maker of more than 100 loans in Maryland.

34.     There are questions of law and fact common to the (i) Maryland Usury Fee Class and (ii) the Maryland MCDCA Class which predominate over any questions affecting only individual members of the putative classes. The wrongs alleged against Carrington by (i) Maryland Usury Fee Class and (ii) the Maryland MCDCA Class members and the remedies sought by Named Plaintiff and the putative class members against the Carrington are identical.

35.     The common questions of law or fact for the Maryland Usury Fee Class include but are not limited to:

        a.      Whether Carrington is entitled to convenience fees on the mortgage loan accounts of the Usury Convenience Fee Class members for accepting whole or partial payments from the class members by telephone or the Internet;

        b.      Whether Carrington is entitled to demand convenience fees on the mortgage loan accounts of the Usury Convenience Fee Class on its behalf or on behalf of another;

        c.      Whether this Court may declare that Carrington's practices and policies concerning the assessment of convenience fees for accepting whole or partial payments against the mortgage loan accounts of the Usury Convenience Fee Class members violate COM. LAW § 12-105(d);

        d.      Whether the convenience fee charges by Carrington the Named Plaintiff's and Usury Convenience Fee Class members' accounts constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k); and

        e.      Whether Carrington is liable for statutory damages pursuant to the Usury Convenience Fee Class members pursuant to COM. LAW § 12-121(a)(1)(ii) for each instance in which Freedom has imposed improper convenience fees upon the Usury Convenience Fee Class members.

36.     The common questions of law or fact for the Maryland MCDCA Class include but are not limited to:

        a.      Whether Carrington qualifies as a "collector" as that term is defined under the MCDCA;

b.      Whether Carrington's conduct, directly or indirectly, violated the MCDCA;

c.      Whether the members of the class are entitled to the convenience fees col-

lected from them as actual damages.

37.    Carrington's defenses (which defenses are denied) would be typical or identical for

each of the member of (i) Maryland Usury Fee Class and (ii) the Maryland MCDCA Class will be

based on the same legal and factual theories.

38.    Certification of (i) Maryland Usury Fee Class and (ii) the Maryland MCDCA Class

under MD. RULE 2-231 is appropriate as to the members of the putative classes in that common

questions predominate over any individual questions and a class action is superior for the fair and

efficient adjudication of this controversy.

39.    A class action will cause an orderly and expeditious administration of claims by the

members of the (i) Maryland Usury Fee Class and (ii) the Maryland MCDCA Class and economies

of time, effort and expenses will be fostered and uniformity of decisions will be insured.

40.    The only individual questions concern the identification of members of the (i) Mar-

yland Usury Fee Class and (ii) the Maryland MCDCA Class.  This information can be determined

by a ministerial examination of public records or from Carrington's business records or other

sources, which are admissible as an exception to the hearsay rule and as a statement by a party.

41.    Alexander's class claims are typical of the claims of the (i) Maryland Usury Fee

Class and (ii) the Maryland MCDCA Class members pursuant to MD. RULE 2-231 since they are

based on and arise out of identical facts constituting the wrongful conduct of the Carrington (di-

rectly and indirectly).

42.     Alexander will also fairly and adequately represent and protect the interests of (i) the Maryland Usury Fee Class and (ii) the Maryland MCDCA Class.  Alexander is similarly situated with, and has suffered similar injuries as, the putative classes she proposes to represent. She has also retained counsel experienced in consumer class actions including actions involving unlawful collection and mortgage servicing practices.  Alexander does not have any interests which might cause her not to vigorously prosecute this action or are otherwise adverse to the interests of the members of (i) the Maryland Usury Fee Class and (ii) the Maryland MCDCA Class. She feels that she and the putative class members have been wronged, wishes to obtain redress of the wrong, and wants Carrington stopped from failing to comply with its mandatory duties that form the basis of the class claims.

43.     The (i) Maryland Usury Fee Class and (ii) the Maryland MCDCA Class members have suffered actual damages, losses, and harm similar those sustained by Alexander including statutory damages

### COUNT I: VIOLATIONS OF MARYLAND'S CONSUMER DEBT COLLECTION ACT ("MCDCA"), COM. LAW § 14-201, *et seq.*, & MARYLAND CONSUMER PROTECTION ACT ("MCPA"), COM. LAW §§ 13-101 *et seq.*
(On behalf of the Plaintiff Alexander Individually and
on behalf of Alexander and the Maryland MCDCA Class)

44.     Alexander adopts by reference the factual allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth.  This claim is brought on behalf of Alexander individually and as the named plaintiff on behalf of the Maryland MCDCA Class against Carrington.

