IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ASHLY ALEXANDER and CEDRIC BISHOP, *on behalf of themselves individually and similarly situated persons*, | * |
| PLAINTIFFS, | * |
| v. | *   Civil Action No. RDB-20-2369 |
| CARRINGTON MORTGAGE SERVICES, LLC, | * |
| DEFENDANT. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

Plaintiffs Ashly Alexander and Cedric Bishop (collectively "Plaintiffs") bring this putative class action on behalf of themselves individually and similarly situated persons against their mortgage servicer, Defendant Carrington Mortgage Services, LLC ("Defendant" or "Carrington"). Plaintiffs allege that Defendant improperly charged Plaintiffs a $5 fee to make their mortgage payments online, in violation of: (1) the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-202, and the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301(Count I); (2) the prohibitions against usury found in Md. Code Ann., Com. Law § 12-105(d)[1] (Count II); and, in the alternative, (3) the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (Count III).

---

[1] While Count II in Plaintiff's Amended Complaint references Section "12-114(a)(1)(ii)," that subsection does not exist under the Maryland Code. (*See* Am. Compl. at 32, ECF No. 20.) Instead, it appears that Plaintiff intended to cite Section 12-114(b)(1), which provides that "[a]ny person who violates the usury provisions of this subtitle shall forfeit to the borrower" monetary penalties for an alleged violation of Section 12-105(d). Accordingly, the Court will consider Count II as alleging a violation of Md. Code Ann., Com. Law § 12-105(d).

Presently pending is Defendant's Motion to Dismiss Amended Complaint.[2] (ECF No. 24.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendant's Motion to Dismiss Amended Complaint (ECF No. 24) is GRANTED. Plaintiffs' claims simply have no basis under either state or federal law as Plaintiffs voluntarily agreed to pay the $5 fee by submitting their mortgage payments online instead of by mail. Accordingly, the Amended Complaint shall be DISMISSED WITH PREJUDICE.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).

On November 2, 2005, Plaintiff Ashly Alexander ("Alexander") took out a residential mortgage loan from America's Wholesale Lender to secure the purchase of real property in Baltimore, Maryland. (Am. Compl. ¶¶ 11, 23, ECF No. 20.) To do so, Alexander entered into a Deed of Trust and executed a Note evidencing the loan. (*Id.*; *see also* Alexander Deed of Trust, ECF No. 24-3; Alexander Note, ECF No. 24-4[3].) Alexander's Deed of Trust provides,

---

[2] Also pending is Plaintiff's Motion to Consolidate (ECF No. 10), which was filed in the Circuit Court for Baltimore County, Maryland, seeking to consolidate Plaintiff's state action with another pending state action brought by Carrington against Plaintiff in the Circuit Court for Baltimore County, Maryland. This case was removed to this Court prior to the state court determining whether to consolidate the state actions. Accordingly, because this Court only has jurisdiction over this case and not the other pending state action, Plaintiff's Motion to Consolidate (ECF No. 10) is DENIED AS MOOT.

[3] The Court may consider Plaintiffs' respective Deeds of Trust and Notes provided by Defendants (ECF Nos. 24-3, 24-4, 24-5, 24-6) as they are incorporated by Plaintiffs into their Complaint by reference. *See Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016).

"[i]n regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law."  (ECF No. 24-3 ¶ 14.)  Alexander's Note requires Alexander to "make all payments under this Note in the form of cash, check or money order" and to make such payments at "P.O. Box 660694, Dallas, TX 75266-0694 or at a different place if required by the Note Holder."  (ECF No. 24-4 ¶¶ 1, 3(A).)

