# EXHIBIT 1

## <u>CLASS ACTION SETTLEMENT AGREEMENT</u>

This Settlement Agreement (the "Agreement"), subject to approval by the Court, as defined herein, is made this date of May 24, 2022, between Plaintiffs Victoria Dawkins, Amy Thomas-Lawson, Brenda Boley, Miguel Padilla, William Green, Ashly Alexander, and Cedric Bishop ("Plaintiffs"), as the proposed representatives of the Settlement Class, as defined herein, and Defendant Carrington Mortgage Services, LLC ("Carrington").

## I.    RECITALS

**A.    <u>Parties</u>**. Plaintiffs, Victoria Dawkins, Amy Thomas-Lawson, Brenda Boley, Miguel Padilla, William Green, Ashly Alexander, and Cedric Bishop, individually, and as the representatives of the Settlement Class (defined below), and Defendant Carrington Mortgage Services, LLC ("Carrington") enter into this Agreement to resolve the claims of Plaintiffs and the Settlement Class described below. Plaintiffs and Carrington are collectively referred to hereinafter as the "Parties."

**B.    <u>The Three Lawsuits Encompassed by this Settlement (the "Lawsuits")</u>.** On December 16, 2019, Amy Thomas-Lawson, Brenda Boley, Miguel Padilla, and William Green, individually and on behalf of a putative class, filed a lawsuit in the United States District Court for the District of Maryland, which was transferred to the United States District Court for the Central District of California on August 13, 2021, *Thomas-Lawson, et al. v. Carrington Mortgage Services*, LLC., Case No. 2:20-cv-07301-ODW(Ex) (the "Thomas-Lawson Lawsuit"). The Plaintiffs alleged Carrington violated the federal Fair Debt Collection Practices Act ("FDCPA") and state debt collection laws, and breached the uniform terms of borrowers' mortgages by charging and collecting additional processing fees when borrowers paid their monthly mortgage by phone or online ("Convenience Fees").

**C.** On May 20, 2020, Victoria Dawkins, individually and on behalf of a putative class, filed a lawsuit in the United States District Court for the Southern District of Florida, *Dawkins, et al. v. Carrington Mortgage Services*, LLC, Case No. 0:20-cv-60998-RAR (the "Dawkins Lawsuit"). Ms.

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

Dawkins alleged Carrington violated the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72 (FCCPA), and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203 (FDUTPA), breached its contracts, and was unjustly enriched by charging and collecting Convenience Fees.

**D.**     On July 10, 2020, Ashly Alexander, individually and on behalf of a putative class, filed a lawsuit in the Circuit Court for Baltimore County, Maryland, *Alexander v. Carrington Mortgage Services, LLC*, Case No. C-03-CV-20-002729. Ms. Alexander alleged Carrington violated the Maryland Consumer Debt Collection Act (MCDCA), Com. Law § 14-201*, et seq.*, the Maryland Consumer Protection Act (MCPA), Com. Law § 13-101, and Maryland's Usury Law, Com. Law § 12-105(d), by charging and collecting Convenience Fees. On July 17, 2020, Carrington removed this case to the U.S. District Court for the District of Maryland, where it was assigned case number Civil No. 1:20-cv-2369. On September 8, 2020, Ms. Alexander filed an amended complaint that added Cedric Bishop as an additional Plaintiff.

**E.**     The Parties exchanged information necessary to mediation, and after a 14 hour mediation with an experienced class action mediator, Jeff Kichaven, on April 20, 2022, the Parties reached an agreement to resolve the Lawsuits.

**F.**     <u>**Denial of Liability.**</u> By entering into this Agreement, Carrington does not admit that it is liable to Plaintiffs or the Settlement Class, nor does Carrington concede that, absent a settlement, Plaintiffs' putative classes may properly be certified under the Federal Rules of Civil Procedure. Carrington desires to settle the claims brought solely to avoid the expense, burden, and uncertainty of further litigation, and to put to rest all claims which have or could have been asserted by Plaintiffs against Carrington relating to Carrington's alleged wrongful actions or omissions. Carrington denies all liability to Plaintiffs and the Settlement Class.

**G.**     Plaintiffs, individually and on behalf of the Settlement Class, desire to settle their claims alleged against Carrington in the Lawsuits, having taken into account through Plaintiffs' counsel

the risks, delay, and difficulties involved in establishing a right to recovery in excess of that offered by this Settlement and the likelihood that the Lawsuits will be further protracted and expensive.

      **H.**      Plaintiffs' counsel has conducted an extensive investigation of the facts and applicable law, including, but not limited to, obtaining discovery on issues pertaining to class size and damages. Based on the foregoing, and upon an analysis of the benefits, including future relief concerning the subject practices, afforded by this Agreement, Plaintiffs' counsel considers it to be in the best interest of the Settlement Class to enter into this Agreement.

      **I.**      This Agreement reflects a compromise between the Parties and shall in no event be construed as or be deemed an admission or concession by any Party of the truth of any allegation or the validity of any purported claim or defense asserted in any of the pleadings in the Action, or of any fault on the part of Carrington, and all such allegations are expressly denied. Nothing in this Agreement shall constitute an admission of liability or be used as evidence of liability, by or against any Party hereto.

      **J.**      In consideration of the foregoing and other valuable consideration, Plaintiffs, Plaintiffs' Counsel, Carrington, and Carrington's Counsel agree collectively to settle the claims of the Plaintiffs and the Settlement Class arising from Carrington's collection of Convenience Fees as alleged in the Lawsuits, subject to the Court's approval, on the following terms and conditions.

## II.    DEFINITIONS

      **A.**      "Action" refers collectively to the Lawsuits identified above in the Recitals:  *Thomas-Lawson, et al. v. Carrington Mortgage Services*, LLC*.,* Case No. 2:20-cv-07301-ODW(Ex) (C.D. Cal.), *Dawkins, et al. v. Carrington Mortgage Services, LLC*, Case No. 0:20-cv-60998 (S.D. Fla.), *Alexander, et al. v. Carrington Mortgage Services, LLC,* Case No. 1:20-cv-02369 (D. Md.).

      **B.**      "Administrative Costs" means all costs and expenses associated with and incurred in connection with providing notices to the Proposed Class, locating Class Members whose current

address is not reflected in existing records of Carrington, issuing settlement payments, and any other costs of or associated with administration of the Settlement. It does not include any fees, costs or expenses incurred by Class Counsel or any Class Members. All Administrative Costs shall be paid from the Gross Settlement Fund.

**C.** "Agreement" or "Settlement Agreement" means this Proposed Class Action Settlement Agreement.

**D.** "Class" or "Class Member" is defined as:

All persons who paid a fee to Carrington for making a mortgage loan payment by telephone, IVR, or via the internet, between January 1, 2016 through December 31, 2021 who fall into one or more of the following groups:

(1) were borrowers on residential mortgage loans on properties located in California, Texas, New York, Maryland, or Florida;

(2) were borrowers on residential mortgage loans on properties in the United States to which Carrington acquired servicing rights when such loans were 30 days or more delinquent on loan payment obligations; or

(3) were borrowers on residential mortgage loans on properties located in the United States insured by the Federal Housing Administration.

The Parties agree that the Class consists of 442,059 consumer, mortgage loans and their borrowers nationwide.

**E.** "Class Counsel" means James L. Kauffman of Bailey & Glasser LLP, Hassan A. Zavareei and Kristen Simplicio of Tycko & Zavareei LLP and Phillip Robinson of Consumer Law Center, LLC.

**F.** "Class Counsel's Fees and Expenses" means the amount awarded to Class Counsel by the Court to compensate Class Counsel for fees, costs, and expenses in prosecuting the Action and related matters, to be paid from the Gross Settlement Fund.

4

**G.**     "Class Member List" means a list of persons who, according to a reasonable search of Carrington's business records, fall within the definition of the Class. The Class Member List shall include the names of all persons who, according to a reasonable search of Carrington's business records, fall within the definition of the Class; their last known mailing address; their last known email address, provided that the Preliminary Approval Order prescribes Class Notice by email; and the dates and amounts of each Convenience Fee paid during the Class Period.

**H.**     "Class Notice" means the Long Form Notice of Proposed Class Action Settlement and Final Hearing attached as **Exhibit A1** hereto, the Short Form Postcard Notice of Proposed Class Action Settlement and Final Hearing attached as **Exhibit A2** hereto, and the Email Notice of Proposed Class Action Settlement and Final Hearing attached as **Exhibit A3,** or substantially similar notices approved by the Court.

**I.**     "Class Period" means the time period January 1, 2016 through December 31, 2021.

**J.**     "Class Representatives" means Victoria Dawkins, Amy Thomas-Lawson, Brenda Boley, Miguel Padilla, William Green, Ashly Alexander, and Cedric Bishop.

**K.**     "*Cy Pres* Recipient" means NeighborWorks America and the Maryland Consumer Rights Coalition.

**L.**     "Defendant's Counsel" or "Carrington's Counsel" means Fredrick S. Levin and Scott T. Sakiyama of Buckley LLP.

**M.**     "Effective Date" means the date on which this Agreement and the Final Approval Orders are effective pursuant to this paragraph. This Effective Date shall be the later of: (i) 31 days after the docketing and entry of the Final Approval Order which is also the day after the last date for filing a Notice of Appeal, or (ii) the day after any order on appeal becomes final and non-appealable and there are no further proceedings on remand, including no further appeal of orders issued on remand.

**N.** "Email Notice" means the notice to be emailed to Class members by the Settlement Administrator, substantially in the form of **Exhibit A3**, provided that the Preliminary Approval Order prescribes Class Notice by email.

**O.** "Fee and Expense Award" means the amount awarded to Class Counsel by the Court to compensate Class Counsel for attorneys' fees and expenses in prosecuting the Actions, to be paid from the Gross Settlement Fund.

**P.** "Fee and Service Award Application" means Class Counsel's application for a Fee and Expense Award and Service Awards.

**Q.** "Final Approval Hearing" or "Final Fairness Hearing" mean the hearing at or after which the Court will determine whether to finally approve the Settlement.

**R.** "Final Approval Order" means an order of the Court finally approving the Settlement. A copy of a proposed Final Approval Order is attached as **Exhibit C.**

**S.** "Long Form Notice" means the notice to be posted on the Settlement Website and mailed to Class Members upon request that discloses the terms of the Settlement Agreement, substantially in the form of **Exhibit A1.**

**T.** "Net Settlement Fund" means the Gross Settlement Fund minus any Fee and Expense Award, any Service Awards, and all Administrative Costs.

**U.** "Notice Program" or "Notice Plan" means the procedure for providing Class Notice to the Settlement Class.

**V.** "Parties" shall mean the named Plaintiffs and Carrington.

**W.** "Plan of Allocation" means the terms and procedures for allocating the Settlement Fund among, and for distributing amounts to Class Members as proposed in the Class Notice and approved by the Court.

**X.** "Postcard Notice" means the notice to be mailed to Class Members by the Settlement Administrator, substantially in the form of **Exhibit A2.**

**Y.** "Preliminary Approval Order" means an order from the Court preliminarily approving the Settlement; preliminarily certifying, for settlement purposes only, the Settlement Class; and approving the Class Notice. A copy of a proposed Preliminary Approval Order is attached hereto as **Exhibit B**.

**Z.** "Released Claims" means any and all claims, counterclaims, actions, causes of action, suits, set-offs, costs, losses, expenses, sums of money, accounts, reckonings, debts, charges, complaints, controversies, disputes, damages, judgments, executions, promises, omissions, duties, agreements, rights, and any and all demands, obligations and liabilities, of whatever kind or character, direct or indirect, whether known or unknown, at law or in equity, by right of action or otherwise, arising out of, based upon, or related in any way to the facts, allegations, disputes that are the subject matter of the Lawsuits or the charging, collection, or attempted collection of Convenience Fees from the beginning of the world to the Effective Date, which the Settlement Class Member ever had or may have in the future.

**AA.** "Released Entities" means Carrington and each of its past, present and future directors, officers (whether acting in such capacity or individually), shareholders, advisors, owners, partners, joint venturers, principals, trustees, creditors, law firms, attorneys, representatives, employees, managers, parents, direct or indirect subsidiaries, divisions, subdivisions, departments, entities in common control, affiliates, insurers, reinsurers, control persons, predecessors, and successors or any agent acting or purporting to act for them or on their behalf, as well as any investor on whose behalf Carrington services any loan to any Settlement Class Member, and each of their past, present and future directors, officers (whether acting in such capacity or individually), shareholders, advisors, owners, partners, joint venturers, principals, trustees, creditors, law firms, attorneys,

7

representatives, employees, managers, parents, direct or indirect subsidiaries, divisions, subdivisions, departments, entities in common control, affiliates, insurers, reinsurers, control persons, predecessors, and successors or any agent acting or purporting to act for them or on their behalf, and, any entity on whose behalf Carrington services any loan to any Class Member.

**BB.**   "Response Deadline" means 105 days after entry of the Preliminary Approval Order.

**CC.**   "Settlement Administrator" means Epiq. The Settlement Administrator was selected by Class Counsel, with input from Carrington, after several settlement administrators submitted proposals.

**DD.**   "Settlement Class" or "Settlement Class Member" means all Class Members who do not opt out of the Settlement.

**EE.**   "Gross Settlement Fund" means a payment by Carrington in the amount of $18,181,898.65, from which all Administrative Costs, any Fee and Expense Award, and any Service Award shall be paid, pursuant to the terms of this Settlement Agreement as approved by the Court. The Gross Settlement Fund constitutes 35% of the total Convenience Fees collected by Carrington from the Class during the class period.

**FF.**   "Settlement Payment" means the payment made to each Settlement Class Member from the Net Settlement Fund pursuant to this Agreement.

**GG.**   "Service Award" means such funds as may be awarded by the Court to the Plaintiffs in recognition of their time and effort expended in pursuing the Action and in fulfilling their obligations and responsibilities as Class Representatives, to be paid from the Gross Settlement Fund.

**HH.**   "Settlement Website" means an internet website to be established and maintained by the Settlement Administrator.

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

**II.**      "Prospective, Future Relief" means the benefits agreed to by this contract with Carrington which expressly provides that Carrington will not impose or collect Convenience Fees for a three year period following the entry of the Preliminary Approval Order.

### III.      SCHEDULE AND CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS

Solely for the purpose of effectuating the Settlement set forth in this Agreement and subject to Court approval, the Parties state they have stipulated to stay the *Thomas-Lawson* Lawsuit and agreed to continue an existing stay in the *Dawkins* Lawsuit. They further agree that Victoria Dawkins, Amy Thomas-Lawson, Brenda Boley, Miguel Padilla, and William Green shall be permitted to join the *Alexander* Lawsuit as named Plaintiffs through the conditional filing of a second amended complaint, the terms of which shall be set forth in a stipulation to be filed concurrently with the Motion for Preliminary Approval. The parties further stipulate that: (1) a Settlement Class consisting of borrowers in accordance with the definition of the Class set forth in this Agreement shall be certified in accordance with the definition of the Settlement Class set forth in this Agreement; (2) the Class Representatives shall represent the Class for settlement purposes; (3) Class Counsel shall represent the Class for settlement purposes; and (4) the *Thomas-Lawson* and *Dawkins* Lawsuits (including the *Thomas-Lawson* appeal pending in the United States Court of Appeals for the Ninth Circuit) shall be voluntarily dismissed with prejudice upon the Effective Date of this settlement.

Plaintiffs shall file an unopposed Motion for Preliminary Approval of the Settlement, attaching this Agreement with Exhibits, on or before May 25, 2022 or such other date as is ordered by the Court. In their Motion for Preliminary Approval, Plaintiffs shall request that the Court: (1) enter the Preliminary Approval Order; (2) certify, for settlement purposes only, the Class; (3) appoint Plaintiffs as Class Representatives; (4) appoint Class Counsel as counsel for the Class; (5) approve the Notice Program; (6) approve the procedures for objecting to and requesting exclusion from the Settlement;

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

and (7) schedule a Final Fairness Hearing. Carrington shall not oppose the motion and may file a statement of non-opposition. Carrington agrees that the total amount of Convenience Fees the Class paid to Carrington during the Class Period may be filed publicly on the docket and not under seal.

