## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ASHLY ALEXANDER, CEDRIC BISHOP, AMY THOMAS-LAWSON, WILLIAM GREEN, BRENDA BOLEY, MIGUEL PADILLA, and VICTORIA DAWKINS | Case No. 1:20-cv-02369-RDB |

*On behalf of themselves individually and similarly situated persons.*

Plaintiffs,

v.

CARRINGTON MORTGAGE SERVICES, LLC,

Defendants.

## [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS

Plaintiffs Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda

Boley, Miguel Padilla, and Victoria Dawkins, individually and on behalf of the proposed

Settlement Class,[1] seek preliminary approval of a proposed Settlement of claims against defendant

Carrington Mortgage Services LLC ("Carrington"). For the reasons set forth herein, the Court

GRANTS preliminary approval and GRANTS preliminary certification of the Settlement Class

for settlement purposes only.

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the parties' Settlement Agreement, attached as Exhibit 1 to the Declaration of Hassan A. Zavareei ("Zavareei Decl.").

## I.    BACKGROUND

Plaintiffs commenced separate actions in Maryland, California, and Florida. On July 10, 2020, Plaintiffs Ashly Alexander, a Maryland homeowner, initiated a class action lawsuit in the Circuit Court for Baltimore County, alleging that Carrington violated the Maryland Consumer Debt Collection Act ("MCDCA"), the Maryland Consumer Protection Act ("MCPA"), and Maryland's usury law. Dkt. 3. Carrington removed the case to this Court on August 17, 2020, Dkt. 1, and, on September 8, 2020, Plaintiffs filed an amended complaint, adding Plaintiff Cedric Bishop (also a Maryland homeowner) and an allegation that Carrington had violated the federal Fair Debt Collection Practices Act ("FDCPA"). *See* Dkt. 20.  Plaintiffs Amy Thomas-Lawson (Maryland), William Green (New York), Brenda Boley (Texas), and Miguel Padilla (California) initiated a class action lawsuit in this Court, Case No. 1:19-cv-03567-CCB (D. Md.), which was transferred to the Central District of California on August 13, 2020, Case No. 2:20-cv-07301-ODW(Ex) (C.D. Cal.). Plaintiffs Thomas-Lawson, Green, Boley, and Padilla alleged that Carrington had violated the FDCPA, California's Rosenthal Fair Debt Collections Act ("Rosenthal Act") and Unfair Competition Law ("UCL"), the Texas Debt Collection Act ("TDCA"), and the MCDCA and MCPA, as well as breached its contracts with the class members. *See Thomas-Lawson v. Carrington*, Case No. 2:20-cv-07301-ODW(Ex) (C.D. Cal.), ECF No. 1. And, on May 20, 2020, Plaintiff Victoria Dawkins initiated a class action in the Southern District of Florida against Carrington, alleging violations of the Florida Consumer Collection Practices Act ("FCCPA") and the Florida Deceptive Unfair Trade Practices Act ("FDUTPA"), as well as breach of contract and unjust enrichment. *See Dawkins v. Carrington*, Case No. 0:20-cv-60998-RAR (S.D. Fla.), ECF No. 1.

Although the three putative class actions were brought separately, each is based on one allegation: Carrington charged and collected millions of dollars in $5, $10, and $20 Convenience Fees from homeowners, in addition to their regular mortgage payments, and that this practice violated the FDCPA, the laws of Maryland, California, Florida, and Texas, and breached Plaintiffs' mortgage agreements. Carrington denies the allegations in the complaints and denies its actions were in any way unlawful.

Before this Court, Carrington moved to dismiss the complaint filed by Plaintiffs Alexander and Bishop. Dkt. 24. The Court granted the motion. Dkts. 32, 33. Plaintiffs appealed the dismissal, and, on January 19, 2022, the Fourth Circuit reversed. *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 376 (4th Cir. 2022).