45.     At all times described herein since October 1, 2018, Carrington has acted as a collector by attempting to collect, directly and indirectly, upon alleged, invalid debts and sums claimed due from Alexander and the Maryland MCDCA Class members arising out of consumer

transactions—their mortgages loan used for personal, consumer purposes related to the Property. COM. LAW §14-201(b).

46.     Carrington is aware of the Federal and State laws governing its activities described herein but recklessly disregarded those laws and duties without any consideration of the negative consequences to Alexander or the Maryland MCDCA Class members respectively.

47.     Carrington, directly and on behalf of others indirectly, also attempted to collect and did in fact collect unlawful convenience fees for accepting payments by telephone and/or other the Internet from Alexander and the Maryland MCDCA Class members in violation of the terms of the documents governing their loans and Maryland law which do not authorize such fees.

48.     Maryland's debt collection and mortgage lending laws which outline Carrington's duties under Maryland law do not permit Carrington to utilize methods and means of collection not permitted by law or the relationship governing the parties.  Carrington knows the law.  However, it knowingly and recklessly attempted to interfere or otherwise infect Alexander's and the Maryland MCDCA Class members' rights on the basis of alleged sums not lawfully due.  By such acts Carrington has engaged in conduct which violates §§ 804 through 812 of the Federal Fair Debt Collection Practices Act including but not limited to 15 U.S.C. §§ 1692e, § 1692f. COM LAW §14- 202(11).

49.     Carrington claims that Named Plaintiff and the Maryland MCDCA Class members are required to pay a convenience fee under Maryland law for making a partial payment on their mortgage payment over the telephone or by the Internet also violates COM. LAW § 14-202(8) when Carrington knows such fees are unlawful in Maryland.

50.     Carrington's violations of the MCDCA are also *per se* violations of the MCPA. COM. LAW § 13-301(14)(iii).

51.     The mortgage loan servicing and collection practices described herein by Carrington in relation to Alexander and the Maryland MCDCA Class members concerning the imposition and collection of convenience fees for taking payments from borrowers by telephone and/or the Internet as set forth herein, are governed by the Maryland Consumer Protection Act ("MCPA"), COM. LAW. § 13-101, *et seq*.

52.     COM. LAW. § 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The collection and attempted collection of the convenience fees by Carrington related to its consumer, debt collection practices by imposing and collecting unfair convenience fees involves both the extension of credit and the collection of debts.

53.     COM. LAW. § 13-303 also prohibits unfair or deceptive trade practices in the sale or provision of consumer services, such as those provided by Carrington.

54.     The MCPA defines unfair or deceptive trade practices to include, *inter alia*, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.  COM. LAW §§13-301(1) and (3).

55.     Carrington's acts and omissions described herein, and including but not limited to seeking and demanding sums not legally or contractually due from Alexander and the Maryland MCDCA  Class members, constitute unfair and deceptive trade practices in violation of COM. LAW § 13-301(1)(3) and COM. LAW §§13-303(4)(5).  Alternatively, Carrington's inflated charges far in excess of its actual costs is unfair or deceptive.

56.     Alexander and the Maryland MCDCA Class members reasonably relied upon the direct and indirect material acts and actions of Carrington as exemplified *supra* and further demonstrated herein (i) by their communications with Carrington, and (ii) their payment of the illegal convenience fees demanded by Carrington.  Carrington's acts omissions are simply unreasonable, unfair, and deceptive.

57.     Had Carrington not acted unfairly and deceptively, Alexander and the Maryland MCDCA Class members would not have suffered the damages and losses they have described *supra.*

58.     Plaintiff has pled sufficient facts to put Carrington on notice as to the claims against each as exemplified *supra* (i.e. dates of key acts and representations of Carrington and its agents and representatives and platforms; and the regulatory and statutory duties of Carrington which it simply ignored and thereby infected the subject transactions to ensure harm and damage to Alexander and the Maryland MCDCA Class members).

### COUNT II: CLAIM PURSUANT TO COM. LAW § 12-121(a)(1)(ii)
### (On behalf of the Plaintiff Alexander Individually and
### on behalf of Alexander and the Usury Convenience Fee Class)

59.     Alexander adopts by reference the factual allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth.  This claim is brought on behalf of Alexander individually and as the named plaintiff on behalf of the Usury Convenience Fee Class against Carrington.

60.     As the maker and/or servicer of the Named Plaintiff's and Usury Convenience Fee Class members' loans, Carrington qualifies as a lender pursuant to COM. LAW § 12-101(f).