On or about February 24, 2012, Alexander's loan was assigned to The Bank of New York Mellon, f/k/a The Bank of New York as Trustee for the Certificateholders of the CWABS Inc., Asset-Backed Certificates, Series 2005-13 ("CWABS").  (Am. Compl. ¶ 24.)  On or about August 16, 2017, CWABS retained Defendant Carrington Mortgage Services, LLC to service Alexander's loan and act as its collector.  (*Id.* ¶ 25.)  Alexander alleges that, at the time CWABS retained Carrington, her loan was believed to be in default.  (*Id.*)

On May 22, 2010, Plaintiff Cedric Bishop ("Bishop") took out a residential mortgage loan from the Federal Housing Administration to refinance his real property in Gaithersburg, Maryland.  (Am. Compl. ¶¶ 12, 39.)  To do so, Bishop entered into a Deed of Trust and executed a Note refinancing his loan.  (*Id.*; *see also* Bishop Deed of Trust, ECF No. 24-5; Bishop Note, ECF No. 24-6.)  Bishop's Note provides that "[p]ayment shall be made at 16808 Armstrong Avenue, Suite 215, Irvine, California 92606 or at such other place as Lender may designate in writing by notice to Borrower."  (ECF No. 24-6 ¶ 4(B).)  On or about September 8, 2018, Carrington was retained to service and collect upon Bishop's loan.  (Am. Compl. ¶

3

40.) Bishop alleges that, at the time Carrington was retained, his loan was believed to be in default. (*Id.*)

When Alexander and Bishop made their monthly mortgage payments, they had options with respect to their payment method. Specifically, Plaintiffs could make their mortgage payments online to Carrington for which Carrington would charge Plaintiffs a processing fee of $5.00. (Am. Compl. ¶¶ 28, 43.) Alexander alleges that she made online mortgage payments to Carrington, each time incurring a $5.00 online payment fee, on October 2, 2018, November 5, 2018, December 3, 2018, January 3, 2019, February 4, 2019, March 4, 2019, April 8, 2019, June 3, 2019, July 1, 2019, August 30, 2019, and September 16, 2019. (*Id.* ¶ 28.) Bishop also alleges that he made online mortgage payments to Carrington, each time incurring a $5.00 online payment fee, on March 15, 2019, April 12, 2019, May 15, 2019, June 15, 2019, July 15, 2019, August 16, 2019, October 11, 2019, November 16, 2019, and December 16, 2019. (*Id.* ¶ 43.) Plaintiffs allege that this practice of collecting a $5.00 "convenience fee" was in violation of the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-202, and the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301(Count I); the prohibitions against usury found in Md. Code Ann., Com. Law § 12-105(d) (Count II); and, in the alternative, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (Count III).

Plaintiff Alexander originally brought suit in the Circuit Court for Baltimore County, Maryland on July 10, 2020. (State Compl., ECF No. 1-3.) On August 17, 2020, Defendant Carrington removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1453 and this Court's original jurisdiction over claims asserted under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (Notice of Removal, ECF No. 1.) On September 8, 2020,

4

Plaintiffs filed an Amended Complaint, adding Bishop as a Plaintiff and alleging an additional Count under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (Am. Compl., ECF No. 20.) On October 6, 2020, Defendant filed the presently pending Motion to Dismiss Amended Complaint. (ECF No. 24.)

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). While a complaint need not include "detailed factual allegations," it must set forth "enough factual matter [taken as true] to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff cannot rely on bald accusations or mere speculation. *Twombly*, 550 U.S. at 555.

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV*, LLC, 846 F.3d 757, 765 (4th Cir. 2017). A court, however, is not required to accept legal conclusions drawn from those

facts. *Iqbal*, 556 U.S. at 678. "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## ANALYSIS

### I. Plaintiffs fail to state a claim for violation of the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-202 (Count I)

Plaintiffs allege that Defendant violated two sections of the Maryland Consumer Debt Collection Act ("MCDCA"), specifically Md. Code Ann., Com. Law §§ 14-202(8) and 14-

202(11). Section 14-202(8) prohibits "collectors" from claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist. *See* Md. Code Ann., Com. Law § 14-202(8). Section 14-202(11) also makes it illegal to violate §§ 804-812 of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq. See* Md. Code Ann., Com. Law at § 14-202(11). Plaintiffs fail to state a claim under either of these sections.