Plaintiffs will also submit, by the deadline set by the Court, a motion (1) seeking entry of the Final Approval Order; (2) confirming certification of the Class for settlement purposes; approving the Settlement; (3) finding the Notice Program was the best notice practicable under the circumstances and comported with all applicable requirements of law and due process; (4) confirming the release of the Released Claims; (5) identifying those who have timely and validly requested exclusion; and (6) confirming the retention of jurisdiction relating to the administration, consummation, validity, enforcement, and interpretation of this Agreement, the Final Approval Order, and any order granting any Fee and Expense Award and Service Awards, and for any other necessary purpose. Carrington will not oppose the motion and may file a statement of non-opposition.

This Agreement, which is proposed, will become effective upon the Effective Date.

In the event that this Agreement (including the Settlement provided for herein) is not finally approved, or is terminated or cancelled or fails to become effective for any reason whatsoever, the conditional class certification and conditional leave to file a second amended complaint, to which the Parties have stipulated solely for the purpose of the settlement of the each of the three Lawsuits, shall be null and void, and the second amended complaint in the *Alexander* Lawsuit shall be deemed to be withdrawn, and each of the three Lawsuits shall revert to their status as they existed prior to the date of this Agreement.

## IV.    THE SETTLEMENT TERMS

### A.  Funding of Settlement

The Gross Settlement Fund shall be used to pay, in the following order: (1) all Administrative Costs, (2) any taxes owed by the Gross Settlement Fund (but not any taxes owed by any individual

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

Class Counsel, Plaintiffs, or Class Members), (3) any Fee and Expense Award approved by the Court, (4) any Service Awards to the Class Representatives approved by the Court, and (4) Settlement Payments.

The Gross Settlement Fund shall be paid by Carrington to the Settlement Administrator after the entry of the final Preliminary Approval Order by the later of (i) within thirty-five (35) days after the entry of the final Preliminary Approval Order; or (ii) July 20, 2022. The Gross Settlement Fund shall be deposited into an interest-bearing account established by the Settlement Administrator and designated as a Qualified Settlement Fund pursuant to the Internal Revenue Code (the "Escrow Account") to be held in escrow pending the Effective Date. Any interest earned shall accrue to the benefit of the Class. The Parties agree to take all necessary and reasonable actions to qualify the Settlement Fund as a QSF.

The principal and interest in the Escrow Account (the amount deposited plus interest) shall be returned to Carrington within five (5) business days of any of the following events: (i) the Court determines not to enter a Final Approval Order, unless otherwise agreed in writing by the Parties; (ii) a Final Approval Order entered by the Court is set aside by an appellate court, unless otherwise agreed in writing by the Parties; or (iii) the Settlement does not occur for some other reason.

**B.   Settlement Payments and Distribution**

Settlement Class Members who paid at least one Convenience Fee are entitled to receive a payment of $5.00 from the Net Settlement Fund, with the remainder paid to Settlement Class Members on a pro rata basis, based upon the amount of Convenience Fees paid by each Settlement Class Member during the Class Period.  Co-borrowers on a single class account shall be entitled to a single total Settlement Payment per account. Settlement Class Members who receive a Settlement Payment shall be solely responsible for distributing or allocating such payment between or among all co-account holders.

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

Within fourteen (14) days of entry of the Final Approval Order, the Settlement Administrator shall calculate the Net Settlement Fund by deducting (1) the Administrative Costs incurred in connection with the Notice Program and any other Administrative Costs approved by the Parties; (2) any costs, fees, or other expenses that the Settlement Administrator expects reasonably to incur through the conclusion of the Settlement ("Projected Administrative Costs"); (3) the amount of any Court-approved Fee and Expense Award; and (4) the amount of any Court-approved Service Awards. The Settlement Administrator will provide Class Counsel and Carrington's Counsel with a document demonstrating this calculation. The Parties shall review and approve any Projected Administrative Costs, and approval shall not be unreasonably withheld. If at the conclusion of the Settlement administration not all of the Projected Administrative Costs are incurred, remaining amounts shall be distributed to the *Cy Pres* Recipient. In no event, however, shall the Settlement Administrator be paid in excess of the actual Administrative Costs, including Projected Administrative Costs.

Within thirty (30) days of the occurrence of the Effective Date, the Settlement Administrator shall pay by wire any Fee and Expense Award approved by the Court, and any Service Awards approved by the Court. Wiring instructions and W-9s shall be provided by Class Counsel to the Settlement Administrator on or before this deadline.

Within fourteen (14) days of the Effective Date, the Settlement Administrator shall calculate on a percentage basis and dollar basis the allocation to each Settlement Class Member to be made from the Net Settlement Fund and disseminate to the Parties' counsel a final list identifying each Settlement Class Member, the percentage of the Net Settlement Fund to be paid to each Settlement Class Member, and the amount of payment to each Settlement Class Member.

Settlement Payments shall be made by check or by digital payment methods available to Settlement Class Members via the Settlement Website. Within fourteen (14) days of the Effective Date, the Settlement Administrator shall send an email to all Settlement Class Members for whom

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

Carrington provided an email address advising them of the option to select a digital payment method on the Settlement Website, and stating that any Settlement Class Member who does not select a digital payment method shall receive their Settlement Payment by check.

For Settlement Class Members who select a digital payment option, the payments will be effectuated within thirty (30) days of the Effective Date unless there is a pending appeal from a Fee and Expense Award. For Settlement Class Members who do not select a digital payment option, Settlement Payments will be mailed by check within thirty (30) days of the Effective Date unless there is a pending appeal from a Fee and Expense Award. Prior to mailing checks, the Settlement Administrator shall attempt to update the last known addresses of Settlement Class Members through the National Change of Address database. If a check is returned and marked "Undeliverable", the Settlement Administrator shall make reasonable efforts to locate the Settlement Class Member, reissue the check and send it to a forwarding address.

Checks issued under this Settlement shall be negotiable for ninety (90) days after date of issuance. Individual checks that have not been negotiated within ninety (90) days after issuance shall be void. For good cause shown, Settlement Class Members may request that the Settlement Administrator reissue a check for one additional 90-day period. After one hundred and eighty (180) days from the date of issuance of the initial checks, any remaining funds in the Net Settlement Fund shall be distributed to Settlement Class Members via a secondary distribution. If the amount of remaining funds is so minimal that a secondary distribution would be impracticable or infeasible, then the remaining funds shall be distributed to the *Cy Pres* Recipient. Any funds remaining following a secondary distribution shall be distributed to the *Cy Pres* Recipient. In no event shall such remaining funds be returned to Carrington.

The Parties agree that all Class Members who do not opt out shall be solely responsible for any and all tax obligations associated with this Settlement. Nothing in this Agreement is intended to

constitute legal advice or tax advice. To the extent that this Agreement or any of its Exhibits are interpreted to contain or constitute advice regarding any state or federal tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding penalties under the Internal Revenue Code or any applicable state law.

### C.  Injunctive Relief

As of January 1, 2022, Carrington has ceased charging or collecting Convenience Fees to any borrower, while allowing borrowers to make payments by telephone, IVR or internet for free, which constitutes extraordinary prospective, future relief. Carrington agrees to refrain from the charging or collection of Convenience Fees for allowing borrowers to make payments by telephone, IVR or internet, for a period of at least three (3) years after entry of the Final Approval Order and agrees that the Lawsuits were a substantial factor in its decision to stop charging Convenience Fees.  Plaintiffs may file with the Court an estimate regarding how they value the injunctive relief based on the historical data that Carrington provided to Plaintiffs for the purpose of settlement.  To the extent the Court requires additional non-privileged information to make such determination, Carrington agrees not to unreasonably withhold its consent to file additional information.

### D.  Service Awards

On or before twenty-one (21) days prior to the Response Deadline, Class Counsel may apply to the Court for a Service Award from the Gross Settlement Fund for each Class Representative not to exceed $5,000 per Class Representative. Service Awards will be requested in recognition of the Class Representatives' service to the Settlement Class, in addition to any other relief to which they are entitled. Carrington shall not object to the Class Representatives' request for Court approval of Service Awards.

This Settlement is not conditioned upon the Court awarding any Service Awards and should the Court decline to approve any Service Awards, or should the Court approve Service Awards in

amounts less than that sought by Class Counsel, the remaining provisions of the Settlement shall be binding and effective.

### E.  Class Counsel's Fees and Expenses

On or before twenty-one (21) days prior to the Response Deadline, Class Counsel may apply to the Court for a Fee and Expense Award from the Gross Settlement Fund, not to exceed forty (40%) of the Gross Settlement Fund as reasonable attorneys' fees, plus Class Counsel's reasonable expenses incurred in the litigation. Carrington may respond to the Fee and Service Award Application as it deems appropriate. The Parties agree that the amount of attorneys' fees ultimately paid from the Gross Settlement Fund will not in any way reduce, increase, or otherwise modify Carrington's obligation to pay the agreed-upon sum for the Gross Settlement Fund. Class Counsel Fees shall be subject to approval by the Court. Bailey Glasser LLP shall be solely responsible for paying any monies due to any and all other counsel for Plaintiffs, out of the Fee and Expense Award. Carrington shall not be liable for any claims ensuing from distribution of attorneys' fees and expenses. The Parties did not discuss any award of attorneys' fees or expenses until the material terms of the Settlement were agreed.

In consideration of this Agreement, Class Counsel and Plaintiffs release the Released Entities from any and all claims for attorneys' fees or costs, by lien or otherwise, other than the amount awarded by the Court. Class Counsel and Plaintiffs further agree that the Fee and Expense Award, if any, shall compensate them for all legal work in the Action up to and including the Effective Date, as well as for all legal work and costs that may be incurred in the Action after the Effective Date.

This Settlement is not conditioned upon the Court awarding any Fee and Expense Award and should the Court decline to make a Fee and Expense Award, or approve a Fee and Expense Award less than that sought by Class Counsel, the remaining provisions of the Settlement shall be binding and effective.

### F.  Confirmatory Discovery

Carrington will provide Class Counsel reasonable confirmatory discovery as to the Class and the Convenience Fees they paid, if requested.

## V.      RELEASE

Upon the Effective Date, and in consideration for the Settlement Payment and for Carrington's other promises contained herein, each Settlement Class Member, for and on behalf of their present and future spouses (and common law spouses), children, parents, relations, successors, beneficiaries, heirs, next of kin, assigns, attorneys, executors, administrators, and/or estate, or any and all other persons who could claim through them, hereby unconditionally and irrevocably remises, releases, and forever discharges the Released Entities from the Released Claims and further covenants not to sue any of the Released Entities with respect to any of the Released Claims.

## VI.     NOTICE TO THE SETTLEMENT CLASS

No later than fourteen (14) days after entry of the Preliminary Approval Order, Carrington shall provide Plaintiffs' counsel and the Settlement Administrator the Class Member List in an electronic format.

As soon as practicable, but starting no later than thirty (30) days after the date that the Carrington provides the Class Member List to the Settlement Administrator, the Settlement Administrator shall cause the Email Notice to be sent to all Class Members for whom the Class Member List includes an email address, provided that the Preliminary Approval Order prescribes Class Notice by email. Carrington makes no representations as to the accuracy of any emails included in the Class Member List.

As soon as practicable, but starting no later than thirty (30) days after the date that Carrington provides the Class Member List to the Settlement Administrator, the Settlement Administrator shall cause the Postcard Notice to be sent to all Class Members for whom no email address appears on the

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

Class Member List. Prior to mailing Class Notice, the Settlement Administrator will update the last known addresses of the members of the Class using the National Change of Address database. Within a reasonable time prior to the Response Deadline, the Settlement Administrator shall also cause the Postcard Notice to be sent to all Class Members whose Email Notices are returned undeliverable, after running those Class Members' last known addresses through the National Change of Address database. If the Postcard Notice is returned with a forwarding address, the Settlement Administrator shall make one attempt to remail the Postcard Notice to that forwarding address, as soon as possible before the Response Deadline. If the Postcard Notice is returned undeliverable without a forwarding address, the Settlement Administrator shall make a reasonable attempt to locate an updated address and make one attempt to remail the Postcard Notice to the updated address, as soon as possible before the Response Deadline.

The Settlement Administrator shall mail or email the Long Form Notice to any Class member who requests a copy.

Prior to the date on which the Settlement Administrator mails the Postcard Notice, the Settlement Administrator shall establish the Settlement Website. The Settlement website shall contain: (1) the Long Form Notice in downloadable PDF format in both English and Spanish; (2) the Long Form Notice in HTML format with a clickable table of contents, described as answers to frequently asked questions; (3) a contact information page with contact information for the Settlement Administrator, and addresses and telephone numbers for Class Counsel and Carrington's Counsel; (4) the Settlement Agreement; (5) the signed Preliminary Approval Order and publicly filed motion papers and declarations in support thereof; (6) the operative complaints in each of the Actions; and (6) when they become available, the Fee and Service Award Application, the motion for entry of the Final Approval Order, and any motion papers and declarations filed publicly in support thereof. The

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

Settlement Website shall remain accessible until thirty (30) days after the Settlement Administrator has completed its obligations under the Settlement Agreement.

The Settlement Administrator shall also establish a 24-hour toll-free telephone line with information about frequently asked questions about the Settlement. The number shall be included in the Class Notice and posted on the Settlement Website.

The Settlement Administrator shall ensure that timely notice is provided to any state and federal officials as required by the Class Action Fairness Act (28 U.S.C. § 1715).

## VII.   OBJECTIONS AND OPTING OUT OF THE SETTLEMENT

**Request for Exclusion**. Class members have the right to request exclusion from the Settlement. The Class Notice shall advise Class Members of this right and the requirements for doing so.

Any Class Member may seek to be excluded from the Settlement Class by opting out by the Response Deadline. A request for exclusion must be in writing, postmarked on or before the Response Deadline, and include the name of the case. The request must also include the name, address, phone number and signature of the borrowers(s) seeking exclusion, as well as language clearly indicating a request for exclusion, such as "I wish to be excluded from the Settlement in *Alexander v. Carrington Mortgage Services, LLC*.". If there are co-borrowers on the loan, all co-borrowers must sign the request for exclusion. The request must be mailed to the address provided in the Class Notice. A request for exclusion that does not include all of the foregoing information, or that is sent to an address other than one designated in the Class Notice, or that is not received within the time specified shall be invalid and the person(s) serving such request shall remain a Class Member and shall be bound as a Settlement Class Member to the Agreement, if approved. The Settlement Administrator shall forward copies of all requests for exclusion to all counsel of record no later than seven (7) days after receipt. Any Class Member who opts out of the Settlement Class and the Agreement shall not be bound by

any prior court order or the terms of the Agreement. Any person who opts out of this Settlement is prohibited from objecting to the Settlement.

**Objecting to the Settlement**. Settlement Class Members have the right to object to the Settlement and/or the Fee and Service Awards Application. The Class Notice shall advise Class Members of this right and the requirements for doing so.

Any Settlement Class Member may object to this Agreement by mailing a written objection, postmarked on or before the Response Deadline, to the Court c/o the Class Action Clerk, United States District Court for the District of Maryland, 101 West Lombard Street, Baltimore, MD 21201 or by filing it in person on or before the Response Deadline at any location of the United States District Court for the District of Maryland. All objections must be in writing and personally signed by the Settlement Class Member and include: (1) the objector's name, address, email address if any, and telephone number; (2) the case caption; (3) the specific factual basis and legal grounds for the objection; (4) a list of all cases in which the objector has objected to a class action settlement, including case name, court, and docket number; (5) if the objector is represented by counsel, a list of all cases in which the objector's counsel has represented an objector in objecting to a class action settlement, case name, court, and docket number; (6) a statement indicating whether the Settlement Class Member and/or their lawyer(s) intend to appear at the Final Fairness Hearing; (7) a list of witnesses, if any, that the objecting Settlement Class Member intends to call; and (8) whether the objection relates only to the objector, or to a subset of the Settlement Class, or to the entire Settlement Class.