In the *Thomas-Lawson* matter, Carrington moved to compel arbitration of the claims brought by Plaintiffs Boley and Green. *Thomas-Lawson*, Case No. 2:20-cv-07301-ODW(Ex) (C.D. Cal.), ECF No. 75. Carrington also moved to dismiss the complaint filed by Plaintiffs Thomas-Lawson, Green, Boley, and Padilla. *Thomas-Lawson*, ECF No. 76. On April 5, 2021, the Central District of California denied Carrington's motion to compel arbitration, but granted Carrington's motion to dismiss. *Thomas-Lawson*, ECF No. 97. Plaintiffs appealed to the Ninth Circuit, and that appeal is currently pending, but stayed pending consideration of this settlement. *See Thomas-Lawson v. Carrington Mortg. Servs.*, No. 21-55459 (9th Cir.).

In the *Dawkins* matter, Carrington moved to compel arbitration of Plaintiff Dawkins's claims. *Dawkins*, Case No. 0:20-cv-60998-RAR (S.D. Fla.), ECF No. 22. After the parties briefed the motion, the Southern District of Florida stayed the *Dawkins* matter pending resolution of *Carrington Mortgage Services, LLC v. Attix*, No. 20-13575-HH (11th Cir.), which involved a

3

similar arbitration issue and is currently on appeal, with a pending motion to stay pending consideration of this settlement.

After the Parties reached the proposed Settlement, the Parties agreed that, to preserve the resources of the Parties and the various courts, Plaintiffs' claims should be consolidated and a single Settlement Agreement considered and approved by this Court, rather than proceeding piecemeal. Thus, in advance of this Motion, the Plaintiffs filed, the current operative Second Amended Complaint consolidating their claims before this Court and also notified the *Thomas-Lawson* and *Dawkins* courts of the pending Settlement. The Parties have agreed to dismiss those cases following final approval of this Settlement. Carrington consented to the filing of the Second Amended Complaint solely for purposes of settlement without admitting any of the allegations contained therein.

Plaintiffs' counsel and Carrington's counsel had at least three pre-mediation conferences where the discovery and the Parties' respective positions on the merits and damages were discussed. The proposed Settlement was negotiated during a fourteen-hour mediation before an experienced mediator, Jeff Kichaven. In advance of that mediation, Carrington provided Plaintiffs with substantial data demonstrating the size of the Settlement Class and the amount of the total Convenience Fees collected by Carrington from the Class during the class period at issue. Following the mediation, the Parties continued to negotiate the details of the Settlement before arriving at the Settlement Agreement currently before the Court.

## II.    SETTLEMENT TERMS

### A.    The Proposed Settlement Class

The Settlement Agreement contemplates certification of the following Settlement Class for settlement purposes only:

4

All persons who paid a fee to Carrington for making a mortgage loan payment by telephone, IVR, or via the internet, between January 1, 2016 through December 31, 2021 ("Convenience Fees") who fall into one or more of the following groups:

(1) were borrowers on residential mortgage loans on properties located in California, Texas, New York, Maryland, or Florida;

(2) were borrowers on residential mortgage loans on properties in the United States to which Carrington acquired servicing rights when such loans were 30 days or more delinquent on loan payment obligations; or

(3) were borrowers on residential mortgage loans on properties located in the United States insured by the Federal Housing Administration.

The proposed Settlement Class is identical to the class definition included in the Second Amended Complaint.

## B. Benefits to the Settlement Class

The Settlement Agreement, if approved, will create a $18,181,898.65 common fund and will resolve the claims of Plaintiffs and the Settlement Class Members deriving from Carrington's practice of charging fees for making mortgage payments by telephone, IVR, or via the internet ("Convenience Fees"). The common fund, which represents approximately 35% of the total Convenience Fees collected by Carrington from the Class during the class period, will provide cash payments to Settlement Class Members, as well as Administrative Costs to provide notice and administer the settlement, and any Fee and Expense Award and Service Awards that the Court may approve. Settlement Class Members need not submit a claim form in order to receive monetary compensation. Settlement Class Members who paid at least one Convenience Fee are entitled to receive a payment of $5.00 from the Net Settlement Fund, with the remainder paid to Settlement Class Members on a *pro rata* basis, based upon the amount of Convenience Fees paid by each Settlement Class Member during the Class Period.