61.     COM. LAW § 12-105(d) prohibits a lender from imposing fees related to a borrower's partial or full payment on the Named Plaintiff's and Usury Convenience Fee Class members after the origination of the subject loans. COM. LAW § 12-105(d) does not exempt Carrington from its express prohibition.

62.     Carrington was not entitled to require any charge to the mortgage loan accounts of the Named Plaintiff and Usury Convenience Fee Class members related to the borrower's partial or full payments on their loans over the telephone or by the Internet.

63.     At all times relevant and material to this action, Carrington has known or should have known that it was not permitted to require the imposition of unauthorized 'convenience' fees to the mortgage accounts of the Named Plaintiff and the Usury Convenience Fee Class members who make partial or whole payments on their mortgage loans since all persons are expected to know the law.

64.     COM. LAW § 12-114(a)(1)(ii) provides that the Defendant shall forfeit to borrowers like the Named Plaintiff and Usury Convenience Fee Class Members the sum of $500 for any violation, including the assessment of so-called convenience fees for partial or whole payments made by telephone to it, of the subtitle including COM. LAW § 12-105(d).

65.     The Named Plaintiff and Usury Convenience Fee Class members are entitled to the sum of $500 for each instance in which Carrington has imposed fees against the mortgage loan accounts of the Named Plaintiff and the Usury Convenience Fee Class members in violation of COM. LAW § 12-105(d) whether the Named Plaintiff and Usury Convenience Fee Class members paid the assessment or not.

**PRAYER FOR RELIEF**

A. WHEREFORE, Pursuant to Count I of this Class Action Complaint, Named

Plaintiff requests the Court to certify the Maryland MCDCA Class pursuant to MD. RULE 2-231 and appoint the Named Plaintiff as class representative and the undersigned counsel as Class Counsel;

B.   WHEREFORE, Pursuant to Count I of this Class Action Complaint, Named Plaintiff and the Maryland MCDCA Class members ask this Court to determine the issue of Carrington's liability to the Maryland MCDCA Class members under the MCDCA and MCPA and award: (i) actual damages for its violations of COM. LAW §14-202(8)(11), COM. LAW § 13-301(1)(3), and COM. LAW §§13-303(4)(5) pursuant to COM. LAW § 14-203 and COM. LAW § 14-408; (ii) reasonable attorney fees and reasonable costs as permitted and authorized by COM. LAW § 13-301(14)(iii) and COM. LAW § 13-408(b); and (iii) in a total sum in excess of $75,000 (on a aggregated basis for the Plaintiff and Maryland MCDCA Class members).

C.   WHEREFORE, Pursuant to Count II of this Class Action Complaint, Named Plaintiff requests the Court to certify the Usury Convenience Fee Class pursuant to MD. RULE 2-231 and appoint the Named Plaintiff as class representative and the undersigned counsel as Class Counsel;

D.   WHEREFORE, Pursuant to Count II of this Class Action Complaint, Named Plaintiff and the Usury Convenience Fee Class members ask this Court to determine the issue of Carrington's liability to the Usury Convenience Fee Class members and grant a money judgment in their favor and against Carrington and order Defendant Carrington to pay and forfeit pursuant to COM.

LAW § 12-114(a)(1)(ii) to the Named Plaintiff and the Usury Conven-

ience Fee Class members $500 for each violation of COM. LAW § 12-

105(d) and reasonable attorney fees and costs for the assessment of so-

called convenience fees for partial or whole payments made by telephone

or by the Internet to it in a total sum in excess of $75,000.00 (on a aggre-

gated basis for the Plaintiff and Usury Convenience Class member mem-

bers).

E.   WHEREFORE, Named Plaintiff requests the Court provide such other or fur-

ther relief as the Court deems appropriate including attorney fees and

costs in relation to Counts I and II of this Complaint.

Respectfully submitted,

*//s//Phillip R. Robinson*
Phillip R. Robinson
Client Protection No. 0006210356
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
Phone (301) 448-1304
phillip@marylandconsumer.com

*Attorneys for the Plaintiff and Putative Class Members*
**RULED 20-201 CERTIFICATION**

I hereby certify that this filing does not contain any restricted information.

*/s/Phillip R. Robinson*
Phillip R. Robinson
Client Protection No. 0006210356
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
301-448-1304
phillip@marylandconsumer.com
*Attorneys for the Plaintiff and Putative Class Members*

19

## JURY DEMAND

Plaintiff, on her behalf and on behalf of the putative class members, by her undersigned

counsel requests a jury trial in this matter.

*//s//Phillip R. Robinson*
Phillip R. Robinson
Client Protection No. 0006210356
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
Phone (301) 448-1304