First, Plaintiffs have failed to allege that Carrington was engaging in debt collection. To assert a claim under § 14-202, "plaintiffs must first show that defendants were engaging in an 'attempt to collect a debt.'" *Seghetti v. Flagstar Bank, FSB*, No. ELH-16-519, 2016 WL 3753143, at *2 (D. Md. July 13, 2016) (citing *Covert v. LVNV Funding, LLC*, No. DKC-13-0698, 2013 WL 6490318, at *8 (D. Md. Dec. 9, 2013), *aff'd on other grounds*, 779 F.3d 242 (4th Cir. 2015)). In this case, Defendant Carrington is a mortgage loan servicer. (Am. Compl. ¶ 13.) The MCDCA may apply to loan servicers in some contexts. *See Ervin v. JP Morgan Chase Bank, N.A.*, No. GLR-13-2080, 2014 WL 4052895, at *3 (D. Md. Aug. 13, 2014); *Flournoy v. Rushmore Loan Mgmt. Servs., LLC*, No. PX-19-00407, 2020 WL 1285504, at *8 (D. Md. Mar. 17, 2020). For example, "[t]he right to collect a debt typically vests when a debtor defaults on the debt," *Crowley v. JPMorgan Chase Bank, Nat'l Ass'n*, No. RDB-15-0607, 2015 WL 6872896, at *8 (D. Md. Nov. 9, 2015), therefore, a loan servicer may have to engage in debt collection to enforce payment obligations of defaulting borrowers.

However, a loan servicer does not exclusively engage in debt collection, and only when it does engage in such activity is it subject to § 14-202. *See Seghetti*, 2016 WL 3753143, at *2 (holding that loan servicer's actions in securing abandoned property were not "debt collection," and therefore, the MCDCA claim failed). To determine whether a loan servicer

7

is engaged exclusively in debt collection, courts in this district look to whether the debt assigned to the servicer was assigned "solely for the purpose of collection" of such debt. *See Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings, LLC*, 929 F. Supp. 2d 502, 525 (D. Md. 2013); *Henson v. Santander Consumer USA, Inc.*, No. RDB-12-3519, 2014 WL 1806915, at *5 (D. Md. May 6, 2014). In this case, Plaintiffs allege that Carrington qualifies as a debt collector because it "acquired its interest in the loans of the Named Plaintiffs … when it alleges (directly and indirectly) and believed the loans were in default." (Am. Compl. ¶ 98.) There are no allegations that Carrington treated Plaintiffs' loans as if they were in default, such as sending notices of default, making collection calls, reporting to credit reporting agencies, or foreclosing on Plaintiffs' properties. Plaintiffs' threadbare allegations do not suffice to allege that Carrington was assigned the debts "solely for the purpose of collection." *See Henson*, 2014 WL at *5 ("The Plaintiffs' cursory assertions that [Defendant] is a 'debt collector' because it purchased debts in default do not create a plausible cause of action."). Instead, Plaintiffs' allegations reflect that Carrington simply acted as a servicer by collecting their monthly loan payments. (Am. Compl. ¶¶ 13, 25, 40.) As pled, this activity is not debt collection.

While the MCDCA does not define "loan servicing," the Real Estate Settlement Procedures Act ("RESPA") defines "servicing" as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3). Courts have recognized that "servicing" of this nature is distinct from "debt collection." In *Arostegui v. Bank of America*, No. PJH-13-6009, 2014 WL 1230762, at *6

8

(N.D. Cal. Mar. 21, 2014), the court found that the FDCPA did not apply to the defendant because the defendant, "as a loan servicer, [was] not a 'debt collector' and the servicing of the plaintiff's loan [was] not 'debt collection.'" Similarly, in *Allen v. Bank of America, N.A.*, 933 F. Supp. 2d 716, 729 (D. Md. 2013), Judge Blake of this Court held that "mortgage servicers" are not "debt collectors" under the FDCPA because they are not "persons who 'attempt to collect debts owed or due,'" and instead should be characterized as "creditors" who "step into the shoes" of the original mortgagee when they begin servicing a mortgage. The MCDCA also does not by its terms purport to regulate loan servicing. The MCDCA "protects consumers against certain threatening and underhanded methods used by debt collectors in attempting to recover on delinquent debts." *Spencer v. Henderson-Webb, Inc.*, 81 F. Supp. 2d 582, 598 (D. Md. 1999). Plaintiffs do not allege that Carrington was "attempting to recover on delinquent debts." As a result, Carrington's servicing of Plaintiffs' loans is simply not conduct regulated by MCDCA § 14- 202.