Any Settlement Class Member who has not submitted a timely request for exclusion may appear at the Final Fairness Hearing either in person or through an attorney. However, if the Settlement Class Member intends to appear through counsel, the Settlement Class Member must have submitted a written objection pursuant to this section. Any lawyer who intends to appear at the Final Fairness Hearing also must enter a written Notice of Appearance of Counsel with the Clerk of the

Court no later than the Response Deadline. Any Settlement Class Member who intends to request the Court to allow him or her to call witnesses at the Final Fairness Hearing must make such a request in a written brief, which contains a list of such witnesses and a summary of their requested testimony.

No person who has opted out of the Settlement may object to it. Any Settlement Class Member who does not provide a timely written objection or who does not make a record of his or her objection at the Final Approval Hearing shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement, Fee and Service Awards Application, or the Fee and Expense Award or Service Awards.

The Class Representatives, Class Counsel, and/or Carrington may file responses to any timely written objections no later than seven (7) days prior to the Final Fairness Hearing.

## VIII.   OBLIGATIONS OF THE SETTLEMENT ADMINISTRATOR

As discussed in more detail elsewhere in the Agreement, the Settlement Administrator shall execute a retainer agreement that shall provide, among other things, that the Settlement Administrator shall perform the duties, tasks, and responsibilities associated with providing notice and administering the Settlement, including the following: (1) preparing and disseminating the Class Notice; (2) maintaining the Settlement Website to allow class members to elect electronic payments; (3) keeping track of any requests for exclusion from and objections to the Settlement, including maintaining the original envelope in which they were mailed; (4) delivering to Class Counsel and Carrington's Counsel copies of any request for exclusion, objection, or, upon request, any other written or electronic communications from the Settlement Class; (5) making Settlement Payments; (6) performing any tax reporting duties required by this Agreement or any applicable law; (7) maintaining adequate records of its activities, including dates of transmission of the Postcard Notice and Email Notice, returned mail, and other communications and attempted communications with the Class; (8) confirming in

20

writing its completion of the administration of the Settlement; and (9) such other tasks as Class Counsel and Carrington's Counsel mutually agree.

The retainer agreement shall provide that Settlement Administrator understands and agrees that it will be provided with certain personal identifying information relating to the Class and agrees to keep the information secure utilizing security measures that, at a minimum, comply with all applicable laws, rules, and regulations, not disclose or disseminate it, and use the information solely for purposes of effectuating the Settlement. The Settlement Administrator shall agree that it shall be subject to the jurisdiction of the Court with respect to the administration of this Settlement.

The Settlement Administrator shall also be required to sign a Confidentiality Agreement, which sets forth, among other things, a timeline for the Settlement Administrator to destroy all email addresses.  The Settlement Administrator shall not utilize Class members' email addresses for any purpose other than effectuating this settlement.

Starting one week after the deadline to begin the Notice Program, the Settlement Administrator shall also provide weekly reports to Class Counsel and Carrington's Counsel concerning requests for exclusion and objections received during the prior week and to date.

Within five days of the Response Deadline, the Settlement Administrator shall provide Class Counsel and Carrington's Counsel with a report containing the information regarding requests for exclusion and objection, including timely and untimely requests for exclusion and objection. The Settlement Administrator shall provide a declaration to be submitted in support of the motion for entry of the Final Approval Order detailing the Notice Program and the number of valid requests for exclusion and objections received.

The Settlement Administrator shall also provide Class Counsel and Carrington's Counsel with a reconciliation and accounting of the Gross Settlement Fund at each of the following times: (1) no

later than ten (10) days after the Settlement Payments are made; and (2) no later than one hundred and eighty (180) days after the Settlement Payments are made.

All data created and/or obtained and maintained by the Settlement Administrator pursuant to this Agreement shall be destroyed twelve (12) months after the Final Report is submitted to the Court, provided that Class Counsel and Carrington's Counsel, or either of them, at their own cost, shall receive a complete copy of the Settlement Administrator's records (excluding specific account information), together with a declaration establishing completeness and authenticity, which they may maintain consistent with their own document retention policies.  To the extent Class Counsel receives a copy of the Class List, it shall be kept confidential by Class Counsel and shall not be used for any purposes other than the implementation of this Agreement.

## IX.    BINDING EFFECT OF AGREEMENT

This Agreement is binding upon and shall inure to the benefit of Settlement Class Members, as well as their heirs, successors, executors, personal or legal representatives, administrators, trustees, or anyone else claiming to have rights derived from or through the Settlement Class Member.

## X.    NOTICES

Any communication, verification, or notice sent by any Party in connection with this Agreement shall be sent by email and overnight mail as follows:

To Class Counsel:

James L. Kauffman
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
jkauffman@baileyglasser.com

Hassan A. Zavareei
Kristen G. Simplicio
1828 L Street NW, Suite 1000
Washington, D.C. 20036
hzavareei@tzlegal.com
ksimplico@tzlegal.com

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

<u>To Carrington's Counsel</u>:

Fredrick S. Levin
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
flevin@buckleyfirm.com

Scott T. Sakiyama
353 N. Clark Street, Suite 3600
Chicago, IL 60654
ssakiyama@buckleyfirm.com

## XI.   ENTIRE AGREEMENT

The Parties agree that this Agreement sets forth the entire understanding between the Parties. This statement is intended to satisfy all disclosure requirements of Rule 23 of the Federal Rules of Civil Procedure.

## XII.   CHOICE OF LAW

Except to the extent federal law applies, this Agreement and ancillary agreements shall be governed by and construed in accordance with the laws of the state of Maryland without respect to its choice of law principles.

## XIII.   REPRESENTATIONS

Plaintiffs represent and warrants that they have not sold, assigned, transferred or otherwise disposed of any of the claims, demands or rights that are the subject of this Agreement; and that they shall take all necessary action to effectuate the terms of this Agreement.

## XIV.   VOIDING OF AGREEMENT AND RIGHT TO WITHDRAW

If the Court declines to approve the Agreement and procedures contemplated herein, then the Agreement is automatically null, void, and of no force and effect. If the Court imposes any additional or increased burden, condition, or obligation upon a Party and that entity finds it to be unacceptable, that entity will have fourteen (14) days after written notice of such order becoming final to withdraw from this Agreement, in which case the Agreement shall be null, void, and of no force and effect.

However, in the event the Court determines any proposed Class Representative payment or Class Counsel's Fees, Costs, and Expenses should be reduced, it is expressly agreed and understood that such a decision by the Court shall not operate as a means by which a Party can withdraw from this Agreement.

## XV.    NO ADMISSION OF LIABILITY

This Agreement constitutes a compromise of disputed claims for purposes of achieving an amicable and efficient settlement.  Nothing in this Agreement or any of the procedures carried out pursuant thereto shall constitute or be construed as an admission of liability or wrongdoing on the part of the Released Entities. Nothing in this Agreement shall constitute an admission by the Released Entities that the Action was properly brought as a class or representative action other than for settlement purposes or an admission by the Released Entities of the propriety of the Action.

It is agreed that neither the existence of this Agreement, its contents, nor communications or negotiations culminating in this Agreement, may be used as evidence of liability or fault on the part of the Released Entities or any person or entity associated in any way with the Released Entities.

## XVI.    MISCELLANEOUS

This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by Class Counsel and Carrington's Counsel, and with Court approval.

This Agreement may be executed in multiple counterparts; in which case the various counterparts shall constitute one instrument for all purposes. The several signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies or electronic copies of executed copies of this Agreement may be treated as originals.

Each of the Parties hereto has jointly participated in the negotiation and drafting of this Agreement and each Party was represented by counsel of his or her own choosing throughout the negotiations. In the event an ambiguity or a question of intent or interpretation arises, this Agreement

shall be construed as if drafted jointly by each of the Parties hereto and no presumptions or burdens

of proof shall arise favoring any party by virtue of the authorship of any provisions of this Agreement

AGREED TO ON THE LATEST OF THE DATES SET FORTH BELOW.

Plaintiffs:

Victoria Dawkins: _____   DATE: 5/24/2022 _____

Amy Thomas-Lawson: _____   DATE: 5/24/2022 _____

Brenda Boley: _____   DATE: 5/24/2022 _____

Miguel Padilla: _____   DATE: 5/24/2022 _____

William Green: _____   DATE: 5/24/2022 _____

Ashly Alexander: _____   DATE: 5/24/2022 _____

Cedric Bishop: _____   DATE: 5/24/2022 _____

Carrington Mortgage Services, LLC

Name: _____   DATE: _____

Signed: _____

APPROVED AS TO FORM AND CONTENT:

BAILEY GLASSER LLP

By: _____   Date: 5/24/2022 _____
    James L. Kauffman

25

shall be construed as if drafted jointly by each of the Parties hereto and no presumptions or burdens

of proof shall arise favoring any party by virtue of the authorship of any provisions of this Agreement

AGREED TO ON THE LATEST OF THE DATES SET FORTH BELOW.

Plaintiffs:

Victoria Dawkins: _____    DATE: _____

Amy Thomas-Lawson: _____    DATE: _____

Brenda Boley: _____    DATE: _____

Miguel Padilla: _____    DATE: _____

William Green: _____    DATE: _____

Ashly Alexander: _____    DATE: _____

Cedric Bishop: _____    DATE: _____


Carrington Mortgage Services, LLC

Name: *Darren Fulco*_____    DATE: 5/25/2022_____

Signed: *Darren Fulco*_____
1E59A5E58D9140B...

APPROVED AS TO FORM AND CONTENT:


BAILEY GLASSER LLP

By: _____    Date: _____
        James L. Kauffman

25

TYCKO & ZAVAREEI LLP

By: _____ *Hassan Zavareei* _____          Date: ____ 5/25/2022 _____
340CF36D727E4AF...
    Hassan A. Zavareei
    Kristen G. Simplicio


CONSUMER LAW CENTER, LLC

By: _____ *Phillip Robinson* _____          Date: ____ 5/24/2022 _____
08574F0F56C34CE...
    Phillip R. Robinson


BUCKLEY LLP

By: _____          Date: _____
    Fredrick S. Levin

TYCKO & ZAVAREEI LLP

By: _____          Date: _____
      Hassan A. Zavareei
      Kristen G. Simplicio


CONSUMER LAW CENTER, LLC

By: _____          Date: _____
      Phillip R. Robinson


BUCKLEY LLP

By: _____          Date: May 24, 2022
      Fredrick S. Levin

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

# Exhibit A1

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

**A class action settlement may affect your rights if you paid Carrington Mortgage Services, LLC ("Carrington") a fee to make a residential loan payment by telephone, including through the use of the telephonic automated "IVR" (interactive voice response) system, or the internet between January 1, 2016 and December 31, 2021.**

**THIS NOTICE COULD AFFECT YOUR RIGHTS – PLEASE READ IT CAREFULLY**

*A court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- Carrington's records identify you as a Class Member.

- A proposed settlement requires Carrington to pay $18,181,898.65 to make payments to Class Members and to pay other fees and expenses.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| Do Nothing And Receive A Payment | If you are entitled under the Settlement to payment, you do not have to do anything to receive it. If the Court approves the Settlement and it becomes final and effective, and you remain in the Settlement Class (*i.e.*, you do nothing and do not otherwise exclude yourself from the Settlement), you will automatically receive a payment and will give up your right to bring your own lawsuit against Carrington about the claims in this case. |
| Exclude Yourself From The Settlement<br><br>Deadline: [Date] | Instead of doing nothing, you may ask to be excluded from the lawsuit. If you do so, you will receive no benefit from the Settlement, but you retain your right to sue on your own. |
| Object<br><br>Deadline: [Date] | You may object to the terms of the Settlement Agreement and have your objections heard at the [date] Final Approval Hearing. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

The United States District Court for the District of Maryland (the "Court") authorized this Notice. The following is a summary of the Settlement and of your rights. A full copy of the Settlement Agreement is available at **www.____.com.**

Questions? Call [number] or visit [website url].

## Basic Information

Three class action lawsuits have been filed against Carrington in Maryland, California, and Florida. They are entitled *Alexander v. Carrington*, Case No. 1:20-cv-2369-RDB (D. Md.), *Thomas-Lawson, et al. v. Carrington Mortgage Services*, LLC*.,* Case No. 2:20-cv-07301-ODW (Ex) (C.D. Cal.) and *Dawkins, et al. v. Carrington Mortgage Services*, LLC, Case No. 0:20-cv-60998 (S.D. Fla.). The *Thomas-Lawson* and *Dawkins* cases have been consolidated with the *Alexander* case for settlement before the U.S. District Court for the District of Maryland. The actions are collectively referred to here as the Action.

The Plaintiffs in the Action sued Carrington claiming that Carrington charged borrowers fees to make mortgage payments online or over the phone, including through the use of the telephonic automated "IVR" (interactive voice response) system ("Convenience Fees"). The Action asserts that Carrington's practice of charging such fees, among other things, violated the federal Fair Debt Collection Practices Act and state debt collection laws including, the Maryland Consumer Debt Collection Act, the Maryland Consumer Protection Act, the Texas Finance Code*,* the California Rosenthal Fair Debt Practices Act, the California Unfair Competition Law, the Florida Consumer Collection Practices Act, and the Florida Deceptive and Unfair Trade Practices Act, and breached the terms of the borrowers' loan agreements. Carrington denies these allegations. The Court has not decided who is right.

This notice summarizes the proposed settlement and your rights. For the precise terms and conditions of the settlement, please see the settlement agreement available at [website url], contacting the Settlement Administrator at [phone number] or by contacting class counsel at the addresses listed in Part ___ below, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.mdd.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the District of Maryland, 101 West Lombard Street, Baltimore, MD 21201 between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

## 1. Why is there a Notice?

A Court authorized this notice because you have a right to know about the proposed Settlement of this Action and about all of your options, before the Court decides whether to give Final Approval to the Settlement. This notice explains the Action, the Settlement and your legal rights.

Judge Richard D. Bennett, of the U.S. District Court for the District of Maryland, is overseeing this case. The case is known as *Alexander v. Carrington*, Case No. 1:20-cv-2369-RDB (D. Md.). The people who sued are called the "Plaintiffs." The Defendant is Carrington Mortgage Services, LLC.

## 2. What is this Action about?

The Action claims that Carrington charged borrowers fees to make mortgage payments online, or over the phone, including through the use of the telephonic automated "IVR" (interactive voice

Questions? Call [number] or visit [website url].

response) system ("Convenience Fees"). The Action asserts that Carrington's practice of charging such fees, among other things, violated the federal Fair Debt Collection Practices Act and state debt collection laws including the Maryland Consumer Debt Collection Act, the Maryland Consumer Protection Act, the Texas Finance Code, the California Rosenthal Fair Debt Practices Act, the California Unfair Competition Law, the Florida Consumer Collection Practices Act, and the Florida Deceptive and Unfair Trade Practices Act, and breached the terms of the borrowers' loan agreements. Carrington denies the allegations asserted in the Action.

The Amended Complaint in this Action is posted on [website url] and contains all of the allegations and claims asserted against Carrington.

## 3. Why is this a class action?

In a class action, one or more people, called Class Representatives (in this one, mortgage borrowers whose mortgages were serviced by Carrington and who paid Convenience Fees), sued on behalf of people who have similar claims.

All of the people who have claims similar to the Class Representatives are members of the Settlement Class, except for those who exclude themselves from the class.

## 4. Who is a Class Member?

The Court has determined that every person who fits the following description is a Class Member:

> All persons who paid a fee to Carrington for making a mortgage loan payment by telephone, IVR, or via the internet, between January 1, 2016 through December 31, 2021 ("Convenience Fees") who fall into one or more of the following groups:
>
> > (1) were borrowers on residential mortgage loans on properties located in California, Texas, New York, Maryland, or Florida;
> >
> > (2) were borrowers on residential mortgage loans on properties in the United States to which Carrington acquired servicing rights when such loans were 30 days or more delinquent on loan payment obligations; or
> >
> > (3) were borrowers on residential mortgage loans on properties located in the United States insured by the Federal Housing Administration.