In addition to the common fund, the Settlement includes important and valuable injunctive relief. As of January 1, 2022, Carrington has ceased charging or collecting Convenience Fees to

5

any borrower, while allowing borrowers to make payments by telephone, IVR or the internet for free. As a result of this Settlement, Carrington also agrees to refrain from the charging or collection of Convenience Fees for allowing borrowers to make payments by telephone, IVR or the internet, for a period of at least three years after entry of the Final Approval Order. The prospective relief of this settlement term is expected, based upon the discovery exchanged, to have an approximate value of $8M per year (based on the average of the last 4 years Carrington collected the fees) going forward for the putative class members who still have loans serviced by Carrington.

### C. Settlement Administrator and Administration Costs

The proposed Settlement Administrator is Epiq, a leading class action administration firm in the United States. Plaintiffs' counsel obtained and reviewed proposals from several prominent settlement administrators before deciding on Epiq based on overall cost and value to the Settlement Class. The Administrative Costs will be paid from the Gross Settlement Fund.

### D. Class Member Release

Upon the Effective Date, and in consideration for the Settlement Payment and for Carrington's other promises contained herein, each Settlement Class Member, for and on behalf of their present and future spouses (and common law spouses), children, parents, relations, successors, beneficiaries, heirs, next of kin, assigns, attorneys, executors, administrators, and/or estate, or any and all other persons who could claim through them, hereby unconditionally and irrevocably remises, releases, and forever discharges the Released Entities from the Released Claims and further covenants not to sue any of the Released Entities with respect to any of the Released Claims.

"Released Claims" means any and all claims, counterclaims, actions, causes of action, suits, set-offs, costs, losses, expenses, sums of money, accounts, reckonings, debts, charges, complaints, controversies, disputes, damages, judgments, executions, promises, omissions, duties,

agreements, rights, and any and all demands, obligations and liabilities, of whatever kind or character, direct or indirect, whether known or unknown, at law or in equity, by right of action or otherwise, arising out of, based upon, or related in any way to the facts, allegations, disputes that are the subject matter of the Lawsuits or the charging, collection, or attempted collection of Convenience Fees from the beginning of the world to the Effective Date, which the Settlement Class Member ever had or may have in the future.

"Released Entities" means Carrington and each of its past, present and future directors, officers (whether acting in such capacity or individually), shareholders, advisors, owners, partners, joint venturers, principals, trustees, creditors, law firms, attorneys, representatives, employees, managers, parents, direct or indirect subsidiaries, divisions, subdivisions, departments, entities in common control, affiliates, insurers, reinsurers, control persons, predecessors, and successors or any agent acting or purporting to act for them or on their behalf, as well as any investor on whose behalf Carrington services any loan to any Settlement Class Member, and each of their past, present and future directors, officers (whether acting in such capacity or individually), shareholders, advisors, owners, partners, joint venturers, principals, trustees, creditors, law firms, attorneys, representatives, employees, managers, parents, direct or indirect subsidiaries, divisions, subdivisions, departments, entities in common control, affiliates, insurers, reinsurers, control persons, predecessors, and successors or any agent acting or purporting to act for them or on their behalf, and, any entity on whose behalf Carrington services any loan to any Class Member.

### E.    Proposed Plan of Notice

The Parties' proposed Notice Plan consists of direct notice in the form of Postcard Notice and Email Notice, as well as a Settlement Website where Class Members may view and download a Long Form Notice. Class Members may also request that the Settlement Administrator mail or email them a copy of the Long Form Notice.

Within 14 days or such other time as provided in the Preliminary Approval Order, Carrington, at its own expense, will compile the Class Member List and provide it to the Settlement Administrator and Class Counsel.

As soon as practicable but starting no later than thirty (30) days after the date that the Defendant provides the Class Member List to the Settlement Administrator, the Settlement Administrator shall cause the Email Notice to be sent to all Settlement Class Members for whom the Class Member List includes an email address.