Even if Plaintiffs adequately alleged that Carrington was engaged in debt collection, their claims under §§ 14-202(8) and 14-202(11) still fail to state plausible claims for relief. Section 14-202(8) of the MCDCA provides that "[i]n collecting or attempting to collect an alleged debt[,] a collector may not: . . . (8) Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8). To establish a prima facie case under § 14-202(8), a plaintiff must show that the defendant did not possess the right to collect a debt and attempted to collect on the debt despite knowing it lacked the right to do so. *See Allen v. Silverman Theologou, LLP*, No. JFM-14-3257, 2015 WL 2129698, at

9

*7 (D. Md. May 6, 2015) (citing *Pugh v. Corelogic Credco, LLC*, No. DKC-13-1602, 2013 WL 5655705, at *4 (D. Md. Oct. 16, 2013)).

Plaintiffs allege that Carrington, as a "collector," violated § 14-202(8) because it allegedly knew "as a matter of Federal and State law and the loan documents governing Alexander's and Bishop's loan that it was not expressly permitted to impose or collect a convenience fee to accept payments related to the Named Plaintiffs' and MCDCA members' mortgage loans, but it recklessly continued to do so." (Am. Compl. ¶¶ 72-78.) Plaintiffs suggest that the $5 "convenience fees" were the "debt" Carrington had no right to collect. While this Court has held that "unauthorized types of charges" are actionable under § 14-202(8), it has done so only in the context of fees *as part of* a debt being collected. *See Flournoy*, 2020 WL 1285504, at *8 (defendant allegedly inflated the debt amount due after default through the inclusion of unauthorized charges); *Brooks v. Cama Self Directed IRA, LLC*, No. JKB-18-229, 2019 WL 418412, at *11 (D. Md. Jan. 31, 2019) (plaintiff contested "the validity of certain portions of the debt" such as "interest and late fees" charged after foreclosure); *see also Allstate Lien & Recovery Corp. v. Stansbury*, 101 A.3d 520, 522 (Md. Ct. Spec. App. 2014) (addressing a "processing fee" of $1,000 as part of an amount of the lien that plaintiff was required to pay to redeem his vehicle).

Plaintiffs claim fails because they fail to allege that Defendant was not authorized or did not have the "right" to collect the $5 convenience fees. Plaintiffs' argument that their Deeds of Trust did not expressly grant Defendant the right to collect such a fee does not mean such a fee is prohibited. Alexander's Deed of Trust provides, "[i]n regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to

10

Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." (ECF No. 24-3 ¶ 14.) Nor does Bishop's Deed of Trust provide any prohibition on such fee. (ECF No. 24-5.) Instead, Plaintiffs' Deeds of Trust required them to pay their mortgages according to the terms of their Notes. (ECF Nos. 24-3, 24-4.) Alexander's Note required her to make monthly payments "in the form of cash, check or money order" and to make such payments at "P.O. Box 660694, Dallas, TX 75266-0694 or at a different place if required by the Note Holder." (ECF No. 24-4 ¶¶ 1, 3(A).) Bishop's Note provided, "[p]ayment shall be made at 16808 Armstrong Avenue, Suite 215, Irvine, California 92606 or at such other place as Lender may designate in writing by notice to Borrower." (ECF No. 24-6 ¶ 4(B).)