## 5. Why is there a Settlement?

Both sides agreed to the Settlement. By agreeing to the Settlement, the Parties avoid the costs and uncertainty of a trial, and Settlement Class Members receive the benefits described in this notice. The Class Representatives and their attorneys think the Settlement is best for everyone who is affected.

Questions? Call [number] or visit [website url].

## 6. What are the terms of the proposed Settlement?

The complete terms of the proposed Settlement are set forth in a formal Settlement Agreement (the "Agreement") which is on file with the Court, and which is also available on the settlement website at:[website url]. This Notice is only a summary of the Settlement, and in case of any conflict between this Notice and the Agreement, the terms of the Agreement will control.

In the proposed Settlement, Carrington has agreed to create a $18,181,898.65 Common Fund. All Administrative Costs, any Court-awarded attorneys' fees and expenses to Class Counsel, and any Service Awards to the Class Representatives will be paid out of the Gross Settlement Fund first. The remaining balance of the settlement fund (the "Net Settlement Fund") will be distributed among the Class Representative and all Class Members who are not excluded from the class, as set forth below (the "Settlement Class Members"). If the Court awards all Administrative Costs, attorneys' fees and expenses, and Service Awards requested by the Parties, the Net Settlement Fund will be approximately $_____.

Also, as part of the Settlement, Carrington has agreed to stop charging fees for payments made online or by telephone, including through the use of the telephonic automated "IVR" (interactive voice response) system for three years.

Allocations of the Net Settlement Fund will be calculated on a borrower-by-borrower basis, such that each Settlement Class Member who paid at least one Convenience Fee will receive a minimum payment of $5 and the remaining funds will be distributed on a pro rata basis based on the amount of Convenience Fees each Settlement Class Member paid during the Class Period. Settlement Class Members who receive a Settlement Payment are solely responsible for distributing or allocating their payment between or among all co-account holders. By way of illustration, if you are a borrower on a loan that paid one percent of the total Convenience Fees collected by Carrington during the Class Period, you will be allocated one percent of the Net Settlement Fund.

**Attorneys' Fees and Expenses, and Service Award.** Class Counsel will ask the Court to award attorneys' fees in an amount not to exceed forty percent of the Settlement Fund, or $6,060,632.88, plus litigation costs and expenses.  Class Counsel will also request Court approval of Service Awards to the Class Representatives in the amount of $5,000 each.  Class Counsel will file that request, along with all supporting documents, at least 21 days prior to the deadline to opt-out from or object to the Settlement.  The Fee and Service Award Application and all supporting papers will be available for your review on the settlement website at [website url] The Court will determine the appropriate amount of the attorneys' fees and awards to be paid. The Settlement is not conditioned upon approval of any of the attorneys' fees, costs, or service award amounts.

**You are not required to make any payments to Class Counsel in this action.**

## 7. How Can I Get the Relief?

As long as you do not exclude yourself from the Settlement, you will automatically receive cash benefits from the Settlement, and you do not need to take further action.

Payments will be made by check mailed to Settlement Class Members, or, at the Settlement Class

Questions? Call [number] or visit [website url].

Member's election, by a digital method. Checks will be valid for 90 days. Settlement Class Members may request that the Settlement Administrator reissue a check for one additional 90-day period for good cause shown. If there is any amount in the Settlement Fund that remains following the distribution of checks to Settlement Class Members as a result of checks being returned undeliverable or which are not cashed within 90 days, those funds will be distributed on a *pro rata* basis to Settlement Class Members who cashed their checks. Within 180 days after the Settlement Administrator mails the first Settlement Class Member Payments, the administrator will decide whether Residual Funds should be distributed to the Settlement Class Members through a secondary distribution. If the amount of the remaining funds is so minimal that a secondary distribution would be impracticable or infeasible, then, subject to the Court's approval, the remaining funds shall be distributed to [CY PRES RECIPIENT], a 501(c)(3) charitable organization that works with nonprofits around the country on housing issues

## 8. When Will I Get the Relief?

As described below, the Court will hold a Fairness Hearing on [date] to decide whether to grant final approval of the Settlement.  The Court must finally approve the Settlement before any relief will be distributed, and it will only do so after finding that the Settlement is fair, reasonable, and adequate.  In addition, any final approval order the Court may enter may be subject to appeal.  If there are any such appeals, resolving them takes time.  Payments to Settlement Class Members will only be made after the time for any appeals expires. **Please be patient.**

## 9. Who Represents Me?

The Court has appointed Hassan A. Zavareei and Kristen G. Simplicio of Tycko & Zavareei LLP, James L. Kauffman of Bailey & Glasser LLP and Phillip Robinson of Consumer Law Center, LLC to represent you and other Class Members in this Action and for purposes of this Settlement, and for no other purpose.  These attorneys are called "Class Counsel."  You will not be charged for these lawyers.  If you want to be represented by your own lawyer in this case, you may hire one at your own expense.

You may contact Class Counsel at:

James Kauffman
Bailey & Glasser LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007

Hassan Zavareei
Kristen G. Simplicio
Tycko & Zavareei LLP
1828 L Street, NW – Suite 100
Washington, DC 20036

Phillip Robinson

Questions? Call [number] or visit [website url].

Consumer Law Center, LLC
10125 Colesville, MD, Suite 378
Silver Spring, MD 20901

**10. How will the lawyers be paid?**

Class Counsel will ask the Court to award attorneys' fees in an amount not to exceed forty percent of the Settlement Fund, or $6,060,632.88, plus litigation costs and expenses.  Class Counsel will also request Court approval of Service Awards to the Class Representatives in the amount of $5,000 each.  Class Counsel will file that request, along with all supporting documents, at least 21 days prior to the deadline to opt-out from or object to the Settlement.  The Fee and Service Award Application and all supporting papers will be available for your review on the settlement website at [website url].  The Court will determine the appropriate amount of the attorneys' fees and awards to be paid. The Settlement is not conditioned upon approval of any of the attorneys' fees, costs, or service award amounts.

**11. How do I exclude myself from the Settlement?**

If you do not want benefits from the Settlement and you want to keep the right to sue or continue to sue Carrington on your own about the legal issues in this case, then you must take steps to exclude yourself from the Settlement. This is called "opting out" of the Settlement Class.

If you choose to opt out of the Settlement, you must send a written statement to the Settlement Administrator that includes name, address, phone number and signature of the borrowers(s) seeking exclusion, as well as language clearly indicating a request for exclusion, such as "I wish to be excluded from the Settlement in *Alexander v. Carrington Mortgage Services, LLC.*" If there are co-borrowers on the loan, all co-borrowers must sign the request for exclusion.

You must mail your request for exclusion by no later than [Response deadline] to:

[SA address]

If you are a co-borrower or joint borrower on a loan covered by the Settlement and you opt out of the Settlement, all co-borrowers and/or joint borrowers on the loan must sign the request for exclusion and will also be excluded from the Settlement.  Similarly, if you are a co-borrower or joint borrower on a loan covered by the Settlement and another borrower on that loan is a Class Member who opts out of the Settlement, you must also sign the opt out and will also be excluded from the Settlement. If you do not opt out, and no co-borrower or joint borrower on your loan opts out, you (and your co-borrower(s) and/or joint borrower(s), if any) will be bound by this Settlement.

**12. If I do not exclude myself, can I sue Carrington for the same thing later?**

No. Unless you exclude yourself, you give up the right to sue Carrington for the claims that the Settlement resolves. You must exclude yourself from the Settlement Class in order to try to pursue your own lawsuit.

Questions? Call [number] or visit [website url].

**13. If I exclude myself, will I receive a payment?**

No. You will not receive a payment if you exclude yourself from the Settlement.

**14. How do I tell the Court that I don't like the Settlement?**

If you are a Class Member and have not requested to be excluded from the Settlement Class, you can object to any part of the Settlement, the Settlement as a whole, Class Counsel's requests for fees and expenses, and/or Class Counsel's request for Service Awards for the Class Representatives.

You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

The Court will accept objections that substantially comply with the objection requirements set forth below, and the submission of the following may be excused upon a showing of good cause. In particular, your objection must include the following:

- Your name, address, email address (if any), and phone number;
- The case caption, *Alexander v. Carrington*, Case No. 1:20-cv-2369-RDB (D. Md.);
- The specific legal and factual bases for your objection;
- A list of all cases in which you have objected to a class action settlement, including case name, court, and docket number;
- If you are represented by counsel, a list of all cases in which your counsel has represented an objector in objecting to a class action settlement, including the case name, court, and docket number;
- A statement indicating whether you and/or your counsel intend to appear at the Final Fairness Hearing;
- A list of witnesses, if any, that you intend to call;
- Whether the objection relates only to you, to a subset of the Settlement Class, or to the entire Settlement Class; and
- Your signature.

**You must also comply with [insert any local rules per D. Md – if none delete this].**

Any Class Member who has not submitted a timely request for exclusion may appear at the Final Fairness Hearing either in person at the online hearing held using Zoom videoconferencing software or through an attorney. However, if the Settlement Class Member intends to appear through counsel, the Settlement Class Member must have submitted a written objection pursuant to this section. Any lawyer who intends to appear at the Final Fairness Hearing also must enter a written Notice of Appearance of Counsel with the Clerk of the Court no later than the Response Deadline. Any Settlement Class Member who intends to request the Court to allow him or her to call witnesses at the Final Fairness Hearing must make such a request in a written brief, which contains a list of such witnesses and a summary of their requested testimony. These written notice requirements may be excused upon a showing of good cause.

Questions? Call [number] or visit [website url].

Your objection must be postmarked no later than [Response Deadline] and must be mailed to the Court c/o the Clerk of the Court for the United States District Court for the District of Maryland, 101 West Lombard Street, Baltimore, MD 21201 or filed in person on or before  [Response Deadline] at any location of the United States District Court for the District of Maryland.

**15.** **What am I agreeing to by remaining in the class in this case?**

If the Settlement receives final approval from the Court, the Settlement will be legally binding on all Settlement Class Members, including Settlement Class Members who object. If you, or someone acting on your behalf, are currently litigating claims against Carrington or other released parties that are the same as or similar to those addressed here, you will be barred from pursuing the claims released by the Settlement unless you validly opt out, as described above. Under the terms of the release, you will not be able to sue for any claim relating to Convenience Fees for mortgage payments made over the internet, and or by phone, including those made using the telephonic automated "IVR" (interactive voice response) system, between January 1, 2016 and December 31, 2021.

The full terms of the release, which will bind all Settlement Class Members as to certain claims against Carrington and certain affiliates and related entities ("Released Parties"), are set forth in the Settlement Agreement, which is on file with the Court, and which is available on the settlement website at: [website url]. Unless you exclude yourself, you will be a Settlement Class Member, and that means that any claims you have regarding fees Convenience Fees you paid to Carrington will be fully and completely resolved, and that you cannot sue, continue to sue, or be part of any other lawsuit against Carrington about Carrington's collection of Convenience Fees.  It also means that the Court's Orders approving the Settlement and the judgment in this case will apply to you and legally bind you.

If you want to keep the right to sue or continue to sue Carrington, on your own, about Carrington's collection of Convenience Fees, you must exclude yourself from the Settlement in this case.  If you exclude yourself, as set forth above, you will not receive any of the benefits of the Settlement, as described above.

**16.** **What Happens Next?**

The Court will hold a "Final Fairness Hearing" on _____, 20___, at _____.m.    using Zoom videoconferencing software, to hear any objections and to consider whether to give final approval to the Settlement.  Further information about the Zoom videoconference, including the public URL for the videoconference, will be available on the Court's website at [court zoom website]. The Court will hear objections at the hearing only from those who timely object to the Settlement, as described below.  You may participate in the Fairness Hearing with or without an attorney, but if you choose to be represented by an attorney, you must do so at your own expense.

**YOU DO NOT HAVE TO APPEAR AT THE HEARING TO RECEIVE THE BENEFITS OF THE SETTLEMENT.**

Questions? Call [number] or visit [website url].

You may ask the Court for permission to speak at the Final Fairness Hearing. To do so, you must send a letter saying that you intend to appear and wish to be heard. Your Notice of Intention to Appear must include the following:

- Your name, address and telephone number;
- A statement that this is your "Notice of Intention to Appear" at the Final Approval Hearing for the Settlement in *Alexander v. Carrington*, Case No. 1:20-cv-2369-RDB  (D. Md.);
- The reasons you want to be heard;
- Copies of any papers, exhibits, or other evidence or information that is to be presented to the Court at the Final Fairness Hearing; and
- Your signature.

You must submit your Notice of Intention to Appear no later than **[Response deadline],** to:


James Kauffman
Bailey & Glasser LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007

Hassan Zavareei
Kristen G. Simplicio
Tycko & Zavareei LLP
1828 L Street NW, Suite 1000
Washington, DC 20036

Fredrick Levin
Buckley LLP
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401

John Williams
Buckley LLP
2001 M Street NW, Suite 500
Washington, D.C.  20036

Scott Sakiyama
Buckley LLP
353 N Clark Street, Suite 3600
Chicago, IL  60654

[Settlement Administrator]


Questions? Call [number] or visit [website url].

**More Information Is Available**

This Notice is only a summary of the Settlement and the Agreement. More details can be found in the Settlement Agreement. You can obtain a copy of the Settlement Agreement, and additional court documents related to the Settlement, at www.[settlementwebsite].com.

If you have other questions regarding the Settlement, you may the Settlement Administrator at:

Settlement Administrator, c/o [phone number and email]

You may also contact Class Counsel at:

James Kauffman, Bailey & Glasser LLP, 1055 Thomas Jefferson Street NW, Suite 540, Washington, DC 20007, jkauffman@baileyglasser.com.

Hassan Zavareei and Kristen Simplicio, Tycko & Zavareei LLP, 1828 L Street NW, Suite 1000, Washington, DC 20036, hzavareei@tzlegal.com; ksimplicio@tzlegal.com.

You may also review the Court's file during regular court hours at:

United States District Court for the District of Maryland
101 West Lombard Street
Baltimore, MD 94102

**PLEASE DO NOT TELEPHONE THE COURT, THE JUDGE, OR THE CLERK OF THE COURT.**

Questions? Call [number] or visit [website url].

EXHIBIT A2

**(Email Notice)**

**From:** Carrington Mortgage Services Convenience Fee Settlement Administrator

**Subject Line:** Carrington Mortgage Services Convenience Fee Class Action Settlement

Content:

**A federal court authorized this notice. This is not a solicitation from a lawyer, and you are not being sued.**

You are receiving this notice because you could be affected by the settlement of class action lawsuits against Carrington Mortgage Services, LLC ("Carrington") involving Carrington's charging fees to borrowers to make mortgage payments by telephone, IVR (interactive voice response), or the internet ("Convenience Fees").

A Settlement has been reached in three class action lawsuits alleging that Carrington's practice of charging such fees, among other things, violated the federal Fair Debt Collection Practices Act and state debt collection laws, including Maryland, Texas, Florida, and California, and breached the terms of the borrowers' loan agreements. Carrington denies the allegations asserted in the lawsuits. The court has not decided who is right. Plaintiffs and the Carrington have agreed to settle the lawsuits to avoid the cost and uncertainty of litigation. You can read the Complaints, Settlement Agreement, and other case documents on the Settlement Website:

**http://www._____.com**

**Who's Included?** Carrington's records show you are a member of the Settlement Class. The **Settlement Class includes**:

> All persons who paid a fee to Carrington for making a mortgage loan payment by telephone, IVR, or via the internet, between January 1, 2016 through December 31, 2021 ("Convenience Fees'") who fall into one or more of the following groups:
>
>> (1) were borrowers on residential mortgage loans on properties located in California, Texas, New York, Maryland, or Florida;
>>
>> (2) were borrowers on residential mortgage loans on properties in the United States to which Carrington acquired servicing rights when such loans were 30 days or more delinquent on loan payment obligations; or
>>
>> (3) were borrowers on residential mortgage loans on properties located in the United States insured by the Federal Housing Administration.