As soon as practicable but starting no later than thirty (30) days after the date that the Defendant provides the Class Member List to the Settlement Administrator, the Settlement Administrator shall cause the Postcard Notice to be sent to all Settlement Class Members for whom no email address appears on the Class Member List. Prior to mailing Class Notice, the Settlement Administrator will update the last known addresses of the members of the Settlement Class using the National Change of Address database. Within a reasonable time before the Response Deadline, the Settlement Administrator shall also cause the Postcard Notice to be sent to all Settlement Class Members whose Email Notices are returned undeliverable, after running those Settlement Class Members' last known addresses through the National Change of Address database. If the Postcard Notice is returned with a forwarding address, the Settlement Administrator shall make one attempt to remail the Postcard Notice to that forwarding address, as soon as possible before the Response Deadline. If the Postcard Notice is returned undeliverable without a forwarding address, the Settlement Administrator shall make a reasonable attempt to locate an updated address and make one attempt to remail the Postcard Notice to the updated address, as soon as possible before the Response Deadline.

The Settlement Administrator shall mail or email the Long Form Notice to any Settlement Class member who requests a copy.

Prior to the date on which the Settlement Administrator mails the Postcard Notice, the Settlement Administrator shall establish the Settlement Website. The Settlement Website shall contain: (1) the Long Form Notice in downloadable PDF format in both English and Spanish; (2) the Long Form Notice in HTML format with a clickable table of contents, described as answers to frequently asked questions; (3) a contact information page with contact information for the Settlement Administrator, and addresses and telephone numbers for Class Counsel and Defendant's Counsel; (4) the Settlement Agreement; (5) the signed Preliminary Approval Order and publicly filed motion papers and declarations in support thereof; (6) the operative complaints in each of the Actions; and (7) when they become available, the Fee and Service Award Application, the motion for entry of the Final Approval Order, and any motion papers and declarations filed publicly in support thereof. The Settlement Website shall remain accessible until 30 days after the Settlement Administrator has completed its obligations under the Settlement Agreement.

The Settlement Administrator shall also establish a 24-hour toll-free telephone line with information about frequently asked questions about the Settlement. The number shall be included in the Class Notice and posted on the Settlement Website.

The Settlement Administrator will also ensure that the necessary and timely notice is provided to any state and federal officers as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

## F.     Opt-Outs and Objections

The Class Notice will advise Class Members of their right to opt out of the Settlement or to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and

expenses and/or Service Award to the Class Representatives, and of the associated deadlines to opt out or object.

Class Members who choose to opt out must submit a written request for exclusion. Any request for exclusion must be postmarked on or before the "Response Deadline"—105 days after entry of the Preliminary Approval Order. Any request for exclusion must include the name of the case, and the name, address, phone number, and signature of the borrower or borrowers seeking exclusion and must contain language clearly indicating a request for exclusion. If there are co-borrowers on the loan, all co-borrowers must sign the request for exclusion. Any Class Member who does not submit a request to opt out in accordance with the deadlines and other requirements will be bound by the Settlement absent a court order to the contrary.

Class Members who wish to object to the Settlement must mail a written objection, postmarked on or before the Response Deadline, to the Court c/o the Class Action Clerk (reference to Case No. 1:20-cv-02369-RDB), United States District Court for the District of Maryland, 101 West Lombard Street, Baltimore, MD 21201 or by filing it in person on or before the Response Deadline at any location of the United States District Court for the District of Maryland. All objections must be in writing and personally signed by the Class Member and include: (1) the objector's name, address, email address if any, and telephone number; (2) the case caption; (3) the specific factual basis and legal grounds for the objection; (4) a list of all cases in which the objector has objected to a class action settlement, including case name, court, and docket number; (5) if the objector is represented by counsel, a list of all cases in which the objector's counsel has represented an objector in objecting to a class action settlement, case name, court, and docket number; (6) a statement indicating whether the Class Member and/or their lawyer(s) intend to appear at the Final Fairness Hearing; (7) a list of witnesses, if any, that the objecting Class Member intends to call;

10

and (8) whether the objection relates only to the objector, or to a subset of the Settlement Class, or to the entire Settlement Class.