The fact that neither of Plaintiffs' Notes contemplated online payments of their mortgages does not prohibit the charging of a $5 convenience fee as Plaintiffs themselves chose to make their payments online. The $5 convenience fee was the subject of and governed by clickwrap agreements to which Plaintiffs agreed well after their mortgage loans were originated. Courts applying Maryland law have upheld clickwrap agreements—that is, "agreements that require a customer to affirmatively click a box on the website acknowledging receipt of an assent to the contract terms before he or she is allowed to proceed using the website." *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 669 (D. Md. 2009); *see also Fusha v. Delta Airlines, Inc.*, RDB-10-2571, 2011 WL 3849657, at *2-4 (D. Md. 2011). Such agreements must "give the user reasonable notice that a click will manifest an assent to an agreement." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033-34 (7th Cir. 2016)). Federal district courts have generally upheld clickwrap

11

so long as it "reasonably communicate[s]" the existence of the contract terms. *Meyer*, 868 F.3d at 76 (collecting cases).

Applying these principles, the record reflects that Plaintiffs formed such clickwrap agreements with Carrington when making their payments online. Carrington has provided a copy of its web page which presents a large button inviting users to "Make a Payment."[4] (ECF No. 24-8.) Above that button, the webpage indicates that "There is a $5 convenience fee when making one-time payment online." (*Id.*) Customers were also required to select an "I Agree" button and agree to the terms and conditions in order to move forward with the online payment process. (*Id.*) Accordingly, this layout reasonably communicated the terms of the online agreements and clearly indicated that, by making a payment online, a user agreed to pay a $5 convenience fee. Plaintiffs have not presented any argument to the contrary, nor could they, as the record reflects that they agreed to make such convenience fees in order to make their payments online. Plaintiffs were free to decline this option and to make their payments by mail, but they chose to proceed online and to incur the $5 fee. There is nothing unlawful about these clickwrap agreements nor are they prohibited by Plaintiffs' Deeds of Trusts. Moreover, even if the disputed $5 convenience fees were not initially authorized, as the Plaintiffs contend, the MCDCA does not make the charging of unauthorized fees, separate from collection of a debt, actionable on its own.

Plaintiffs also fail to state a claim under MCDCA § 14-202(11), as they have not adequately alleged a violation of the federal Fair Debt Collection Practices Act ("FDCPA").

---

[4] The Court may consider the web page provided by Defendants as it is incorporated by Plaintiffs into their Amended Complaint by reference. *See Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016).

Section 14-202(11) provides that "[i]n collecting or attempting to collect an alleged debt[,] a collector may not: . . . (11) Engage in any conduct that violates §§ 804 through 812 of the federal [FDCPA]." Md. Code Ann., Com. Law § 14-202(11).  Section 808 of the FDCPA provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1).  Even if Plaintiffs adequately alleged that Carrington was engaged in debt collection within the meaning of the MCDCA—allowing this Court to reach the question of whether Carrington has violated § 14-202(11)—Carrington's conduct in this case falls squarely within the loan servicing exemption of the FDCPA.  Without alleging a violation of the FDCPA, the Plaintiff cannot allege a violation of § 14-202(11) of the MCDCA.

The FDCPA defines "debt collector" as "a business the principal purpose of which is the collection of any debts," or one that "regularly collects or attempts to collect . . . debts . . . ." 15 U.S.C. § 1692a(6).  Section 803 provides exceptions to the term "debt collector," including "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due to another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F).  This exemption does not represent an absolute rule that the FDCPA cannot be applied to loan servicers.  If a loan servicer were to acquire a loan *after* it has already gone into default, then such exception does not apply. *Howes v. Wells Fargo Bank, N.A.*, No. ELH-14-2814, 2015 WL

13

583694, at *48 (D. Md. Sept. 30, 2015) (citing *Zervos v. Ocwen Loan Servicing, LLC*, No. JKB 11-03757, 2012 WL 1107689, at *3 (D. Md. Mar. 29, 2012)). This exemption instead applies where a loan servicer seeks to collect a debt that was not in default when it was acquired for servicing. Again, as explained above, Plaintiffs have not adequately alleged that the Defendant was engaged in debt collection, but even if they had, Carrington would meet the requirements for exemption under § 803 of the FDCPA since Carrington began servicing the Plaintiff's loan before any default.