**What are the Settlement terms?** Carrington has agreed to establish a Settlement Fund of $18,181,898.65 from which Settlement Class Members will receive payments by check, or by digital payment method. Subject to the Court's approval, the Settlement Fund will also be used to pay Settlement Notice and Administration Costs, Attorneys' Fees and Expenses to Class Counsel, and Service Awards for the Class Representatives. The Settlement Fund, net of any Settlement Notice and Administration Costs, Service Awards, and Attorneys' Fees and Expenses award by the Court ("Net Settlement Fund") will be distributed to Settlement Class Members *pro rata* according to the amount of Convenience Fees Settlement Class Members paid. If the Court

awards all Administrative Costs, Attorneys' Fees and Expenses, and Service Awards requested, the Net Settlement Fund will be approximately $_____.

Also as part of the Settlement, Carrington has agreed to refrain from charging fees for telephone, IVR, or internet payments for a period of at least three years. Carrington stopped charging such Convenience Fees as of January 1, 2022.

Settlement Class Members will automatically receive payments from the Net Settlement Fund based on the amount of fees that the Settlement Class Member paid. Settlement Class Members who paid at least one Convenience Fee are entitled to receive a payment of $5.00 from the Net Settlement Fund, with the remainder paid to Settlement Class Members on a pro rata basis, based upon the amount of Convenience Fees paid by each Settlement Class Member during the Class Period. Settlement Class Members are solely responsible for distributing or allocating Settlement Payments between or among all co-account holders.

Payments will be made by check mailed to Settlement Class Members, or, at the Settlement Class Member's election, by a digital payment method. Checks will be valid for 90 days. Settlement Class Members may request that the Settlement Administrator reissue a check for one additional 90-day period for good cause shown. If there is any amount in the Settlement Fund that remains following the distribution of checks to Settlement Class Members as a result of checks being returned undeliverable or which are not cashed within 90 days of issuance, those funds will be distributed on a *pro rata* basis to Settlement Class Members who cashed their checks. Within 180 days after the Settlement Administrator mails the first Settlement Class Member Payments, the administrator will decide whether these remaining funds should be distributed to the Settlement Class Members through a second distribution. If the amount of the remaining funds is so minimal that a second distribution would be impracticable or infeasible, then, subject to Court approval, the remaining funds shall be distributed to a *cy pres* recipient, a 501(c)(3) charitable organization that works on housing issues.

**Your Other Options:** If you do not want to be bound by the Settlement, you must exclude yourself by [Response deadline]. If you exclude yourself, you cannot get money from the Settlement. If you do not exclude yourself, you will release your claims against Carrington for the claims at issue in the lawsuits. Specifically, you will not be able to sue for any claim relating to Convenience Fees paid between January 1, 2016 and December 31, 2021. A more detailed Long Form Notice, available at **http://www.          .com** contains instructions for how to exclude yourself.

If you do not exclude yourself, you may object to the Settlement by [Response Deadline]. The more detailed Long Form Notice available at **http://www.          .com** contains instructions for how to object.

**Final Fairness Hearing:** The Court will hold a Final Fairness Hearing using Zoom videoconferencing. Further information about the Zoom videoconference, including the public URL for the videoconference, will be available on the Court's website at **https://www.          /**. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check the Settlement website at **http://www.          .com** for updates. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

At the Final Fairness Hearing, Class Counsel will ask the Court to award attorneys' fees in an amount not to exceed forty percent of the Settlement Fund, or $6,060,632.88, plus litigation costs and expenses. Class Counsel will also request Court approval of Service Awards to the Class Representatives in the amount of $5,000 each. Class Counsel will file that request, along with all supporting documents, at least 21 days prior to the deadline to opt-out from or object to the Settlement. The Fee and Service Award Application and all supporting papers will be available for your review on the Settlement website at **http://www._____.com**. The Court will determine the appropriate amount of the attorneys' fees and awards to be paid. The Settlement is not conditioned upon approval of any of the attorneys' fees, costs, or service award amounts.

If there are objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the Settlement. You may appear at the hearing, but you don't have to. You may hire your own attorney, at your own expense, to appear or speak for you at the hearing.

**If you do not take any action, you will be legally bound by the Settlement and any orders or Judgments entered in the Action, and will fully, finally, and forever give up any rights to prosecute certain claims against Carrington.**

This notice provides limited information about the Settlement. For more information call 1----[---] [---] [------] or visit http://www._____.com

# EXHIBIT A3

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

**If You Were Charged Fees by Carrington Mortgage Services, LLC, for Making a Mortgage Payment by Telephone, IVR, or Internet, You May Be Eligible for a Payment from a Class Action Settlement.**

A $18,181,898.65 Settlement has been reached in class action lawsuits alleging that Carrington Mortgage Services, LLC ("Carrington"). improperly charged fees to borrowers who made mortgage payments by telephone, IVR (interactive voice response), or internet ("Convenience Fees"). Carrington denies any wrongdoing. The Court has not decided who is right.

**Who's Included? Carrington's records show you are a member of the Settlement Class.** The Settlement Class includes: All persons who paid a fee to Carrington for making a mortgage loan payment by telephone, IVR, or via the internet, between January 1, 2016 through December 31, 2021 ("Convenience Fees") who fall into one or more of the following groups: (1) were borrowers on residential mortgage loans on properties located in California, Texas, New York, Maryland, or Florida; (2) were borrowers on residential mortgage loans on properties in the United States to which Carrington acquired servicing rights when such loans were 30 days or more delinquent on loan payment obligations; or (3) were borrowers on

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

residential mortgage loans on properties located in the United States insured by the Federal Housing Administration.

**What Are the Settlement Terms?** Carrington has agreed to establish a Settlement Fund of $18,181,898.65 from which Settlement Class Members will receive payments. Carrington has also agreed to refrain from charging Convenience Fees for three years. Once the Court approves the Settlement, each Settlement Class Member will automatically receive a payment for his or her portion of the Settlement Fund, after Court approved deductions for attorneys' fees and costs, administrative costs, service awards ("Net Settlement Fund"). There is no need to file a claim. The Net Settlement will be paid $5 to each Settlement Class Members who paid at least one Convenience Fee with the remainder distributed *pro rata* according to the amount of fees each paid. The Net Settlement Fund is estimated to be $_____. Class Counsel may seek up to 40% of the Settlement Fund for attorneys' fees plus reimbursement of litigation expenses, and the Class Representatives may each seek $5,000 as Service Awards.

**Your Rights May Be Affected.** If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement Class by ==**Month Day, 2022**==. If you do not timely exclude yourself, you will not be able to sue for any claim relating to Convenience Fees paid between January 1,

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

2019 and December 31, 2021. If you exclude yourself, or "opt out" of the Class, you won't get a payment. If you stay in the Settlement Class, you may object to the Settlement in writing by **Month Day, 2022**. A more detailed Long Form Notice, available at **http://www.PaytoPayFeeSettlement.com**, contains instructions for how to exclude yourself or object to the Settlement.

**The Fairness Hearing.** The Court will hold a hearing at __:__ __.m. **Month Day, 2022**, by Zoom videoconferencing. The link to the Zoom videoconference will be available at on the Court's website at **https://www._____/**. At the hearing the Court will consider whether to approve the Settlement and Class Counsel's request for attorneys' fees and expenses, and the plaintiffs' service awards. Unless you opt-out of the Settlement, you may appear at the hearing, but you are not required to attend. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing.

**How Can I Get More Information?** If you have questions or want more information about the lawsuits and your rights, visit **http://www._____.com**. You may obtain a detailed notice that explains how to exclude yourself from or object to the Settlement by visiting **http://www_____.com**, by calling **[number]**, or by writing to the Settlement Administrator, **[Address]**.

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

Settlement Administrator
PO Box XXXX
City, State XXXX

## Legal Notice about a Class Action Settlement

**If you were charged a fee by Carrington Mortgage Services for a telephone, internet, or IVR mortgage payment, you may be eligible for a payment from a class action settlement.**

Read this notice carefully.

You can also visit: **http://www._____.com** or call **[number]**

*Para una notificación en Español,*

*visite nuestro sitio de Web, [Settlement Website]*

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ASHLY ALEXANDER, CEDRIC BISHOP, AMY THOMAS-LAWSON, WILLIAM GREEN, BRENDA BOLEY, MIGUEL PADILLA, and VICTORIA DAWKINS | Case No. 1:20-cv-02369-RDB |

*On behalf of themselves individually and similarly situated persons.*

Plaintiffs,

v.

CARRINGTON MORTGAGE SERVICES, LLC,

Defendants.

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS**

Plaintiffs Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins, individually and on behalf of the proposed Settlement Class,[1] seek preliminary approval of a proposed Settlement of claims against defendant Carrington Mortgage Services LLC ("Carrington"). For the reasons set forth herein, the Court GRANTS preliminary approval and GRANTS preliminary certification of the Settlement Class for settlement purposes only.

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the parties' Settlement Agreement, attached as Exhibit 1 to the Declaration of Hassan A. Zavareei ("Zavareei Decl.").

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

## I.     BACKGROUND

Plaintiffs commenced separate actions in Maryland, California, and Florida. On July 10, 2020, Plaintiffs Ashly Alexander, a Maryland homeowner, initiated a class action lawsuit in the Circuit Court for Baltimore County, alleging that Carrington violated the Maryland Consumer Debt Collection Act ("MCDCA"), the Maryland Consumer Protection Act ("MCPA"), and Maryland's usury law. Dkt. 3. Carrington removed the case to this Court on August 17, 2020, Dkt. 1, and, on September 8, 2020, Plaintiffs filed an amended complaint, adding Plaintiff Cedric Bishop (also a Maryland homeowner) and an allegation that Carrington had violated the federal Fair Debt Collection Practices Act ("FDCPA"). *See* Dkt. 20.  Plaintiffs Amy Thomas-Lawson (Maryland), William Green (New York), Brenda Boley (Texas), and Miguel Padilla (California) initiated a class action lawsuit in this Court, Case No. 1:19-cv-03567-CCB (D. Md.), which was transferred to the Central District of California on August 13, 2020, Case No. 2:20-cv-07301-ODW(Ex) (C.D. Cal.). Plaintiffs Thomas-Lawson, Green, Boley, and Padilla alleged that Carrington had violated the FDCPA, California's Rosenthal Fair Debt Collections Act ("Rosenthal Act") and Unfair Competition Law ("UCL"), the Texas Debt Collection Act ("TDCA"), and the MCDCA and MCPA, as well as breached its contracts with the class members. *See Thomas-Lawson v. Carrington*, Case No. 2:20-cv-07301-ODW(Ex) (C.D. Cal.), ECF No. 1. And, on May 20, 2020, Plaintiff Victoria Dawkins initiated a class action in the Southern District of Florida against Carrington, alleging violations of the Florida Consumer Collection Practices Act ("FCCPA") and the Florida Deceptive Unfair Trade Practices Act ("FDUTPA"), as well as breach of contract and unjust enrichment. *See Dawkins v. Carrington*, Case No. 0:20-cv-60998-RAR (S.D. Fla.), ECF No. 1.

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

Although the three putative class actions were brought separately, each is based on one allegation: Carrington charged and collected millions of dollars in $5, $10, and $20 Convenience Fees from homeowners, in addition to their regular mortgage payments, and that this practice violated the FDCPA, the laws of Maryland, California, Florida, and Texas, and breached Plaintiffs' mortgage agreements. Carrington denies the allegations in the complaints and denies its actions were in any way unlawful.

Before this Court, Carrington moved to dismiss the complaint filed by Plaintiffs Alexander and Bishop. Dkt. 24. The Court granted the motion. Dkts. 32, 33. Plaintiffs appealed the dismissal, and, on January 19, 2022, the Fourth Circuit reversed. *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 376 (4th Cir. 2022).

In the *Thomas-Lawson* matter, Carrington moved to compel arbitration of the claims brought by Plaintiffs Boley and Green. *Thomas-Lawson*, Case No. 2:20-cv-07301-ODW(Ex) (C.D. Cal.), ECF No. 75. Carrington also moved to dismiss the complaint filed by Plaintiffs Thomas-Lawson, Green, Boley, and Padilla. *Thomas-Lawson*, ECF No. 76. On April 5, 2021, the Central District of California denied Carrington's motion to compel arbitration, but granted Carrington's motion to dismiss. *Thomas-Lawson*, ECF No. 97. Plaintiffs appealed to the Ninth Circuit, and that appeal is currently pending, but stayed pending consideration of this settlement. *See Thomas-Lawson v. Carrington Mortg. Servs.*, No. 21-55459 (9th Cir.).

In the *Dawkins* matter, Carrington moved to compel arbitration of Plaintiff Dawkins's claims. *Dawkins*, Case No. 0:20-cv-60998-RAR (S.D. Fla.), ECF No. 22. After the parties briefed the motion, the Southern District of Florida stayed the *Dawkins* matter pending resolution of *Carrington Mortgage Services, LLC v. Attix*, No. 20-13575-HH (11th Cir.), which involved a

similar arbitration issue and is currently on appeal, with a pending motion to stay pending consideration of this settlement.

After the Parties reached the proposed Settlement, the Parties agreed that, to preserve the resources of the Parties and the various courts, Plaintiffs' claims should be consolidated and a single Settlement Agreement considered and approved by this Court, rather than proceeding piecemeal. Thus, in advance of this Motion, the Plaintiffs filed, the current operative Second Amended Complaint consolidating their claims before this Court and also notified the *Thomas-Lawson* and *Dawkins* courts of the pending Settlement. The Parties have agreed to dismiss those cases following final approval of this Settlement.  Carrington consented to the filing of the Second Amended Complaint solely for purposes of settlement without admitting any of the allegations contained therein.

Plaintiffs' counsel and Carrington's counsel had at least three pre-mediation conferences where the discovery and the Parties' respective positions on the merits and damages were discussed. The proposed Settlement was negotiated during a fourteen-hour mediation before an experienced mediator, Jeff Kichaven. In advance of that mediation, Carrington provided Plaintiffs with substantial data demonstrating the size of the Settlement Class and the amount of the total Convenience Fees collected by Carrington from the Class during the class period at issue. Following the mediation, the Parties continued to negotiate the details of the Settlement before arriving at the Settlement Agreement currently before the Court.

## II.    SETTLEMENT TERMS

### A.    The Proposed Settlement Class

The Settlement Agreement contemplates certification of the following Settlement Class for settlement purposes only:

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

All persons who paid a fee to Carrington for making a mortgage loan payment by telephone, IVR, or via the internet, between January 1, 2016 through December 31, 2021 ("Convenience Fees") who fall into one or more of the following groups:

> (1) were borrowers on residential mortgage loans on properties located in California, Texas, New York, Maryland, or Florida;

> (2) were borrowers on residential mortgage loans on properties in the United States to which Carrington acquired servicing rights when such loans were 30 days or more delinquent on loan payment obligations; or

> (3) were borrowers on residential mortgage loans on properties located in the United States insured by the Federal Housing Administration.

The proposed Settlement Class is identical to the class definition included in the Second Amended Complaint.

### B.     Benefits to the Settlement Class

The Settlement Agreement, if approved, will create a $18,181,898.65 common fund and will resolve the claims of Plaintiffs and the Settlement Class Members deriving from Carrington's practice of charging fees for making mortgage payments by telephone, IVR, or via the internet ("Convenience Fees"). The common fund, which represents approximately 35% of the total Convenience Fees collected by Carrington from the Class during the class period, will provide cash payments to Settlement Class Members, as well as Administrative Costs to provide notice and administer the settlement, and any Fee and Expense Award and Service Awards that the Court may approve. Settlement Class Members need not submit a claim form in order to receive monetary compensation. Settlement Class Members who paid at least one Convenience Fee are entitled to receive a payment of $5.00 from the Net Settlement Fund, with the remainder paid to Settlement Class Members on a *pro rata* basis, based upon the amount of Convenience Fees paid by each Settlement Class Member during the Class Period.