Any Class Member who has not submitted a timely request for exclusion may appear at the Final Fairness Hearing either in person or through an attorney. However, if the Class Member intends to appear through counsel, the Class Member must have submitted a written objection pursuant to this section. Any lawyer who intends to appear at the Final Fairness Hearing also must enter a written Notice of Appearance of Counsel with the Clerk of the Court no later than the Response Deadline. Any Class Member who intends to request the Court to allow him or her to call witnesses at the Final Fairness Hearing must make such a request in a written brief, which contains a list of such witnesses and a summary of their requested testimony.

No person who has opted out of the Settlement may object to it. Any Class Member who does not provide a timely written objection or who does not make a record of his or her objection at the Final Approval Hearing shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement, Fee and Service Awards Application, or the Fee and Expense Award or Service Awards.

## G. Attorneys' Fees and Costs and Service Award

The Settlement Agreement contemplates Class Counsel petitioning the Court for attorneys' fees, as well as documented, customary costs incurred by Class Counsel. The Settlement Agreement provides that Class Counsel may seek attorneys' fees in an amount not to exceed forty percent of the Gross Settlement Fund (40%) as well as reasonable expenses incurred in the litigation. Any approved Fee and Expense Award will be paid from the Gross Settlement Fund prior to distribution to the Settlement Class Members.

11

On or before 21 days prior to the Response Deadline, Class Counsel will file a petition for attorneys' fees and costs explaining why the requested Fee and Expense Award is reasonable. Carrington has not agreed to any award of attorneys' fees or expenses and reserves the right to respond as it deems appropriate.

Class Counsel may also petition the Court for up to $5,000 each for Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins as Service Awards as compensation for their time and effort in the Action. Any approved awards will be deduced from the Gross Settlement Fund prior to distribution to the Settlement Class Members.

Neither final approval, nor the size of the Common Fund, are contingent upon approval of the full amount of requested Fee and Expense Award or Service Awards.

## III.    FINDINGS AND ORDERS

### A.    The Settlement Agreement warrants preliminary approval.

1.    The Court finds, on a preliminary basis, that the Settlement Agreement appears to be within the range of reasonableness of a settlement that could ultimately be given final approval by this Court. The Court has reviewed the terms of the Settlement and preliminarily finds the Settlement to be fair, reasonable, and adequate. The Court finds that the Settlement contains no obvious deficiencies and that the Parties entered into the settlement in good faith, following arm's length negotiations between their respective counsel. The Settlement meets the considerations set forth in Federal Rule of Civil Procedure 23(e) and *In re Jiffy Lube Sec.* Litig., 927 F.2d 155 (4th Cir. 1991).

2.    In the Fourth Circuit, courts look to a four-factor test to evaluate the fairness of a class settlement: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the

12

experience of counsel in the area of [the] class action litigation." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159.[2] As to the posture of the case, it appears that the Settlement was reached after significant work was performed, including motions practice with respect to motions to dismiss and motions to compel arbitration, as well as appeals before the Fourth and Ninth Circuits. Although the parties did not engage in formal discovery, it appears Carrington provided substantial informal discovery to allow Class Counsel to intelligently evaluate the Settlement offered against the risks and benefits of continued litigation. The provision of informal damages discovery is sufficient to satisfy the fairness factor. *In re Jiffy Lube*, 927 F.2d at 159 (recognizing that informal discovery can provide satisfactory information prior to preliminary approval). Thus, the first two fairness factors warrant preliminary approval.

3.     The third factor—the circumstances surrounding the negotiations—also supports preliminary approval. The Settlement was negotiated with the assistance of Jeff Kichaven, an experienced mediator, and appears to be the result of extensive, arm's length negotiations between the Parties after Class Counsel and Carrington's Counsel had investigated the claims, extensively litigated them, and become familiar with the claims' strengths and weaknesses. Further, the Parties did not discuss attorneys' fees or a Service Award until after agreeing upon the material terms of the Settlement. The Settlement appears not to be collusive, has no obvious defects, and falls within the range of reasonableness.