Finally, even if Carrington did not qualify for the exemption under § 803 of the FDCPA, Plaintiffs' claim would still fail because the $5 convenience fees were not incidental to their mortgage debt as required by the FDCPA. *See* 15 U.S.C. § 1692f(1). It is undisputed that the $5 convenience fee would only be imposed if Plaintiffs elected to make their payments online. Plaintiffs affirmatively chose to use this alternative method of payment, which is not prohibited by state or federal law. *See Am. Metal Forming Corp. v. Pittman*, 52 F. 3d 504, 509 (4th Cir. 1995); *Flores v. Collection of Consultants*, No. SA CV 14-0771-DOC (RNBx), 2015 WL 4254032, at *10 (C.D. Cal. Mar. 20, 2015); *Lish v. Amerihome Mortg. Co., LLC*, 2:20-cv-07147-JFW-JPRx, 2020 WL 6688597, at *3 (C.D. Cal. Nov. 10, 2020) ("when Plaintiff voluntarily chose to make a payment by telephone rather than by other, cost-free methods, she entered into a separate agreement with Defendants" and any associated fees were not "incidental to the principal obligation" under the FDCPA); *see also Austin v. Lakeview*, Civil Action No. RDB-20-1296, 2020 WL 7256564 (D. Md. Dec. 10, 2020).

14

## II. Plaintiffs fail to state a claim for violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301 (Count I)

Plaintiffs assert two claims under the Maryland Consumer Protection Act ("MCPA"), specifically under the Md. Code Ann., Com. Law § 13-301(14)(iii) and a standalone claim under § 13-301. Section 13-301(14)(iii) provides that a violation of the MCDCA is a *per se* violation of the MCPA. For the reasons explained above, Plaintiffs have failed to state a claim under the MCDCA, thereby foreclosing their derivative claim under the MCPA. To plead a standalone claim under the MCPA, a consumer must allege: "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citing *Lloyd v. General Motors Corp.*, 397 Md. 108, 143 916 A.2d 257 (2007)). Because an MCPA claim sounds in fraud, it must be plead with particularity. *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013); *Robinson v. Nationstar Mortgage LLC*, No. TDC-14-3667, 2015 WL 4994491, at *4 (D. Md. Aug. 19, 2015) (citing *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013)).

Plaintiffs have failed to allege any unfair practice or misrepresentation that they relied upon. Their sole allegation is that Carrington charged them $5 convenience fees which were fully disclosed by Carrington and agreed upon by Plaintiffs. Such fees do not constitute "any sort of representation." *Bourgeois v. Live Nation Entertainment, Inc.*, 3 F. Supp. 3d 423, 458 (D. Md. 2014) ("even if calling the $12 fee a 'service charge' constituted a representation, it would not constitute a *mis*representation. Characterizing the fee as a 'service charge' is not objectively false: It is the fee that customers are charged for the service that [defendant] provides.") Accordingly, the $5 convenience fees cannot be a misrepresentation, as they are

15

simply the fees that Plaintiffs are charged for using the online payment option provided by Carrington.

Nor could Plaintiffs allege that they "relied" upon any misrepresentation. "A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." *Bank of America, N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 532 (D. Md. 2011). Here, Plaintiffs have not alleged that they would have done anything differently nor how Defendant induced them to make the decision to pay their mortgages online. Consequently, Plaintiffs have failed to state claims under both the MCDCA and the MCPA and Count I must be dismissed with prejudice.

### III.  Plaintiffs fail to state a claim for violation of the prohibitions against usury found in Md. Code Ann., Com. Law § 12-105(d) (Count II)

Plaintiffs allege that Defendant violated Md. Code Ann., Com. Law Section 12-105 and its prohibitions against usury. Section 12-105(d) provides that lenders may not "require or authorize the imposition of a penalty, fee, premium, or other charge in the event the mortgage is prepaid in whole or in part." The Maryland General Assembly explained in 2008 that the purpose of Section 12-105(d) was to "prohibit[] a lender from requiring or authorizing the imposition of a prepayment penalty." *See* S.B. 270, 2008 Leg. 2008 Sess. (Md. 2008). Plaintiffs do not allege that they prepaid their loans resulting in a prepayment penalty, but instead allege that they incurred a $5 convenience fee for paying their monthly mortgage amount online. This fee is simply not a prepayment penalty.