In addition to the common fund, the Settlement includes important and valuable injunctive relief. As of January 1, 2022, Carrington has ceased charging or collecting Convenience Fees to

any borrower, while allowing borrowers to make payments by telephone, IVR or the internet for free. As a result of this Settlement, Carrington also agrees to refrain from the charging or collection of Convenience Fees for allowing borrowers to make payments by telephone, IVR or the internet, for a period of at least three years after entry of the Final Approval Order. The prospective relief of this settlement term is expected, based upon the discovery exchanged, to have an approximate value of $8M per year (based on the average of the last 4 years Carrington collected the fees) going forward for the putative class members who still have loans serviced by Carrington.

**C.     Settlement Administrator and Administration Costs**

The proposed Settlement Administrator is Epiq, a leading class action administration firm in the United States. Plaintiffs' counsel obtained and reviewed proposals from several prominent settlement administrators before deciding on Epiq based on overall cost and value to the Settlement Class. The Administrative Costs will be paid from the Gross Settlement Fund.

**D.     Class Member Release**

Upon the Effective Date, and in consideration for the Settlement Payment and for Carrington's other promises contained herein, each Settlement Class Member, for and on behalf of their present and future spouses (and common law spouses), children, parents, relations, successors, beneficiaries, heirs, next of kin, assigns, attorneys, executors, administrators, and/or estate, or any and all other persons who could claim through them, hereby unconditionally and irrevocably remises, releases, and forever discharges the Released Entities from the Released Claims and further covenants not to sue any of the Released Entities with respect to any of the Released Claims.

"Released Claims" means any and all claims, counterclaims, actions, causes of action, suits, set-offs, costs, losses, expenses, sums of money, accounts, reckonings, debts, charges, complaints, controversies, disputes, damages, judgments, executions, promises, omissions, duties,

agreements, rights, and any and all demands, obligations and liabilities, of whatever kind or character, direct or indirect, whether known or unknown, at law or in equity, by right of action or otherwise, arising out of, based upon, or related in any way to the facts, allegations, disputes that are the subject matter of the Lawsuits or the charging, collection, or attempted collection of Convenience Fees from the beginning of the world to the Effective Date, which the Settlement Class Member ever had or may have in the future.

"Released Entities" means Carrington and each of its past, present and future directors, officers (whether acting in such capacity or individually), shareholders, advisors, owners, partners, joint venturers, principals, trustees, creditors, law firms, attorneys, representatives, employees, managers, parents, direct or indirect subsidiaries, divisions, subdivisions, departments, entities in common control, affiliates, insurers, reinsurers, control persons, predecessors, and successors or any agent acting or purporting to act for them or on their behalf, as well as any investor on whose behalf Carrington services any loan to any Settlement Class Member, and each of their past, present and future directors, officers (whether acting in such capacity or individually), shareholders, advisors, owners, partners, joint venturers, principals, trustees, creditors, law firms, attorneys, representatives, employees, managers, parents, direct or indirect subsidiaries, divisions, subdivisions, departments, entities in common control, affiliates, insurers, reinsurers, control persons,  predecessors, and successors or any agent acting or purporting to act for them or on their behalf, and, any entity on whose behalf Carrington services any loan to any Class Member.

E.      **Proposed Plan of Notice**

The Parties' proposed Notice Plan consists of direct notice in the form of Postcard Notice and Email Notice, as well as a Settlement Website where Class Members may view and download a Long Form Notice. Class Members may also request that the Settlement Administrator mail or email them a copy of the Long Form Notice.

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

Within 14 days or such other time as provided in the Preliminary Approval Order, Carrington, at its own expense, will compile the Class Member List and provide it to the Settlement Administrator and Class Counsel.

As soon as practicable but starting no later than thirty (30) days after the date that the Defendant provides the Class Member List to the Settlement Administrator, the Settlement Administrator shall cause the Email Notice to be sent to all Settlement Class Members for whom the Class Member List includes an email address.

As soon as practicable but starting no later than thirty (30) days after the date that the Defendant provides the Class Member List to the Settlement Administrator, the Settlement Administrator shall cause the Postcard Notice to be sent to all Settlement Class Members for whom no email address appears on the Class Member List. Prior to mailing Class Notice, the Settlement Administrator will update the last known addresses of the members of the Settlement Class using the National Change of Address database. Within a reasonable time before the Response Deadline, the Settlement Administrator shall also cause the Postcard Notice to be sent to all Settlement Class Members whose Email Notices are returned undeliverable, after running those Settlement Class Members' last known addresses through the National Change of Address database. If the Postcard Notice is returned with a forwarding address, the Settlement Administrator shall make one attempt to remail the Postcard Notice to that forwarding address, as soon as possible before the Response Deadline. If the Postcard Notice is returned undeliverable without a forwarding address, the Settlement Administrator shall make a reasonable attempt to locate an updated address and make one attempt to remail the Postcard Notice to the updated address, as soon as possible before the Response Deadline.

The Settlement Administrator shall mail or email the Long Form Notice to any Settlement Class member who requests a copy.

Prior to the date on which the Settlement Administrator mails the Postcard Notice, the Settlement Administrator shall establish the Settlement Website. The Settlement Website shall contain: (1) the Long Form Notice in downloadable PDF format in both English and Spanish; (2) the Long Form Notice in HTML format with a clickable table of contents, described as answers to frequently asked questions; (3) a contact information page with contact information for the Settlement Administrator, and addresses and telephone numbers for Class Counsel and Defendant's Counsel; (4) the Settlement Agreement; (5) the signed Preliminary Approval Order and publicly filed motion papers and declarations in support thereof; (6) the operative complaints in each of the Actions; and (7) when they become available, the Fee and Service Award Application, the motion for entry of the Final Approval Order, and any motion papers and declarations filed publicly in support thereof. The Settlement Website shall remain accessible until 30 days after the Settlement Administrator has completed its obligations under the Settlement Agreement.

The Settlement Administrator shall also establish a 24-hour toll-free telephone line with information about frequently asked questions about the Settlement. The number shall be included in the Class Notice and posted on the Settlement Website.

The Settlement Administrator will also ensure that the necessary and timely notice is provided to any state and federal officers as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

**F.      Opt-Outs and Objections**

The Class Notice will advise Class Members of their right to opt out of the Settlement or to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

expenses and/or Service Award to the Class Representatives, and of the associated deadlines to opt out or object.

Class Members who choose to opt out must submit a written request for exclusion. Any request for exclusion must be postmarked on or before the "Response Deadline"—105 days after entry of the Preliminary Approval Order. Any request for exclusion must include the name of the case, and the name, address, phone number, and signature of the borrower or borrowers seeking exclusion and must contain language clearly indicating a request for exclusion. If there are co-borrowers on the loan, all co-borrowers must sign the request for exclusion. Any Class Member who does not submit a request to opt out in accordance with the deadlines and other requirements will be bound by the Settlement absent a court order to the contrary.

Class Members who wish to object to the Settlement must mail a written objection, postmarked on or before the Response Deadline, to the Court c/o the Class Action Clerk (reference to Case No. 1:20-cv-02369-RDB), United States District Court for the District of Maryland, 101 West Lombard Street, Baltimore, MD 21201 or by filing it in person on or before the Response Deadline at any location of the United States District Court for the District of Maryland. All objections must be in writing and personally signed by the Class Member and include: (1) the objector's name, address, email address if any, and telephone number; (2) the case caption; (3) the specific factual basis and legal grounds for the objection; (4) a list of all cases in which the objector has objected to a class action settlement, including case name, court, and docket number; (5) if the objector is represented by counsel, a list of all cases in which the objector's counsel has represented an objector in objecting to a class action settlement, case name, court, and docket number; (6) a statement indicating whether the Class Member and/or their lawyer(s) intend to appear at the Final Fairness Hearing; (7) a list of witnesses, if any, that the objecting Class Member intends to call;

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

and (8) whether the objection relates only to the objector, or to a subset of the Settlement Class, or to the entire Settlement Class.

Any Class Member who has not submitted a timely request for exclusion may appear at the Final Fairness Hearing either in person or through an attorney. However, if the Class Member intends to appear through counsel, the Class Member must have submitted a written objection pursuant to this section. Any lawyer who intends to appear at the Final Fairness Hearing also must enter a written Notice of Appearance of Counsel with the Clerk of the Court no later than the Response Deadline. Any Class Member who intends to request the Court to allow him or her to call witnesses at the Final Fairness Hearing must make such a request in a written brief, which contains a list of such witnesses and a summary of their requested testimony.

No person who has opted out of the Settlement may object to it. Any Class Member who does not provide a timely written objection or who does not make a record of his or her objection at the Final Approval Hearing shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement, Fee and Service Awards Application, or the Fee and Expense Award or Service Awards.

### G.    Attorneys' Fees and Costs and Service Award

The Settlement Agreement contemplates Class Counsel petitioning the Court for attorneys' fees, as well as documented, customary costs incurred by Class Counsel. The Settlement Agreement provides that Class Counsel may seek attorneys' fees in an amount not to exceed forty percent of the Gross Settlement Fund (40%) as well as reasonable expenses incurred in the litigation. Any approved Fee and Expense Award will be paid from the Gross Settlement Fund prior to distribution to the Settlement Class Members.

On or before 21 days prior to the Response Deadline, Class Counsel will file a petition for attorneys' fees and costs explaining why the requested Fee and Expense Award is reasonable. Carrington has not agreed to any award of attorneys' fees or expenses and reserves the right to respond as it deems appropriate.

Class Counsel may also petition the Court for up to $5,000 each for Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins as Service Awards as compensation for their time and effort in the Action. Any approved awards will be deduced from the Gross Settlement Fund prior to distribution to the Settlement Class Members.

Neither final approval, nor the size of the Common Fund, are contingent upon approval of the full amount of requested Fee and Expense Award or Service Awards.

## III.    FINDINGS AND ORDERS

### A.    The Settlement Agreement warrants preliminary approval.

1.    The Court finds, on a preliminary basis, that the Settlement Agreement appears to be within the range of reasonableness of a settlement that could ultimately be given final approval by this Court. The Court has reviewed the terms of the Settlement and preliminarily finds the Settlement to be fair, reasonable, and adequate. The Court finds that the Settlement contains no obvious deficiencies and that the Parties entered into the settlement in good faith, following arm's length negotiations between their respective counsel. The Settlement meets the considerations set forth in Federal Rule of Civil Procedure 23(e) and *In re Jiffy Lube Sec.* Litig., 927 F.2d 155 (4th Cir. 1991).

2.    In the Fourth Circuit, courts look to a four-factor test to evaluate the fairness of a class settlement: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the

experience of counsel in the area of [the] class action litigation." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159.[2] As to the posture of the case, it appears that the Settlement was reached after significant work was performed, including motions practice with respect to motions to dismiss and motions to compel arbitration, as well as appeals before the Fourth and Ninth Circuits. Although the parties did not engage in formal discovery, it appears Carrington provided substantial informal discovery to allow Class Counsel to intelligently evaluate the Settlement offered against the risks and benefits of continued litigation. The provision of informal damages discovery is sufficient to satisfy the fairness factor. *In re Jiffy Lube*, 927 F.2d at 159 (recognizing that informal discovery can provide satisfactory information prior to preliminary approval). Thus, the first two fairness factors warrant preliminary approval.

3.      The third factor—the circumstances surrounding the negotiations—also supports preliminary approval. The Settlement was negotiated with the assistance of Jeff Kichaven, an experienced mediator, and appears to be the result of extensive, arm's length negotiations between the Parties after Class Counsel and Carrington's Counsel had investigated the claims, extensively litigated them, and become familiar with the claims' strengths and weaknesses. Further, the Parties did not discuss attorneys' fees or a Service Award until after agreeing upon the material terms of the Settlement. The Settlement appears not to be collusive, has no obvious defects, and falls within the range of reasonableness.

4.      With respect to the fourth factor, Class Counsel and Carrington's Counsel are experienced in class action litigation. Moreover, it appears to the Court that the Class

---

[2] The Fourth Circuit has recognized that these "factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 n.8 (4th Cir. 2020).

Representatives and Class Counsel have adequately represented the proposed Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(A). Class Counsel are experienced and sophisticated, with years of experience in complex class action litigation and litigation involving mortgage servicers, financial institutions, and fees. The Class Representatives have also supervised the litigation by reviewing pleadings, reviewing the Settlement, and communicating with Class Counsel regarding the litigation.

6.      It appears to the Court that the terms of the proposed award of attorneys' fees and expenses are fair and reasonable. However, prior to final approval, Class Counsel shall file a separate motion seeking approval of Attorneys' Fees and Expenses in an amount not to exceed forty percent (40%) of the Gross Settlement Fund, plus their reasonable expenses of litigation. In this submission, Class Counsel will set forth the specific legal and factual bases for their request for attorneys' fees and expenses. It likewise appears to the Court that the proposed Service Awards are fair and reasonable.

5.      Accordingly, the Court preliminarily finds that the Settlement is fair.

6.      In assessing the adequacy of the settlement, the Court looks to "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159.

7.      The first and second factors, which are generally considered together, evaluate "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult one." *In re The Mills Corp. Securities*

*Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009). Although the Fourth Circuit reversed this Court's dismissal of Plaintiff Alexander and Bishop's complaint, there are still numerous factual and legal issues in dispute. In addition, Plaintiff Thomas-Lawson, Green, Boley, and Padilla's appeal of the dismissal of their FDCPA and California, Texas, and Maryland statutory claims is still pending before the Ninth Circuit, and there are open questions regarding whether Carrington could compel arbitration of some of the Plaintiffs' and class members' claims. Plaintiffs' motion describes the legal issues that would be decided before this Court and before the *Thomas-Lawson* and *Dawkins* courts should the settlement not be approved, both on the merits and at class certification.

8.      With respect to the third factor, the likely duration and expense of continued litigation is substantial. While litigation presents serious risks at many stages, not to mention substantial expense and delay without any guarantee of additional benefit to the Settlement Class, the Settlement provides immediate and substantial benefits to over 442,059 Class Members.

9.      Finally, Carrington appears to be solvent.

10.     Accordingly, the Court preliminarily finds that the Settlement is adequate.[3]

11.     It appears to the Court that the Settlement is fair, reasonable, and adequate when balanced against the probable outcome of further litigation, liability, and damages issues, and potential appeals of rulings. The amount offered in Settlement represents approximately 35% of potential damages, as well as significant injunctive relief. Finally, it appears to the Court that the Parties' proposed allocation of the Settlement is fair and reasonable. Settlement Class Members who paid at least one Convenience Fee are entitled to receive a payment of $5.00 from the Net Settlement Fund, with the remainder paid to Settlement Class Members on a *pro rata* basis, based

---

[3] The fifth *Jiffy Lube* factor, the degree of opposition to the settlement, cannot be evaluated until after class notice has gone out and Class Members have had an opportunity to opt out or object to the settlement.

upon the amount of Convenience Fees paid by each Settlement Class Member during the Class

Period. According to this allocation, Class Members are treated fairly as to one another because

they are compensated according to the amount of Convenience Fees they were charged. *See* Fed.

R. Civ. P. 23(e)(2)(D). This method is consistent with the distribution of common funds in other

fee cases. *See, e.g.*, *Lembeck v. Arvest Central Mortgage Co.*, Case No. 3:20-cv-03277, 2021 WL

5494940(N.D. Cal. Aug. 26, 2021) (approving settlement from which class members would

receive *pro rata* distribution of common fund based on number of fees paid); *Fernandez v.

Rushmore*, Case No. 8:21-cv-00621-DOC-(KEXc) (C.D. Cal. Feb. 14, 2022) (same); *Phillips v.

Caliber Home Loans, Inc.*, Case No. 0:19-cv-2711, 2022 WL 832085 (D. Minn. Mar. 21, 2022)

(same). A *pro rata* distribution means that Settlement Class Members who paid more Convenience

Fees will receive a relatively larger share of the Settlement Fund, and those who paid fewer will

receive less. This allocation treats Settlement Class Members equitably.