4.     With respect to the fourth factor, Class Counsel and Carrington's Counsel are experienced in class action litigation. Moreover, it appears to the Court that the Class

---

[2] The Fourth Circuit has recognized that these "factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 n.8 (4th Cir. 2020).

Representatives and Class Counsel have adequately represented the proposed Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(A). Class Counsel are experienced and sophisticated, with years of experience in complex class action litigation and litigation involving mortgage servicers, financial institutions, and fees. The Class Representatives have also supervised the litigation by reviewing pleadings, reviewing the Settlement, and communicating with Class Counsel regarding the litigation.

6.     It appears to the Court that the terms of the proposed award of attorneys' fees and expenses are fair and reasonable. However, prior to final approval, Class Counsel shall file a separate motion seeking approval of Attorneys' Fees and Expenses in an amount not to exceed forty percent (40%) of the Gross Settlement Fund, plus their reasonable expenses of litigation. In this submission, Class Counsel will set forth the specific legal and factual bases for their request for attorneys' fees and expenses. It likewise appears to the Court that the proposed Service Awards are fair and reasonable.

5.     Accordingly, the Court preliminarily finds that the Settlement is fair.

6.     In assessing the adequacy of the settlement, the Court looks to "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159.

7.     The first and second factors, which are generally considered together, evaluate "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult one." *In re The Mills Corp. Securities*

14

*Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009). Although the Fourth Circuit reversed this Court's dismissal of Plaintiff Alexander and Bishop's complaint, there are still numerous factual and legal issues in dispute. In addition, Plaintiff Thomas-Lawson, Green, Boley, and Padilla's appeal of the dismissal of their FDCPA and California, Texas, and Maryland statutory claims is still pending before the Ninth Circuit, and there are open questions regarding whether Carrington could compel arbitration of some of the Plaintiffs' and class members' claims. Plaintiffs' motion describes the legal issues that would be decided before this Court and before the *Thomas-Lawson* and *Dawkins* courts should the settlement not be approved, both on the merits and at class certification.

8. With respect to the third factor, the likely duration and expense of continued litigation is substantial. While litigation presents serious risks at many stages, not to mention substantial expense and delay without any guarantee of additional benefit to the Settlement Class, the Settlement provides immediate and substantial benefits to over 442,059 Class Members.

9. Finally, Carrington appears to be solvent.

10. Accordingly, the Court preliminarily finds that the Settlement is adequate.[3]

11. It appears to the Court that the Settlement is fair, reasonable, and adequate when balanced against the probable outcome of further litigation, liability, and damages issues, and potential appeals of rulings. The amount offered in Settlement represents approximately 35% of potential damages, as well as significant injunctive relief. Finally, it appears to the Court that the Parties' proposed allocation of the Settlement is fair and reasonable. Settlement Class Members who paid at least one Convenience Fee are entitled to receive a payment of $5.00 from the Net Settlement Fund, with the remainder paid to Settlement Class Members on a *pro rata* basis, based

---

[3] The fifth *Jiffy Lube* factor, the degree of opposition to the settlement, cannot be evaluated until after class notice has gone out and Class Members have had an opportunity to opt out or object to the settlement.

15

upon the amount of Convenience Fees paid by each Settlement Class Member during the Class Period. According to this allocation, Class Members are treated fairly as to one another because they are compensated according to the amount of Convenience Fees they were charged. *See* Fed. R. Civ. P. 23(e)(2)(D). This method is consistent with the distribution of common funds in other fee cases. *See, e.g.*, *Lembeck v. Arvest Central Mortgage Co.*, Case No. 3:20-cv-03277, 2021 WL 5494940(N.D. Cal. Aug. 26, 2021) (approving settlement from which class members would receive *pro rata* distribution of common fund based on number of fees paid); *Fernandez v. Rushmore*, Case No. 8:21-cv-00621-DOC-(KEXc) (C.D. Cal. Feb. 14, 2022) (same); *Phillips v. Caliber Home Loans, Inc.*, Case No. 0:19-cv-2711, 2022 WL 832085 (D. Minn. Mar. 21, 2022) (same). A *pro rata* distribution means that Settlement Class Members who paid more Convenience Fees will receive a relatively larger share of the Settlement Fund, and those who paid fewer will receive less. This allocation treats Settlement Class Members equitably.