Finally, Section 12-105 limits the fees that a "lender" may charge. Under Maryland law, a "lender" means "a licensee or a person who makes a loan subject to this subtitle." Md. Code Ann., Com. Law § 12-101(f). A "lender" does not include a subsequent assignee of the loan

16

or the loan servicer. *See Flournoy v. Rushmore Loan Mgmt. Servs., LLC*, No. 8:19-cv-00407-PX, 2020 WL 1285504, at *6 (D. Md. Mar. 17, 2020). While Plaintiffs argue that the recent Maryland Court of Special Appeals' decision in *Kemp v. Nationstar Mortgage Association* supports finding that Carrington was a lender, that decision specifically applied to Section 12-121 of Maryland's Commercial Law Code, finding that "§ 12-121 is not limited to the originators of loans." No. 2652, Sept. Term, 2018, ---A.3d ---, 2020 WL 5824227 (Md. Ct. Spec. App. Oct 1, 2020). This holding does not extend to Section 12-105(d), which still requires that the lender be the originator of the loan. Accordingly, because there is no question that Carrington was not the originator of the loan, Plaintiff's claim under Section 12-105(d) must fail and Count II will be dismissed with prejudice.

## IV.     Plaintiffs fail to state a claim for violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (Count III)

Plaintiffs allege that Defendant violated the federal Fair Debt Collection Practices Act ("FDCPA") by breaching "statutory duties pursuant to 15 U.S.C. § 1638(f) and 12 C.F.R. § 1026.41." Specifically, they allege that Carrington violated the FDCPA by including Plaintiffs' "unrelated" online payment fees on their periodic mortgage statements because such inclusion renders the statements misleading. Plaintiffs' claim must fail. First, as discussed above, Defendant is not a debt collector under the FDCPA. Second, even if Carrington were a debt collector, its provision of mortgage statements that include the fees in question is not prohibited by the FDCPA. Rather, federal regulations *require* mortgage services to include on their statements "[t]he total sum of any fees or charges imposed since the last statement," "[t]he total of all payments received since the last statement," and "all the transaction activity that occurred since the last statement." *See* 12 C.F.R. §§ 1026.41(d)(2)(ii), (d)(3)(i), (d)(4).

Further, as discussed above, even if Carrington were using the mortgage statements to collect fees, which they were not, their effort to collect an authorized fee would not violate the FDCPA.

Finally, Plaintiffs' allegation that Defendant failed to comply with Maryland's licensing regime by utilizing an unlicensed vendor, ACI Worldwide ("ACI"), for the electronic transmission of payments also fails. The Maryland Mortgage License Law ("MMLL") prohibits persons from acting as a "mortgage lender" without a license and defines "mortgage lender" to include a "mortgage servicer." Md. Code Ann., Fin. Inst. §§ 11-504, 11-501(j). Mortgage servicing is the "administration of a mortgage loan, including the collection of payments, release of liens, and payment of property insurance and taxes." *Robinson v. Fay Servicing, LLC*, No. RDB-18-2710, 2019 WL 4735431, at *6 (D. Md. Sept. 27, 2019) (quoting Black's Law Dictionary (10th ed. 2014)). Here, ACI does not require a MMLL license because it does not engage in mortgage lending or mortgage servicing. Instead, it merely facilitates the electronic transmission of money between borrowers' banks and Carrington, which does not subject it to the MMLL licensing requirements. Accordingly, Plaintiffs have failed to state a claim under the FDCPA and Count III will be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Amended Complaint (ECF No. 24) is GRANTED. Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE.

A separate Order follows.

Dated: December 11, 2020

                                                                                                                                     _____/s/_____

                                                                                   Richard D. Bennett  
                                                                                   United States District Judge