> **B.      Certification of the Settlement Class for settlement purposes is appropriate.**

On a motion for preliminary approval, the parties must also show that the Court "will likely

be able to … certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1).

The Court finds for purposes of settlement only that the Settlement Class meets all of the

requirements of Fed. R. Civ. P. 23(a) and (b)(3).

1.      It appears to the Court for purposes of settlement only that the proposed Settlement

Class is sufficiently numerous that joinder would be logistically impossible. The proposed

Settlement Class consists of over 442,059 Class Members. The numerosity requirement is

satisfied.

2.      It appears to the Court for purposes of settlement only that there is a commonality

of interests between the Settlement Class Members, including both questions of law and questions

of fact. Plaintiffs' claims here depend on the common contentions that Convenience Fees are

neither authorized by class members' mortgages nor permitted by law. For the same reason, the predominance requirement of Fed. R. Civ. P. 23(b)(3) is satisfied for settlement purposes.

3.      It appears to the Court for purposes of settlement only that the Class Representatives' claims are typical of those of the Settlement Class Members. The Class Representatives' claims arise from the same alleged course of conduct as those of the Settlement Class Members. The typicality requirement is satisfied.

4.      It appears to the Court for purposes of settlement only that the Class Representatives and Class Counsel are adequate representatives and have no conflicts with the proposed Settlement Class.

5.      It appears to the Court for purposes of settlement only that a class action is a superior method of resolving the claims of the Settlement Class Members, which are of modest amounts.

**C.      The proposed Notice Plan is approved.**

Due process under Rule 23 requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort.").

It appears to the Court that the proposed Notice Plan, which consists of Email Notice and Postcard Notice to be sent directly to Class Members, as well as a Long Form Notice, Settlement Website, and toll-free phone line, comports with due process, Rule 23, and all other applicable law. The five attorneys being appointed as Class Counsel herein have overseen several other settlements against mortgage loan servicers for similar practices for which email notice was used and final approval granted. *See, e.g.*, *Phillips v. Caliber Home Loans, Inc.*, Case No. 0:19-cv-2711,

2022 WL 832085, at *5 (D. Minn. Mar. 21, 2022). Given the relatively small value at stake for each class member, the Court finds that email notice is the best practicable notice under the circumstances and orders that Carrington provide email addresses to the Settlement Administrator for each Class Member for whom it is in possession of such information. *See, e.g.*, *Galloway v. Williams*, No. 3:19-cv-470, 2020 WL 7482191, at *6 (E.D. Va. Dec. 18, 2020) (where defendant "maintained loan records that included the borrowers' names, addresses, and frequently, email addresses," sending initial notice by email "and only mailing the notice if an email bounced back as undeliverable or no email existed for a particular Settlement Class Member" was both reasonable and provided the "best notice practicable under the circumstances"); *Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-1050, 2021 WL 6750844, at *4 (E.D. Va. Nov. 19, 2021) (finding that notice made either by first class mail or by email for Class Members for whom the defendant had an existing email address constituted "the best notice practicable").

Moreover, the substance of the proposed Class Notice will fully apprise class members of their rights. Under Rule 23(e), notice to class members must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)). The Notice contains all the critical information required to apprise Class Members of their rights under the settlement, directs them to the Settlement Website, where they can obtain more detailed information, and provides a toll-free number for Class Members to call with questions. This approach to notice is adequate. The Court also finds that the proposed costs associated with the Notice Plan appear to be fair and reasonable.

## IV.    SCHEDULE AND PROCEDURES

The Court orders the following schedule and procedures for disseminating the Notice, requesting exclusion from the Settlement Class, objecting to the Settlement, filing the Fee and Service Award Application, and filing the motion for final approval:

| Date | Event |
|---|---|
| 14 days from Preliminary Approval Order | Carrington to provide Class Member List to the Settlement Administrator |
| 30 days from the date that the Defendant provides the Class Member List to the Settlement Administrator | Settlement Administrator to cause Email Notice to be sent to Settlement Class Members with email addresses |
| 30 days from the date that the Defendant provides the Class Member List to the Settlement Administrator | Settlement Administrator to cause Postcard Notice to be sent to Settlement Class Members without email addresses |
| 30 days from Preliminary Approval Order | Settlement Administrator to establish Settlement Website and toll-free telephone line |
| 84 days from Preliminary Approval Order | Deadline for Class Counsel to file Fee and Service Award Application |
| 105 days from Preliminary Approval Order | Response Deadline (deadline to request exclusion or file objections) |
| __ days prior to Final Approval Hearing | Deadline to file Motion for Final Approval |
| 7 days prior to Final Approval Hearing | Deadline for the Parties to respond to objections |
| [_____] | Final Approval Hearing |

## V.    FINAL APPROVAL HEARING

The Court shall hold a Final Approval Hearing on _____ at _____ at the United States District Court for the District of Maryland, United States Courthouse, 101 West Lombard Street, Chambers 5D, Baltimore, MD 21201, before the Honorable Richard E. Bennett, for a final determination whether the proposed Settlement is fair, reasonable, and adequate.

Objections by Settlement Class Members will be considered if filed in writing with the clerk by the Response Deadline above. Settlement Class Members who have not requested exclusion may be heard orally in support of or opposition to the Settlement. Settlement Class Members who wish to appear at the Final Approval Hearing through counsel are required to file a notice with the Clerk of his or her desire to appear personally, and counsel must file a notice of appearance on the docket. Settlement Class Members proceeding *pro se* are requested, but not required, to file a notice with the Clerk of his or her desire to appear personally.

## VI.   OTHER PROVISIONS

Class Counsel and Defendant are authorized to take, without further Court approval, all necessary and appropriate steps to implement the Settlement, including the proposed Notice Plan and confirmatory discovery. The deadlines set forth in this Order may be extended by Order of the Court without further notice to Settlement Class Members, except that notice shall be posted on the Settlement Website. Settlement Class Members should check the Settlement Website regularly for updates and further details regarding the deadlines. Exclusions and objections must meet the deadlines and follow the requirements set forth in the approved Class Notice to be valid, although the Court will accept exclusions and objections deemed to be in substantial compliance.

If for any reason the Court does not execute and file an Order of Final Approval, or if the Effective Date does not occur for any reason, the Parties will be restored to the *status quo ante* as set forth more specifically in the Settlement.

## VII.   CONCLUSION

Accordingly, the Court having considered the Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of the Settlement Class, it is hereby ORDERED that:

1.      The Motion is GRANTED;

2.      The proposed Settlement Class is certified for settlement purposes only pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure;

3.      The proposed Settlement is preliminarily approved as being fair, reasonable, and adequate pursuant to Rule 23(e);

4.      Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins are appointed as Class Representatives;

5.      Hassan A. Zavareei, Kristen G. Simplicio, James L. Kauffman, and Phillip Robinson are appointed as Class Counsel;

6.      Carrington is ordered to provide the Class Member List to the Settlement Administrator, including email addresses where available, who is ordered to follow the confidentiality provisions set forth in the Settlement Agreement with respect to such information; and

7.      The proposed Notice Plan complies with the requirements of Rule 23 and Due Process, and Class Notice is to be sent to the Settlement Class Members as set forth in the Settlement Agreement and pursuant to the deadlines above.

**IT IS SO ORDERED.**

Dated: _____                    _____
                                                  Hon. Richard E. Bennett
                                                  United States District Judge

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

**IT IS SO ORDERED.**

Dated: _____

_____
Hon. Richard E. Bennett
United States District Judge

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ASHLY ALEXANDER, CEDRIC BISHOP, AMY THOMAS-LAWSON, WILLIAM GREEN, BRENDA BOLEY, MIGUEL PADILLA, and VICTORIA DAWKINS | Case No. 1:20-cv-02369-RDB |

*On behalf of themselves individually and similarly situated persons.*

Plaintiffs,

v.

CARRINGTON MORTGAGE SERVICES, LLC,

Defendants.

## [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins, individually and on behalf of the proposed Settlement Class,[1] seek final approval of a proposed Settlement of claims against defendant Carrington Mortgage Services LLC ("Carrington"). For the reasons set forth herein, the Court GRANTS the motion.

## I.    BACKGROUND

Plaintiffs commenced separate actions in Maryland, California, and Florida, each challenging Carrington's practice of charging borrowers fees to make mortgage payments over the phone or online, alleging violations of applicable state or federal laws. On July 10, 2020, Plaintiffs

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the parties' Settlement Agreement, attached as Exhibit 1 to the Declaration of Hassan A. Zavareei ("Zavareei Decl.").

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

Ashly Alexander initiated a class action in the Circuit Court for Baltimore County, alleging that Carrington violated the Maryland Consumer Debt Collection Act ("MCDCA"), the Maryland Consumer Protection Act ("MCPA"), and Maryland's usury law. Dkt. 3. Carrington removed the case to this Court on August 17, 2020, Dkt. 1, and, on September 8, 2020, Plaintiffs filed an amended complaint, adding Plaintiff Cedric Bishop and an allegation that Carrington violated the federal Fair Debt Collection Practices Act ("FDCPA"). *See* Dkt. 20.  Plaintiffs Amy Thomas-Lawson, William Green, Brenda Boley, and Miguel Padilla initiated a class action lawsuit in this District, Case No. 1:19-cv-03567-CCB (D. Md.), which was transferred to the Central District of California on August 13, 2020, Case No. 2:20-cv-07301-ODW(Ex) (C.D. Cal.). Plaintiffs Thomas-Lawson, Green, Boley, and Padilla alleged that Carrington violated the FDCPA, California's Rosenthal Fair Debt Collections Act ("Rosenthal Act") and Unfair Competition Law ("UCL"), the Texas Debt Collection Act ("TDCA"), and the MCDCA and MCPA, as well as breached its contracts with the class members. *See Thomas-Lawson v. Carrington*, Case No. 2:20-cv-07301-ODW(Ex) (C.D. Cal.), ECF No. 1. And, on May 20, 2020, Plaintiff Victoria Dawkins initiated a class action in the Southern District of Florida against Carrington, alleging violations of the Florida Consumer Collection Practices Act ("FCCPA") and the Florida Deceptive Unfair Trade Practices Act ("FDUTPA"), as well as breach of contract and unjust enrichment. *See Dawkins v. Carrington*, Case No. 0:20-cv-60998-RAR (S.D. Fla.), ECF No. 1.

Before this Court, Carrington moved to dismiss the amended complaint filed by Plaintiffs Alexander and Bishop. Dkt. 24. The Court granted the motion. Dkts. 32, 33. Plaintiffs appealed the dismissal of the MCDCA and MCPA claims, and, on January 19, 2022, the Fourth Circuit reversed the dismissal of the claims brought under the MCDCA and reversed in part and affirmed

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

in part the claims brought under the MCPA. *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 376 (4th Cir. 2022).

After the Parties reached the proposed Settlement, they agreed that, to preserve the resources of the Parties and the various courts, Plaintiffs' claims should be consolidated and a single Settlement Agreement considered and approved by this Court, rather than proceeding piecemeal. Thus, in advance of this Motion, the Plaintiffs filed, with the consent of Carrington for settlement purposes only, the current operative Second Amended Complaint consolidating their claims before this Court and also notified the *Thomas-Lawson* and *Dawkins* courts of the pending Settlement. The Parties have agreed to dismiss those cases following final approval of this Settlement.

Plaintiffs' counsel and Carrington's counsel had at least three pre-mediation conferences where the discovery and the Parties' respective positions on the merits and damages were discussed. The proposed Settlement was negotiated during a fourteen-hour mediation before an experienced mediator, Jeff Kichaven. Following the mediation, the Parties continued to negotiate the details of the Settlement before arriving at the Settlement Agreement currently before the Court for final approval.

On _____, 2022, this Court granted preliminary approval of the proposed settlement and approved the issuance of notice to the Class. Dkt. ___.  A hearing on final approval was held on _____, 2022.

## II.    SETTLEMENT TERMS

### A.    The Proposed Settlement Class

The Settlement Agreement contemplates certification of the following Settlement Class for settlement purposes only:

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

All persons who paid a fee to Carrington for making a mortgage loan payment by telephone, IVR, or via the internet, between January 1, 2016 through December 31, 2021 ("Convenience Fees") who fall into one or more of the following groups:

> (1) were borrowers on residential mortgage loans on properties located in California, Texas, New York, Maryland, or Florida;

> (2) were borrowers on residential mortgage loans on properties in the United States to which Carrington acquired servicing rights when such loans were 30 days or more delinquent on loan payment obligations; or

> (3) were borrowers on residential mortgage loans on properties located in the United States insured by the Federal Housing Administration.

The proposed Settlement Class is identical to the class definition included in the Second Amended Complaint.

### B.    Benefits to the Settlement Class

The Settlement Agreement, if approved, will create a $18,181,898.65 common fund and will resolve the claims of Plaintiffs and the Settlement Class Members deriving from Carrington's practice of charging fees for making mortgage payments by telephone, IVR, or via the internet ("Convenience Fees"). The common fund, which represents approximately 35% of the total Convenience Fees collected by Carrington from the Class during the class period, will provide cash payments to Settlement Class Members, as well as Administrative Costs to provide notice and administer the settlement, and any Fee and Expense Award and Service Awards that the Court may approve. Settlement Class Members need not submit a claim form in order to receive monetary compensation. Settlement Class Members who paid at least one Convenience Fee are entitled to receive a payment of $5.00 from the Net Settlement Fund, with the remainder paid to Settlement Class Members on a *pro rata* basis, based upon the amount of Convenience Fees paid by each Settlement Class Member during the Class Period.

In addition to the common fund, the Settlement includes valuable injunctive relief. As of January 1, 2022, Carrington ceased charging Convenience Fees to any borrower, while allowing

borrowers to make payments by telephone, IVR or the internet for free. Carrington agrees to refrain from the charging or collecting Convenience Fees for allowing borrowers to make payments by telephone, IVR or the internet, for a period of at least three years after entry of the Final Approval Order. Carrington agrees that Plaintiffs' Lawsuits were a substantial factor in its decision to stop charging Convenience Fees. Based on the overall amounts collected from Class Members, the Court notes that Carrington was collecting at least an average of $8,000,000 per year from the class in Convenience Fees.

### C.  Settlement Administrator and Administration Costs

The proposed Settlement Administrator is Epiq, a leading class action administration firm in the United States. Plaintiffs' counsel obtained and reviewed proposals from several prominent settlement administrators before deciding on Epiq based on overall cost and value to the Settlement Class. The Administrative Costs will be paid from the Gross Settlement Fund.

### D.  Class Member Release

Upon the Effective Date, and in consideration for the Settlement Payment and for Carrington's other promises contained herein, each Settlement Class Member, for and on behalf of their present and future spouses (and common law spouses), children, parents, relations, successors, beneficiaries, heirs, next of kin, assigns, attorneys, executors, administrators, and/or estate, or any and all other persons who could claim through them, hereby unconditionally and irrevocably remises, releases, and forever discharges the Released Entities from the Released Claims and further covenants not to sue any of the Released Entities with respect to any of the Released Claims.

"Released Claims" means any and all claims, counterclaims, actions, causes of action, suits, set-offs, costs, losses, expenses, sums of money, accounts, reckonings, debts, charges, complaints, controversies, disputes, damages, judgments, executions, promises, omissions, duties,

agreements, rights, and any and all demands, obligations and liabilities, of whatever kind or character, direct or indirect, whether known or unknown, at law or in equity, by right of action or otherwise, arising out of, based upon, or related in any way to the facts, allegations, disputes that are the subject matter of the Lawsuits or the charging, collection, or attempted collection of Convenience Fees from the beginning of the world to the Effective Date, which the Settlement Class Member ever had or may have in the future.