**B.      Certification of the Settlement Class for settlement purposes is appropriate.**

On a motion for preliminary approval, the parties must also show that the Court "will likely be able to … certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). The Court finds for purposes of settlement only that the Settlement Class meets all of the requirements of Fed. R. Civ. P. 23(a) and (b)(3).

1.      It appears to the Court for purposes of settlement only that the proposed Settlement Class is sufficiently numerous that joinder would be logistically impossible. The proposed Settlement Class consists of over 442,059 Class Members. The numerosity requirement is satisfied.

2.      It appears to the Court for purposes of settlement only that there is a commonality of interests between the Settlement Class Members, including both questions of law and questions of fact. Plaintiffs' claims here depend on the common contentions that Convenience Fees are

16

neither authorized by class members' mortgages nor permitted by law. For the same reason, the predominance requirement of Fed. R. Civ. P. 23(b)(3) is satisfied for settlement purposes.

3.　　　It appears to the Court for purposes of settlement only that the Class Representatives' claims are typical of those of the Settlement Class Members. The Class Representatives' claims arise from the same alleged course of conduct as those of the Settlement Class Members. The typicality requirement is satisfied.

4.　　　It appears to the Court for purposes of settlement only that the Class Representatives and Class Counsel are adequate representatives and have no conflicts with the proposed Settlement Class.

5.　　　It appears to the Court for purposes of settlement only that a class action is a superior method of resolving the claims of the Settlement Class Members, which are of modest amounts.

## C.　　The proposed Notice Plan is approved.

Due process under Rule 23 requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort.").

It appears to the Court that the proposed Notice Plan, which consists of Email Notice and Postcard Notice to be sent directly to Class Members, as well as a Long Form Notice, Settlement Website, and toll-free phone line, comports with due process, Rule 23, and all other applicable law. The five attorneys being appointed as Class Counsel herein have overseen several other settlements against mortgage loan servicers for similar practices for which email notice was used and final approval granted. *See, e.g., Phillips v. Caliber Home Loans, Inc.*, Case No. 0:19-cv-2711,

2022 WL 832085, at *5 (D. Minn. Mar. 21, 2022). Given the relatively small value at stake for each class member, the Court finds that email notice is the best practicable notice under the circumstances and orders that Carrington provide email addresses to the Settlement Administrator for each Class Member for whom it is in possession of such information. *See, e.g.*, *Galloway v. Williams*, No. 3:19-cv-470, 2020 WL 7482191, at *6 (E.D. Va. Dec. 18, 2020) (where defendant "maintained loan records that included the borrowers' names, addresses, and frequently, email addresses," sending initial notice by email "and only mailing the notice if an email bounced back as undeliverable or no email existed for a particular Settlement Class Member" was both reasonable and provided the "best notice practicable under the circumstances"); *Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-1050, 2021 WL 6750844, at *4 (E.D. Va. Nov. 19, 2021) (finding that notice made either by first class mail or by email for Class Members for whom the defendant had an existing email address constituted "the best notice practicable").

Moreover, the substance of the proposed Class Notice will fully apprise class members of their rights. Under Rule 23(e), notice to class members must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)). The Notice contains all the critical information required to apprise Class Members of their rights under the settlement, directs them to the Settlement Website, where they can obtain more detailed information, and provides a toll-free number for Class Members to call with questions. This approach to notice is adequate. The Court also finds that the proposed costs associated with the Notice Plan appear to be fair and reasonable.