"Released Entities" means Carrington and each of its past, present and future directors, officers (whether acting in such capacity or individually), shareholders, advisors, owners, partners, joint venturers, principals, trustees, creditors, law firms, attorneys, representatives, employees, managers, parents, direct or indirect subsidiaries, divisions, subdivisions, departments, entities in common control, affiliates, insurers, reinsurers, control persons, predecessors, and successors or any agent acting or purporting to act for them or on their behalf, as well as any investor on whose behalf Carrington services any loan to any Settlement Class Member, and each of their past, present and future directors, officers (whether acting in such capacity or individually), shareholders, advisors, owners, partners, joint venturers, principals, trustees, creditors, law firms, attorneys, representatives, employees, managers, parents, direct or indirect subsidiaries, divisions, subdivisions, departments, entities in common control, affiliates, insurers, reinsurers, control persons, predecessors, and successors or any agent acting or purporting to act for them or on their behalf, and, any entity on whose behalf Carrington services any loan to any Class Member.

### E.    Notice to the Settlement Class

Notice was sent to Class members pursuant to the Settlement Agreement and the Court's Order granting preliminary approval. The Class Notice consisted of direct notice in the form of Postcard Notice and Email Notice, as well as a Settlement Website where Class Members could view and request to be sent the Long Form Notice. The Class Notice adequately described the

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

litigation and the Settlement Agreement and the procedures to opt out and object. The Notices further explained the amount of the Settlement, the plan of allocation, Class Counsel's intent to apply for an award of attorneys' fees and expenses and for Class Representative' Service Awards. Notice was also provided to state and federal officers as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

### F.   Attorneys' Fees and Costs and Service Award

The Settlement Agreement contemplates Class Counsel petitioning the Court for an award of attorneys' fees, plus documented, customary costs incurred by Class Counsel. The Settlement Agreement provides that Class Counsel may seek attorneys' fees in an amount not to exceed forty percent of the Gross Settlement Fund (40%) as well as reasonable expenses incurred in the litigation. Any approved Fee and Expense Award will be paid from the Gross Settlement Fund prior to distribution to Settlement Class Members. The Settlement Agreement also authorizes Class Counsel to petition the Court for Service Awards of up to $5,000 each for Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins as compensation for their time and effort in the Action. Any approved awards will be deducted from the Gross Settlement Fund before distribution to Settlement Class Members.

Neither final approval, nor the size of the Common Fund, are contingent upon approval of the full amount of requested Fee and Expense Award or Service Awards.

## III.   LEGAL STANDARD FOR FINAL APPROVAL

Settlement of class actions must be approved by the Court. Fed. R. Civ. P. 23(e); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991); *Whitaker v. Navy Fed. Credit Union,* No. 09CV2288, 2010 WL 3928616, at *2 (D. Md. Oct. 4, 2010); *McDaniels v. Westlake Servs., LLC,* No. CIV.A. ELH-11-1837, 2014 WL 556288, at *8 (D. Md. Feb. 7, 2014).

As of December 1, 2018, Rule 23(e) provides specific guidance to federal courts in considering whether to grant final approval of a class action settlement. The Rule 23(e)(2) final approval factors include whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at an arm's length; (C) the relief provided is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);[2] and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Before 2018, to determine whether a settlement meets the requirements of Rule 23 and warrants final approval, the Fourth Circuit adopted a bifurcated analysis involving inquiries into the fairness and adequacy of the settlement, still utilized today. *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158; *Donaldson v. Primary Residential Mortg., Inc.,* No. CV ELH-19-1175, 2021 WL 2187013, at *3 - 4 (D. Md. May 28, 2021) (citing Rule 23(e)(2) factors and *Jiffy Lube* factors in assessing final approval).

In assessing the fairness of a proposed settlement, the Court looks to the following Fourth Circuit factors: (1) posture of the case at the time the settlement is proposed; (2) extent of discovery that has been conducted; (3) circumstances surrounding the negotiations; and (4) experience of counsel in the relevant area of class action litigation. *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Robinson v. Nationstar Mortg. LLC,* No. 8:14-CV-03667-TJS,

---

[2] Here there is no agreement required to be identified under Rule 23(e)(3).

2020 WL 8256177, at *2 (D. Md. Dec. 11, 2020), *aff'd sub nom. McAdams v. Robinson*, 26 F.4th

149 (4th Cir. 2022).

In determining the adequacy of the proposed settlement, the Fourth Circuit factors instruct

the Court to consider: (1) the relative strength of plaintiff's case on the merits; (2) existence of any

difficulties of proof or strong defenses plaintiff is likely to encounter if the case proceeds to trial;

(3) anticipated duration and expense of additional litigation; (4) solvency of defendant and

likelihood of recovery of a litigated judgment; and (5) degree of opposition to the

settlement. *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159;

*Robinson v. Nationstar Mortg. LLC,* at *2. Many of these factors overlap with the Rule 23(e)

factors cited above.[3]

## IV.   FINDINGS AND ORDER

The Court finds that the Settlement Agreement is fair, reasonable, and adequate and

warrants final approval under the applicable Rule 23 and Fourth Circuit factors.

1.      With respect to the adequacy and experience of counsel, Class Counsel and

Carrington's Counsel are experienced in class action litigation. Moreover, it appears to the Court

that the Class Representatives and Class Counsel have adequately represented the proposed

Settlement Class. Class Counsel are experienced and sophisticated, with years of experience in

complex class action litigation and litigation involving mortgage servicers, financial institutions,

and fees. The Class Representatives have also supervised the litigation by reviewing pleadings,

---

[3] The Fourth Circuit has recognized that these "factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 n.8 (4th Cir. 2020).

reviewing the Settlement, and communicating with Class Counsel regarding the litigation. Rule 23(e)(2)(A) and the fourth fairness factor are satisfied.

2.     The Court finds that the Settlement was negotiated at arm's length before an experienced mediator and between experienced and sophisticated counsel. The settling Parties vigorously contested motions to dismiss, contested appeals from rulings on the motions, and engaged in formal settlement mediation with the assistance of a professional mediator.  "These adversarial encounters dispel any apprehension of collusion between the parties." *In re NeuStar, Inc. Sec. Litig.*, No. 1:14–CV–885(JCC/TRJ), 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015). The Settlement was negotiated with the assistance of Jeff Kichaven, an experienced mediator, after extensive litigation, that enabled each side to assess the strengths and weaknesses of their claims. Further, the Parties did not discuss attorneys' fees or a Service Award until after agreeing upon the material terms of the Settlement. The Settlement satisfies Rule 23(e)(2)(B), and the third *Jiffy Lube* fairness factor.

3.     As to the posture of the case, it appears that the Settlement was reached after significant work was performed, including motions practice with respect to motions to dismiss and motions to compel arbitration, as well as appeals before the Fourth and Ninth Circuits. Although the Parties did not engage in formal discovery, it appears Carrington provided substantial informal discovery to allow Class Counsel to intelligently evaluate the Settlement offered against the risks and benefits of continued litigation. The provision of informal damages discovery is sufficient to satisfy the fairness factor. *In re Jiffy Lube*, 927 F.2d at 159 (recognizing that informal discovery can provide satisfactory information prior to preliminary approval). Thus, the first two fairness factors are met: the case was sufficiently advanced, and sufficient discovery was completed.

DocuSign Envelope ID: 2CDB81DD-40F4-49B5-961A-2097E9EE3D49

6.      With regard to the adequacy of the Settlement, Rule 23(e)(2)(C)(i), and the first two *Jiffy Lube* adequacy factors focus on the relief provided, in light of (1) the strength of the plaintiffs' case on the merits, and (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; Rule 23(e)(2)(C)(i)(requiring evaluation of the relief provided taking into account the costs and risks of trial and appeal). These factors weigh "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult one." *In re The Mills Corp. Securities Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009). The Settlement relief is fair, reasonable, and adequate when balanced against the probable outcome of further litigation, liability, and damages issues, and potential appeals of rulings. The amount offered in Settlement represents approximately 35% of the total Convenience Fees collected by Carrington from the Class during the class period, as well as significant injunctive relief.

Although the Fourth Circuit reversed this Court's dismissal of Plaintiff Alexander and Bishop's amended complaint, there are still numerous factual and legal issues in dispute. In addition, Plaintiff Thomas-Lawson, Green, Boley, and Padilla's appeal of the dismissal of their FDCPA and state law claims is still pending before the Ninth Circuit, and there are open questions regarding whether Carrington could compel arbitration of some of the Plaintiffs' and class members' claims. Plaintiffs' motion for preliminary approval describes the legal issues that would remain to be decided by this Court and the *Thomas-Lawson* and *Dawkins* courts should the settlement not be approved, both on the merits and at class certification.

4.      Rule 23(e)(2)(C)(i) and *Jiffy Lube* adequacy factor three require the Court to consider the likely duration and expense of continued litigation. While litigation presents serious

risks at many stages, not to mention substantial expense and delay without any guarantee of additional benefit to the Settlement Class, the Settlement provides immediate and substantial benefits to over 442,059 Class Members.

5.      Carrington appears to be solvent, so the fourth *Jiffy Lube* adequacy factor is neutral.

6.      Finally, it appears to the Court that the Parties' proposed allocation of the Settlement, and plan for distribution is equitable and effective, as required by Rule 23(e)(2)(C)(ii). Settlement Class Members who paid at least one Convenience Fee are entitled to receive a payment of $5.00 from the Net Settlement Fund, with the remainder paid to Settlement Class Members on a *pro rata* basis, based upon the amount of Convenience Fees paid by each Settlement Class Member during the Class Period. According to this allocation, Class Members are treated fairly as to one another because they are compensated according to the amount of Convenience Fees they were charged. *See* Fed. R. Civ. P. 23(e)(2)(D). This method is consistent with the distribution of common funds in other fee cases. *See, e.g.*, *Lembeck v. Arvest Central Mortgage Co.*, Case No. 3:20-cv-03277-VC, 2021 WL 5494940 (N.D. Cal. Aug. 26, 2021) (approving settlement from which class members would receive *pro rata* distribution of common fund based on number of fees paid); *Fernandez v. Rushmore*, Case No. 8:21-cv-00621-DOC-(KEXc) (C.D. Cal. Feb. 14, 2022) (same); *Phillips v. Caliber Home Loans, Inc.*, Case No. 0:19-cv-2711 (WMW/LIB), 2022 WL 832085 (D. Minn. Mar. 21, 2022) (same). A *pro rata* distribution means that Settlement Class Members who paid more Convenience Fees will receive a relatively larger share of the Settlement Fund, and those who paid fewer will receive less. This allocation treats Settlement Class Members equitably.

7.      The Court finds that early resolution of this Action will conserve the resources of the Parties and the Court, while at the same time, the Parties have vigorously litigated the legal

issues and Carrington provided sufficient informal discovery to permit Class Counsel and the Court to intelligently evaluate the Settlement offered against the risks and benefits of continued litigation.

8.      The Court finds that the amount of attorneys' fees requested by Class Counsel, 40% of the Gross Settlement Fund, to be reasonable and aligns with other class actions where Maryland courts have awarded attorneys' fees. *See e.g.*, *Dickman v. Banner Life Ins. Co.*, No. 1:16-CV-00192-RDB, 2020 WL 13094954, at *5 (D. Md. May 20, 2020), *aff'd sub nom. 1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513 (4th Cir. 2022) (awarding fees of 39.5 % of common fund); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 685 (D. Md. 2013) (citing cases, noting that courts award fees ranging from 15 to 40% in settlements under $100 million).

9.      The Court also notes that in addition to the Gross Settlement Fund, the Settlement includes valuable injunctive relief that, when taken into account as additional benefit to the Settlement Class, means that the attorneys' fees requested by Class Counsel are significantly less than 40% of the total monetary benefit to the Settlement Class.

10.      Class Counsel are entitled to reimbursement of reasonable out-of-pocket litigation expenses.  Fed. R. Civ. P. 23(h).  "It is well-established that plaintiffs who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their overall award." *Kabore v. Anchor Staffing, Inc.*, No. L–10–3204, 2012 WL 5077636, at *10 (D. Md. Oct. 17, 2012). The Fourth Circuit has stated that such costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988) (internal quotations omitted). Here, Class Counsel seeks reimbursement of $_____ in litigation

expenses, which includes the cost of a private mediator. They have provided records that document their claim. *See* Zavareei Decl. ¶ ##; Kauffman Decl. ¶ ##. The court therefore finds that these submissions support an award of $_____ in costs.

11.     Service Awards are routinely made to class representatives in Rule 23 class actions. *See, e.g., In re Tyson Foods, Inc.,* No. RDB–08–1982, 2010 WL 1924012, at *4 (D. Md. May 11, 2010). "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). To determine whether an incentive payment is warranted, a court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* Here, the Plaintiffs came forward to represent the interests of thousands of others, with very little personally to gain, as their individual alleged damages were very small. Before and during litigation, Plaintiffs had their highly sensitive financial information regarding their mortgage agreements inspected. Plaintiffs participated in the litigation by reviewing the complaint and other filings and making themselves available to assist with discovery. And Plaintiffs all worked with counsel to initiate separate cases, taking the substantial risk they might, at a minimum, lose their case and pay the other side's costs. Thus, the Court approves a $5,000 award each for Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins.

12.     The Court confirms the certification for settlement purposes of the Settlement Class for the reasons stated in the preliminary approval Order, none of which have changed.

13.     The Court confirms the appointment of Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins as Class Representatives.

14.     The Court confirms the appointment of Hassan A. Zavareei, Kristen G. Simplicio, James L. Kauffman, and Phillip Robinson as Class Counsel.

15.     The Court finds that the approved Class Notice constituted the best notice practicable under the circumstances and was in full compliance with the applicable laws and the requirements of due process. The Court further finds that the Class Notice fully and accurately informed the Class Members of all material elements of the proposed Settlement, of their right to be excluded from the Settlement, and of their right and opportunity to object to the Settlement. The Court also finds that the Class Notice complied with the Class Action Fairness Act, 28 U.S.C. § 1715.

15.     All timely objections have been considered and are overruled.

16.     All members of the Settlement Class who timely requested exclusion are excluded from the Settlement.

17.     The Court confirms the *cy pres* recipient as NeighborWorks America and the Maryland Consumer Rights Coalition.

18.     All Class Members who did not timely request exclusion are hereby bound by the terms of the Settlement Agreement, including the release.

Accordingly, the Court having considered the Motion for Final Approval of Class Action Settlement, it is hereby ORDERED that:

1.      The Motion is GRANTED;

2.      The proposed Settlement is approved as being fair, reasonable, and adequate pursuant to Rule 23(e);

3.      Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins are confirmed as Class Representatives;

4.      Hassan A. Zavareei, Kristen G. Simplicio, James L. Kauffman, and Phillip Robinson Kauffman are confirmed as Class Counsel;

5.      The Court awards $_____ in attorneys' fees and $_____ in reimbursed costs to Class Counsel;

6.      The Court approves $_____ Service Awards each to Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins;

7.      Without affecting the finality of the Court's judgment in any way, the Court retains jurisdiction over this matter for purposes of resolving issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement;

8.      Based on the foregoing, the Court sets the following schedule:

| | |
|---|---|
| Settlement Effective Date | |
| Settlement Administrator shall calculate the Net Settlement Fund | |
| Settlement Administrator shall pay by wire any Fee and Expense Award Service Awards approved by Court | |
| Settlement Administrator shall send Class Counsel final list of each Settlement Class Member, their percentage of the Net Settlement Fund, and their payment amount | |
| Settlement Administrator shall email Class Members allowing them to select digital payment method and informing them if they do not, their payment will be received via check | |
| Settlement Administrator shall effectuate payments for Class Members who selected digital payment option and mail checks to Class Members who did not select the digital payment option | |
| Settlement Administrator shall void individual, uncashed checks | |
| Settlement Administrator shall effectuate a secondary distribution or administer | |

| remaining funds to [cy pres recipient] | |
|---|---|
| | |

     **9.**     This Action is **DISMISSED WITH PREJUDICE**,

**IT IS SO ORDERED.**

Dated: _____

                                                                _____
                                                                Hon. Richard D. Bennett
                                                                United States District Judge