18

## IV.   SCHEDULE AND PROCEDURES

The Court orders the following schedule and procedures for disseminating the Notice, requesting exclusion from the Settlement Class, objecting to the Settlement, filing the Fee and Service Award Application, and filing the motion for final approval:

| Date | Event |
|------|-------|
| 14 days from Preliminary Approval Order | Carrington to provide Class Member List to the Settlement Administrator |
| 30 days from the date that the Defendant provides the Class Member List to the Settlement Administrator | Settlement Administrator to cause Email Notice to be sent to Settlement Class Members with email addresses |
| 30 days from the date that the Defendant provides the Class Member List to the Settlement Administrator | Settlement Administrator to cause Postcard Notice to be sent to Settlement Class Members without email addresses |
| 30 days from Preliminary Approval Order | Settlement Administrator to establish Settlement Website and toll-free telephone line |
| 84 days from Preliminary Approval Order | Deadline for Class Counsel to file Fee and Service Award Application |
| 105 days from Preliminary Approval Order | Response Deadline (deadline to request exclusion or file objections) |
| __ days prior to Final Approval Hearing | Deadline to file Motion for Final Approval |
| 7 days prior to Final Approval Hearing | Deadline for the Parties to respond to objections |
| [_____] | Final Approval Hearing |

## V.   FINAL APPROVAL HEARING

The Court shall hold a Final Approval Hearing on Jan. 5, 2023 at 11:00 AM at the United States District Court for the District of Maryland, United States Courthouse, 101 West Lombard Street, Chambers 5D, Baltimore, MD 21201, before the Honorable Richard E. Bennett, for a final determination whether the proposed Settlement is fair, reasonable, and adequate.

19

Objections by Settlement Class Members will be considered if filed in writing with the clerk by the Response Deadline above. Settlement Class Members who have not requested exclusion may be heard orally in support of or opposition to the Settlement. Settlement Class Members who wish to appear at the Final Approval Hearing through counsel are required to file a notice with the Clerk of his or her desire to appear personally, and counsel must file a notice of appearance on the docket. Settlement Class Members proceeding *pro se* are requested, but not required, to file a notice with the Clerk of his or her desire to appear personally.

## VI.    OTHER PROVISIONS

Class Counsel and Defendant are authorized to take, without further Court approval, all necessary and appropriate steps to implement the Settlement, including the proposed Notice Plan and confirmatory discovery. The deadlines set forth in this Order may be extended by Order of the Court without further notice to Settlement Class Members, except that notice shall be posted on the Settlement Website. Settlement Class Members should check the Settlement Website regularly for updates and further details regarding the deadlines. Exclusions and objections must meet the deadlines and follow the requirements set forth in the approved Class Notice to be valid, although the Court will accept exclusions and objections deemed to be in substantial compliance.

If for any reason the Court does not execute and file an Order of Final Approval, or if the Effective Date does not occur for any reason, the Parties will be restored to the *status quo ante* as set forth more specifically in the Settlement.

## VII.    CONCLUSION

Accordingly, the Court having considered the Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of the Settlement Class, it is hereby ORDERED that:

1.     The Motion is GRANTED;

2.     The proposed Settlement Class is certified for settlement purposes only pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure;

3.     The proposed Settlement is preliminarily approved as being fair, reasonable, and adequate pursuant to Rule 23(e);

4.     Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins are appointed as Class Representatives;

5.     Hassan A. Zavareei, Kristen G. Simplicio, James L. Kauffman, and Phillip Robinson are appointed as Class Counsel;

6.     Carrington is ordered to provide the Class Member List to the Settlement Administrator, including email addresses where available, who is ordered to follow the confidentiality provisions set forth in the Settlement Agreement with respect to such information; and

7.     The proposed Notice Plan complies with the requirements of Rule 23 and Due Process, and Class Notice is to be sent to the Settlement Class Members as set forth in the Settlement Agreement and pursuant to the deadlines above.

**IT IS SO ORDERED.**

Dated: **July 5, 2022**

Hon. Richard E. Bennett
United States District Judge

21