**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ASHLY ALEXANDER, CEDRIC BISHOP, AMY THOMAS-LAWSON, WILLIAM GREEN, BRENDA BOLEY, MIGUEL PADILLA, and VICTORIA DAWKINS<br><br>*On behalf of themselves individually and similarly situated persons,*<br><br>Plaintiffs,<br><br>v.<br><br>CARRINGTON MORTGAGE SERVICES, LLC,<br><br>Defendants. | Case No. 1:20-cv-02369-RDB |

<u>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**</u>

Dated: October 27, 2022

Hassan A. Zavareei
Kristen G. Simplicio
Dia Rasinariu
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: 202-973-0900
Facsimile: 202-973-0950
hzavareei@tzlegal.com
ksimplicio@tzlegal.com
drasinariu@tzlegal.com

Respectfully submitted,

James L. Kauffman
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, NW
Washington, D.C. 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
jkauffman@baileyglasser.com

Phillip R. Robinson, Bar No. 27824
**CONSUMER LAW CENTER LLC**
10125 Colesville Road, Suite 378
Silver Spring, MD 20901
Telephone: (301) 448-1304
phillip@marylandconsumer.com

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................................ 1

II.   LITIGATION AND SETTLEMENT HISTORY ............................................................. 3

III.  SUMMARY OF THE SETTLEMENT BENEFITS ......................................................... 7

    A.    Direct Monetary Benefits.................................................................................... 7

    B.    Prospective Injunctive Relief.............................................................................. 9

    C.    The Settlement Here Compares Favorably to Settlements of Similar Cases........ 10

IV.   SETTLEMENT ADMINISTRATOR AND ADMINISTRATION COSTS .................... 10

V.    CLASS MEMBER RELEASE ..................................................................................... 11

VI.   CLASS NOTICE WAS PROVIDED AS DIRECTED BY THE COURT...................... 11

VII.  THE LEGAL STANDARD FOR FINAL APPROVAL .................................................. 12

VIII. ARGUMENT .............................................................................................................. 13

    A.    The Settlement Agreement Warrants Final Approval .......................................... 13

        1.    The Settlement is Fair ............................................................................ 14

        2.    The Settlement is Adequate .................................................................... 17

        3.    The Allocation of the Settlement is Fair and Reasonable........................ 23

IX.   THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ............... 25

X.    CONCLUSION.......................................................................................................... 26

i

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Carrington Mortg. Servs., LLC*,
    23 F.4th 370 (4th Cir. 2022) ............................................................................. 4

*Alexander v. Carrington Mortg. Servs., LLC*,
    Case No. 1-20-CV-02369-RDB (D. Md.) .......................................................... 3

*Alloways v. Cruise Web, Inc.*,
    No. CBD-17-2811, 2019 WL 1902813 (D. Md. April 29, 2019) ................. 12, 13

*Alvarez v. LoanCare, LLC*,
    No. 20-2187-CIV-ALTONAGA/Goodman, 2021 WL 184547 (S.D. Fla. Jan. 19, 2021) ....... 20

*Attix v. Carrington Mortg. Servs., LLC*,
    35 F.4th 1284 (11th Cir. 2022) ......................................................................... 4

*Attix v. Carrington Mortgage Services, LLC*,
    Case No. 20-cv-22183-UU (S.D. Fla.) ............................................................... 4

*Bardak v. Ocwen Loan Servicing*,
    No. 19-1111, 2020 WL 5104523 (M.D. Fla. Aug. 12, 2020) .......................... 19

*Boyd v. Coventry Health Care Inc.*,
    299 F.R.D. 451 (D. Md. 2014) ......................................................................... 23

*Caldwell v. Freedom Mortg. Corp.*,
    No. 3:19-CV-2193-N, 2020 WL 4747497 (N.D. Tex. Aug. 14, 2020) ............ 20

*Cooper v. PennyMac Loan Servs., LLC*,
    509 F. Supp. 3d 1325 (S.D. Fla. 2020) ............................................................ 19

*Dawkins v. Carrington Mortg. Servs. LLC*,
    Case No. 1:20-CV-60998-RAR (S.D. Fla.) .............................................. 4, 5, 6

*Decohen v. Abbasi, LLC*,
    299 F.R.D. 469 (D. Md. 2014) .............................................................. 15, 21, 25

*Dees v. Nationstar Mortg., LLC*,
    496 F. Supp. 3d 1043 (S.D. Tex. 2020) ........................................................... 20

*Edelen v. Am. Residential Servs., LLC*,
    No. CIV.A. DKC 11-2744, 2013 WL 3816986 (D. Md. July 22, 2013) .......... 19, 22

*Fernandez v. Rushmore*,
    Case No. 8:21-cv-00621-DOC-(KEXc) (C.D. Cal. Feb. 14, 2022) ................. 24

*Fire & Police Retiree Health Care Fund, San Antonio v. Smith*,
    No. CV CCB-18-3670, 2020 WL 6826549 (D. Md. Nov. 20, 2020) ............... 13

*Gaston v. LexisNexis Risk Sols. Inc.*,
    No. 516CV00009KDBDCK, 2021 WL 244807 (W.D.N.C. Jan. 25, 2021) ....... 13, 17

*Herrera v. Charlotte Sch. of L., LLC*,
    818 F. App'x 165 (4th Cir. 2020) ..................................................................... 13

*In re Am. Cap. S'holder Derivative Litig.*,
    No. CIV. 11-2424 PJM, 2013 WL 3322294 (D. Md. June 28, 2013) .............. 17

*In re Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) ................................................................. 12, 13, 15

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales Pracs.*,
   No. 115MD2627AJTTRJ, 2018 WL 11203065 (E.D. Va. Oct. 9, 2018), *aff'd sub nom. In re:*
   *Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab.*
   *Litig.*, 952 F.3d 471 (4th Cir. 2020) ........................................................................ 23

*In re The Mills Corp. Securities Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ............................................................................ 18

*Jernigan v. Protas, Spivok & Collins, LLC*,
   No. CV ELH-16-03058, 2017 WL 4176217 (D. Md. Sept. 20, 2017) ................................... 16

*Lang v. Ocwen Loan Servicing, LLC*,
   No. 3:20-cv-81-J-20MCR, 2020 WL 5104522 (M.D. Fla. July 17, 2020) ............................. 19

*Lembeck v. Arvest Cent. Mortg. Co.*,
   No. 3:20-cv-03277-VC, 2021 WL 5494940 (N.D. Cal. Aug. 26, 2021) ................................ 24

*Lyons v. PNC Bank, Nat'l Ass'n*,
   26 F.4th 180 (4th Cir. 2022) ............................................................................... 18

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
   No. 3:14CV238(DJN), 2016 WL 1070819 (E.D. Va. Mar. 15, 2016) ................................... 16

*McAdams v. Robinson*,
   26 F.4th 149 (4th Cir. 2022) ............................................................................... 16

*Nicholes v. Combined Ins. Co. of Am.*,
   No. 5:16-CV-10203, 2019 WL 2575066 (S.D.W. Va. Feb. 22, 2019) ................................... 15

*Phillips v. Caliber Home Loans, Inc.*,
   Case No. 0:19-cv-2711, 2022 WL 832085 (D. Minn. Mar. 21, 2022) ................................... 24

*Pierce v. Statebridge Co., LLC*,
   No. 1:20CV117, 2021 WL 1711784 (M.D.N.C. Apr. 29, 2021) ........................................ 16

*Robinson v. Carolina First Bank NA*,
   No. 7:18-CV-02927-JDA, 2019 WL 719031 (D.S.C. Feb. 14, 2019) ................................... 21

*Robinson v. Nationstar Mortg. LLC*,
   No. 8:14-CV-03667-TJS, 2020 WL 8256177 (D. Md. Dec. 11, 2020), *aff'd sub nom.*
   *McAdams v. Robinson*, 26 F.4th 149 (4th Cir. 2022) ................................................ 16

*Thomas-Lawson v. Carrington Mortg. Servs. LLC*,
   Case No. 2-20-cv-07301-ODW(Ex) (C.D. Cal.) ................................................... 3, 5, 6

*Thomas-Lawson v. Carrington Mtg. Servs., LLC*,
   21-55459 (9th Cir.) ........................................................................................... 5

*Turner v. PHH Mortg. Corp.*,
   467 F. Supp. 3d 1244 (M.D. Fla. 2020) ................................................................. 19


## Statutes

15 U.S.C. § 1692f(1) ............................................................................................. 4

28 U.S.C. § 1715 ................................................................................................. 12

**Rules**

Fed. R. Civ. P. 23(e) ................................................................................ 12, 13, 15, 24

**Regulations**

12 C.F.R. § 1024.38(a) .............................................................................................. 25

12 C.F.R. § 1024.38(b) .............................................................................................. 25

12 C.F.R. § 1024.38(c) .............................................................................................. 25

12 U.S.C.A. § 2605(k) .............................................................................................. 25

Md. Code Regs. 09.03.06.05 ...................................................................................... 25

## I.    INTRODUCTION

Plaintiffs Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins, individually and on behalf of the proposed Settlement Class,[1] seek final approval of a proposed Settlement of claims against Defendant Carrington Mortgage Services LLC ("Carrington"). The Settlement Agreement, if approved, will establish a common fund of over $18 million to provide direct monetary relief to Settlement Class members, and will provide additional injunctive relief by Carrington providing electronic payment methods for free  for at least three years. The total monetary value of the Settlement is $44,181,898.65  and is an excellent Settlement to which no Class Member has objected.

Specifically, a $18,181,898.65 cash Common Fund will be created to resolve the claims of Plaintiffs and the Settlement Class Members deriving from Carrington's practice of charging fees for making mortgage payments online or over the phone ("Convenience Fees" or "Pay-to-Pay" Fees"). The Common Fund represents approximately 35% of the $51,891,139.18 in fees collected by Carrington during the Class Period. The Common Fund will provide cash payments to Settlement Class Members, pay Administrative Costs to provide notice and administer the settlement, and pay any attorneys' Fee and Expense Award and Service Awards that the Court may approve. Settlement Class Members will not need to submit a claim form in order to receive monetary compensation, but instead will automatically receive a payment based on the amount they were charged for Convenience Fees.

Additionally, the Settlement includes valuable injunctive relief: Carrington has agreed by contract to refrain from charging Convenience Fees for at least three years after Final Approval,

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the parties' Settlement Agreement ("SA"), Dkt. 53-4.

while allowing borrowers to make payments foy phone, IVR, or internet without charge. Because Carrington collected, on average $8.64 million a year in Convenience Fees from Settlement Class Members, the prospective injunctive relief is estimated to be worth $26 million (any likely more since the class members will utilize the service more when they realize the payment methods are now provided for free).

The proposed Settlement has been preliminarily approved and warrants final approval now. The settlement provides substantial monetary relief to the Settlement Class, as well as significant injunctive relief stopping a major mortgage loan servicer from charging Convenience Fees for at least three years while continuing to offer free electronic payment services to borrowers. Indeed, the injunctive relief will save Settlement Class Members significant monetary expense as they pay their mortgages in the future. This relief was secured after seven months of settlement negotiations and a fourteen-hour long mediation before an independent mediator, by experienced and informed counsel. As such, the proposed Settlement warrants final approval, as the terms are fair, reasonable, and adequate.

Therefore, Plaintiffs request that the Court (1) grant this Motion, (2) finally approve the proposed Settlement, (3) affirm the certification of the Settlement Class for settlement purposes only, (4) affirm the appointment of Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins as Class Representatives, (5) affirm the appointment of Hassan A. Zavareei and Kristen G. Simplicio of Tycko & Zavareei LLP, James L. Kauffman of Bailey Glasser LLP, and Phillip Robinson of Consumer Law Center, LLC as Class Counsel, (6) retain jurisdiction over this matter to resolve issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement, and (7) enter Final Judgment dismissing this action. Carrington does not oppose the relief sought in this Motion.

## II.    LITIGATION AND SETTLEMENT HISTORY

To challenge Carrington's practice of charging and collecting illegal processing fees from borrowers paying their monthly mortgage by phone or online, Plaintiffs Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins commenced separate actions in Maryland, California, and Florida. *See generally* Declaration of Kristen G. Simplicio in Support of Plaintiffs' Motion for Fees, Costs, and Service Awards, Dkt. 60-1. On July 10, 2020, Plaintiff Alexander initiated a class action lawsuit in the Circuit Court of Baltimore County, alleging that Carrington violated the Maryland Consumer Debt Collection Act ("MCDCA") and the Maryland Consumer Protection Act ("MCPA"). *See Alexander v. Carrington Mortg. Servs., LLC*, 1:20-CV-02369-RDB (D. Md.), Dkt. 3. On August 17, 2020, Carrington removed the action to this Court, and on September 8, Plaintiffs filed an amended complaint, adding Plaintiff Bishop (also a Maryland homeowner) and an allegation that Carrington violated the federal Fair Debt Collection Practices Act ("FDCPA"). Dkts. 1, 20. On December 16, 2019, Plaintiffs Thomas-Lawson (Maryland), Boley (Texas), Padilla (California), and Green (New York) initiated a class action in this Court, *see* 1:19-CV-03567-CCB (D. Md.), which was transferred to the Central District of California on August 13, 2020. *See Thomas-Lawson v. Carrington Mortg. Servs. LLC*, 2:20-cv-07301-ODW(Ex) (C.D. Cal.), Dkt. 1. Plaintiffs Thomas-Lawson, Boley, Padilla, and Green alleged that Carrington violated the FDCPA, California's Rosenthal Fair Debt Collections Act ("Rosenthal Act") and Unfair Competition Law ("UCL"), the Texas Debt Collection Act ("TDCA"), and the MCDCA and MCPA. *See id*. And on May 20, 2020, Plaintiff Dawkins initiated a class action in the Southern District of Florida against Carrington, alleging breach of contract, unjust enrichment, and violations of the Florida Consumer Collection Practices Act ("FCCPA") and the Florida Deceptive and Unfair Trade Practices Act

3

("FDUTPA"). *See Dawkins v. Carrington Mortg. Servs. LLC*, 1:20-CV-60998-RAR (S.D. Fla.), Dkt. 1.[2]

Although the three putative class actions were brought separately, each is based on one central harm: Carrington charged and collected millions of dollars in $5 to $20 Convenience Fees from homeowners in addition to their regular mortgage payments, and Plaintiffs allege that this practice violated the FDCPA, and the laws of Maryland, California, Florida, and Texas, and breached their mortgage agreements. The Rosenthal Act, the MCDCA, the FCCPA, and the TDCA are all modeled on the FDCPA, which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Plaintiffs alleged that these fees violated the FDCPA and California, Maryland, Florida, and Texas state law because the fees were not expressly authorized by their mortgage agreements or any statute.

In the *Alexander* case before this Court, Carrington moved to dismiss the Amended Complaint, Plaintiffs Alexander and Bishop opposed, and the Court issued an order granting the motion, dismissing Plaintiffs' claims in their entirety. *See* Dkts. 24, 28, 32-33. Plaintiffs appealed the dismissal, *see* Dkt. 34, and on January 19, 2022, the Fourth Circuit reversed. *See Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370 (4th Cir. 2022).

---

[2] On May 26, 2020, another plaintiff filed a lawsuit against Carrington in the Southern District of Florida with similar allegations and claims the Plaintiffs here. *See Attix v. Carrington Mortgage Services, LLC*, Case No. 20-cv-22183-UU (S.D. Fla.) ("*Attix* Litigation"). After the court in that case denied Carrington's motion to compel arbitration, Carrington filed an appeal to the Eleventh Circuit. On May 26, 2022, the Eleventh Circuit reversed, compelling the case to arbitration. *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1289 (11th Cir. 2022) ("*Attix* Appeal").

In the *Thomas-Lawson* matter, Plaintiffs Thomas-Lawson, Boley, Padilla, and Green moved to appoint Interim Class Counsel, and Carrington opposed. *See* Dkts. 71, 81. Carrington moved both to compel arbitration of the claims brought by Plaintiffs Boley and Green and to dismiss the complaint, and Plaintiffs Thomas-Lawson, Boley, Padilla, and Green opposed. *See* Dkts. 75-76, 85-86.  On April 5, 2021, the court issued an order denying Carrington's motion to compel arbitration, granting Carrington's motion to dismiss in its entirety, and denying Plaintiffs' Rule 23(g) motion as moot. *See* Dkt. 97.  Plaintiffs appealed the dismissal of their claims to the Ninth Circuit, *see* Dkt. 98, the parties submitted their briefs, and the Ninth Circuit set oral argument for June 9, 2022.  *See Thomas-Lawson v. Carrington Mtg. Servs., LLC*, 21-55459 (9th Cir.), Dkts. 17, 35, 47-48.  The appeal is currently pending, but stayed pending consideration of this settlement. *See id.*

In the *Dawkins* matter, Carrington moved to compel arbitration and to stay discovery, and Plaintiff Dawkins opposed. *See* Dkts. 22-23, 33-34. Because the court in the *Attix* Litigation denied Carrington's motion to compel arbitration, which Carrington appealed, the court granted a joint motion to stay the *Dawkins* matter pending resolution of the *Attix* Appeal. *See* Dkts. 43-44, 51, 56.

After months of discussion, the parties agreed to engage in mediation with the assistance of Jeff Kichaven, a third-party mediator, to explore whether a negotiated resolution was possible in *Alexander*, *Thomas-Lawson*, and *Dawkins* ("the Convenience Fee Actions"). *See* Dkt. 53-3. Declaration of Kristen G. Simplicio ("Simplicio Decl.") ¶ 6. In advance of the mediation, Carrington provided detailed, informal data regarding the Convenience Fees collected from borrowers to Class Counsel. Based on that data, Class Counsel prepared a mediation statement and provided it to both Mr. Kichaven and Carrington's counsel. *Id.* ¶ 7.

On April 20, 2022, the parties mediated before Mr. Kichaven. *Id.* ¶ 11. The mediation began at 12:00 pm (Eastern time) and continued for a full fourteen hours, until the parties reached an agreement on all material terms at approximately 2:00AM on April 21. *Id.* Class Counsel entered the mediation fully informed of the merits of Settlement Class members' claims and were prepared to continue to litigate rather than accept a settlement that was not in the Plaintiffs' and Settlement Class's best interests. *Id.* ¶ 10. After these hard-fought negotiations, where both sides made presentations to the mediator and all attendees, the parties reached an agreement on all material terms, including the amount of the Common Fund and the injunctive relief. *Id.* ¶¶ 11-12. Class Counsel prepared the first draft of the Settlement Agreement, and the parties then negotiated the precise terms and language of the Agreement now before the Court. *Id.*

To preserve the resources of the parties and the Court, the parties agreed that Plaintiffs' claims should be consolidated in this Court as a nationwide class and a single Settlement Agreement should be considered and approved by this Court, rather than proceeding piecemeal. Thus, in advance of Plaintiffs' Motion for Preliminary Approval, the parties notified the other courts of the Settlement and requested to stay proceedings pending approval of the Settlement. *See Thomas-Lawson*, Dkts. 53-54; *Dawkins*, Dkt. 62. On May 25, 2022, Plaintiffs filed a Second Amended Complaint by consent, consolidating their claims before this Court. Dkt. 52. Plaintiffs also filed a Motion for Preliminary Approval. Dkt. 53.

On July 6, 2022, this Court granted the motion, preliminarily finding the settlement to be fair, reasonable, and adequate. Dkt. 56 at 12-16. The Court also preliminarily certified the following Settlement Class for settlement purposes only:

> All persons who paid a fee to Carrington for making a mortgage loan payment by telephone, IVR, or via the internet, between January 1, 2016 through December 31, 2021 ("Convenience Fees") who fall into one or more of the following groups:

> (1) Were borrowers on residential mortgage loans on properties located in California, Texas, New York, Maryland, or Florida;
>
> (2) Were borrowers on residential mortgage loans on properties in the United States to which Carrington acquired servicing rights when such loans were 30 days or more delinquent on loan payment obligations; or
>
> (3) Were borrowers on residential mortgage loans on properties located in the United States insured by the Federal Housing Administration.

*Id.* at 16-17. The Court approved the proposed Notice Plan as providing "the best notice practicable under the circumstances." *Id.* at 17-18. The Court set a Final Approval Hearing for November 10, 2022 at 11:00 AM at the United States District Court for the District of Maryland, United States Courthouse, 101 West Lombard Street, Chambers 5D, Baltimore, MD 21201. Dkt. 57. The Parties subsequently provided notice of the settlement to Settlement Class Members in accordance with the Notice Plan. *See* Section VI, *infra*.

On September 27, 2022, Plaintiffs filed a Motion for Award of Fees, Costs, and Service Award, seeking an award of $7,287,898.42 in attorneys' fees and costs, as well as a Service Award of $5,000 for each of the Class Representatives. Dkt. 60.

## III.   SUMMARY OF THE SETTLEMENT BENEFITS

### A.   Direct Monetary Benefits

The Settlement Agreement provides direct monetary benefits in the form of a Common Fund of $18,181,898.65, from which shall be paid (1) all payments to Settlement Class members, (2) all Administrative Costs, (3) any taxes owed by the Gross Settlement Amount (but not any taxes owed by any individual Class Counsel, Plaintiffs, or Settlement Class Members), (4) any Fee and Expense Award approved by the Court, and (5) any Service Awards to the Class Representatives approved by the Court. *See* SA § IV.A. The settlement amount represents 35% of the total Convenience fees collected by Carrington from the class during the Class Period. After

7

payment of costs of administration and notice and any fees, expenses, and service award authorized by the Court, the Net Settlement Fund will be distributed to Settlement Class Members as described below. *Id.* § IV.B.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive benefits under the Settlement. Instead, Carrington provided the Settlement Administrator with a Settlement Class Member List that included the names, last known mailing addresses, the last known email addresses of the $442,045 Settlement Class Members, and the dates and amounts of each Convenience Fee paid during the Class Period. *Id.* §§ II.FF, VI; *see also* Declaration of Peter Sperry Regarding Implementation of Notice and Settlement Administration ("Sperry Decl."), ¶ 6.

Each Settlement Class Member who paid at least one Convenience Fee during the Class Period shall be entitled to receive a payment of $5.00 from the Net Settlement Fund for the first Convenience Fee paid. The remainder of the Net Settlement Fund will be paid to Settlement Class Members on a *pro rata* basis, based upon the amount of the remaining Convenience Fees paid by each Settlement Class Member during the Class Period. SA § IV.B. Co-borrowers on a single class account shall be entitled to a single total Settlement Payment per account, but all fees paid will be eligible for a *pro rata* share. *Id.* Settlement Class Members will automatically receive their payments by check and may also elect a digital payment option via the Settlement Website. *Id.* Prior to mailing checks, the Settlement Administrator shall attempt to update the last known address of the Settlement Class Member through the National Change of Address database. *Id.* If a check is returned and marked "Undeliverable," the Settlement Administrator shall make reasonable efforts to locate the Settlement Class Member, reissue the check, and send it to a forwarding address. *Id.* Any checks that are not cashed within 90 days shall be voided and the

money returned to the Net Settlement Fund. For good cause shown by the Settlement Class Member involved, the Settlement Administrator may reissue a check for up to an additional 90-day period following the original 90-day period. *Id.*

After 180 days from the date of issuance of the initial checks, any remaining funds in the Net Settlement Fund shall be distributed to Settlement Class Members via a secondary distribution. *Id.* If the amount of remaining funds is so minimal that a secondary distribution would be impracticable, then upon Court approval, the remaining funds shall be distributed to the *Cy Pres* Recipient, NeighborWorks America and the Maryland Consumer Rights Coalition. *Id.* In no event shall any remaining funds be returned to Carrington. *Id.*

### B. Prospective Injunctive Relief

In addition to the direct monetary relief, the Settlement Agreement also includes important and valuable injunctive relief which provides additional monetary relief during the next three years. As of January 1, 2022, Carrington ceased charging or collecting Convenience Fees to any borrower in the United States, while allowing borrowers to make payments by telephone, IVR or the internet for free. And as a result of the Settlement of this case, Carrington has contractually agreed to refrain from charging or collecting such fees from borrowers in the United States for at least three years after the entry of a Final Approval Order, regardless of whether subsequent changes in law authorize such fees. SA § IV.C. Now, Settlement Class Members whose loans are still serviced by Carrington will be able to make payments by telephone, IVR, or the internet without incurring an additional fee. Carrington collected an average of approximately $8.64 million a year from Settlement Class Members, and thus, injunctive relief is significant for Settlement Class Members because it may result in $26 million or more in savings. The materiality of this this relief can be shown by the failed legislative effort of the Maryland Commissioner of

Financial Regulation during Maryland's last legislative session to expressly authorize some convenience fees Carrington has contractually agreed not to charge. *See* Dkt. 60-6, Robinson Decl. ¶ 14. But for Carrington's contractual promise before the Court in its prospective Injunctive relief, if approved by the Court, any future legislative changes in Maryland or elsewhere would not trump the vested, contractual rights of the putative class members.

### C.    The Settlement Here Compares Favorably to Settlements of Similar Cases

Plaintiffs have previously submitted an appendix summarizing settlements in other cases against mortgage servicers arising out of their Convenience Fee practices. *See* Dkt. 53-2, Appendix A. As set forth in that summary, while there have been many settlements of similar cases in recent years, this settlement achieves a remarkable result. It is the largest in terms of the total value of relief being provided, and at the higher end in terms of the percentage of funds recovered. While a few defendants have agreed to pay a higher percentage of recovery, the class sizes were much smaller and the common funds were under $2 million in each of those cases. Indeed, most of the cases listed in Appendix A were resolved by Class Counsel, involve similar results of around 30-35% of the amount of fees collected and 2-3 years of changed practices, and have been approved by courts around the country. The relief here stands in stark contrast to an early settlement, *McWhorter*, which amended class members' notes to permit the fees to be charged going forward. (*See* Dkt. 53-2, Appendix A), as well as other settlements that do not include a contractual promise by the defendant to stop charging the convenience fees for any period of time. *See Id.*

## IV.    SETTLEMENT ADMINISTRATOR AND ADMINISTRATION COSTS

The proposed Settlement Administrator is Epiq Systems, Inc. ("Epiq"), a leading class action administration firm in the United States. Plaintiffs' counsel obtained and reviewed proposals from several prominent settlement administrators before engaging Epiq based on overall cost and

value to the Settlement Class. The Administrative Costs will be paid from the Gross Settlement Fund.

## V.    CLASS MEMBER RELEASE

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released the Released Entities from all claims that were or could have been asserted by the Class Representatives or Settlement Class Members arising out of, based upon, or related to the charging, collection, or attempted collection of Convenience Fees from the beginning of the world to the Effective Date, which the Settlement Class Member ever had or may have in the future. SA § V. The release is appropriately tailored and narrowed to claims related to the imposition and collection of Convenience Fees, in that it covers claims arising from the identical factual predicate to the claims asserted in the operative Complaint and does not swallow other claims or issues not before the Court in this action.

## VI.    CLASS NOTICE WAS PROVIDED AS DIRECTED BY THE COURT

After preliminary approval, the Parties provided Notice of the settlement in accordance with the parties' agreement and this Court's preliminary approval order. *See* Sperry Decl. ¶¶ 2, 4-21. The Class Notice consisted of direct notice in the form of Postcard Notice and Email Notice, as well as a Settlement Website where Class Members could view and request to be sent the Long Form Notice. Email Notice was sent to the 351,963 Class Members for whom Carrington provided an email address. Sperry Decl. ¶ 8. A total of 328,815 Email Notices were delivered, resulting in Email Notice reaching 93.42% of the Class Members for whom Carrington provided an email address. *Id.* ¶ 9. Epiq then mailed Postcard Notices to the Class Members for whom the Email Notices "bounced" back as undeliverable, or for whom Carrington did not have an email address. *Id.* ¶¶ 11-17. Pursuant to these efforts, of the 442,045 Settlement Class Members, only 2,432 direct

notice attempts are currently known to be undeliverable, resulting in a 99.45% deliverable rate for the Settlement Class. *Id.* ¶ 17.

The Class Notice adequately described the litigation and the Settlement Agreement and the procedures to opt out and object. The Notices further explained the amount of the Settlement, the plan of allocation, Class Counsel's intent to apply for an award of attorneys' fees and expenses and for Class Representative Service Awards. Notice was also provided to state and federal officers as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

## VII.    THE LEGAL STANDARD FOR FINAL APPROVAL

Federal Rule of Civil Procedure 23 requires court approval of class action settlements. Fed. R. Civ. P. 23(e). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). Accordingly, the Court may approve a settlement only upon a finding that the settlement is "fair, reasonable, and adequate." *Alloways v. Cruise Web, Inc.*, No. CBD-17-2811, 2019 WL 1902813, at *8 (D. Md. April 29, 2019). "The fairness prong is concerned with the procedural propriety of the proposed settlement agreement, while the adequacy prong focuses on the agreement's substantive propriety." *Id.* (citing *Edelen v. Am. Residential Servs., LLC*, No. DKC-11-2744, 2013 WL 3816986, at *8 (D. Md. July 22, 2013)).

In the Fourth Circuit, courts look to a four-factor test to evaluate fairness: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *Jiffy Lube*, 927 F.2d at 159. Adequacy is assessed through "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense

of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.*

In addition to these factors, Rule 23 itself, as amended in 2018, provides specific guidance to federal courts considering whether to approve a class action settlement. *See* Fed. R. Civ. P. 23(e), Committee Notes. The factors that the Rules contemplate that a court should consider include whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e). The Fourth Circuit has held that the *Jiffy Lube* standards "almost completely overlap with the new Rule 23(e)(2) factors, rendering the analysis the same." *See Herrera v. Charlotte Sch. of L., LLC*, 818 F. App'x 165, 176 n.4 (4th Cir. 2020) (citing *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 474 n.8 (4th Cir. 2020)).

## VIII. ARGUMENT

### A. The Settlement Agreement Warrants Final Approval

As previously noted, a settlement must be "fair, reasonable, and adequate." *Alloways*, 2019 WL 1902813, at *8. Courts in the Fourth Circuit typically bifurcate this analysis into consideration of the fairness and adequacy of the proposed settlement. *See, e.g., Fire & Police Retiree Health Care Fund, San Antonio v. Smith*, No. CV CCB-18-3670, 2020 WL 6826549, at *2 (D. Md. Nov. 20, 2020); *see also Gaston v. LexisNexis Risk Sols. Inc.*, No. 516CV00009KDBDCK, 2021 WL 244807, at *5 (W.D.N.C. Jan. 25, 2021). The Settlement here, reached after motion practice and appeals by sophisticated counsel and providing significant monetary and prospective relief to the class, is both fair and adequate.

13

### 1.    The Settlement is Fair

Each of the of the *Jiffy Lube* fairness factors is satisfied in this case.

*First*, the posture of the case at the time of settlement demonstrates that the Settlement was agreed in the absence of collusion, and that the parties and counsel are well-informed. The Plaintiffs commenced these actions in December 2019 (*Thomas-Lawson*), May 2020 (*Dawkins*), and June 2020 (*Alexander*). The proposed settlement was reached after months of negotiation and significant work across the three actions, including motions practice with respect to motions to dismiss and motions to compel arbitration, as well as appeals before the Fourth and Ninth Circuits. *See* Dkt. 53-3, Simplicio Decl. ¶¶ 6, 16. The fact that the settlement is on the higher end of approved Convenience Fee settlements, despite the fact that Plaintiffs' nationwide claims were dismissed and their appeal is pending before the Ninth Circuit and the result of the related matter in the *Attix Appeal* before the Eleventh Circuit should leave no doubt as to the arms'-length nature of the deal.

*Second*, the Settlement follows substantial investigation, legal analysis, and successful appellate practice before the Fourth Circuit. Class Counsel engaged in a thorough investigation of the legal theories and Carrington's practices prior to filing and throughout the litigation and appeals in this and other actions, and later reviewed and analyzed informal discovery from Carrington to ascertain damages. Class Counsel have litigated many similar cases based on Convenience Fees and knew what information and data would be critical for resolving the Settlement Class's claims. Thus, Class Counsel obtained through informal discovery information and data similar to what they would have received through the discovery process, while allowing the parties to focus on the most relevant discovery. *Id.* ¶¶ 7-9. Plaintiffs have conducted sufficient investigation and discovery to permit Class Counsel and the Court to intelligently and fairly

14

evaluate the fairness and adequacy of the Settlement. *See In re Jiffy Lube*, 927 F.2d at 159 (recognizing that informal discovery can provide satisfactory information prior to approval); *see also Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 480 (D. Md. 2014) (finding proposed settlement met fairness factors where "parties ha[d] engaged in informal discovery, assuring sufficient development of the facts to permit an accurate assessment of the merits of the case").

*Third*, the circumstances surrounding the parties' negotiations demonstrate that the Settlement was reached through good faith, informed, arm's length negotiations. *See In re Jiffy Lube*, 927 F.2d at 159. In particular, the parties' negotiation of the claims in this action, with the assistance of a mediator, evidences the absence of collusion. *See Nicholes v. Combined Ins. Co. of Am.*, No. 5:16-CV-10203, 2019 WL 2575066, at *2 n.1 (S.D.W. Va. Feb. 22, 2019); *see also Decohen*, 299 F.R.D. at 480. Before agreeing upon the terms of the Settlement, the parties discussed negotiations for many months, and after Class Counsel had investigated the claims, litigated them and related cases, and became familiar with the claims' strengths and weaknesses, before ultimately spending fourteen hours mediating before Jeff Kichaven. Dkt. 53-3, Simplicio Decl. ¶¶ 6-8, 11. In advance of that mediation, Carrington provided Plaintiffs with its detailed, internal data. *Id.* ¶ 7. Because Class Counsel has litigated and settled other cases involving similar factual and legal issues, Class Counsel understands what information is critical to resolve the claims at issue, including information relating to membership in the Settlement Class and the amount of damages. *Id.* ¶ 8.

And the terms of the proposed award of attorneys' fees and Service Awards are also fair and demonstrate that the Settlement is the product of arm's length negotiation. *See* Fed. R. Civ. P. 23(e)(2)(c)(iii). Class Counsel has filed a separate motion seeking approval of Attorneys' Fees and Expenses and Service Awards, and the amounts they intend to seek are also reasonable and fair.

*See* Dkt. 60. The Settlement authorizes Class Counsel to seek an award of attorneys' fees of up to 40% of the Common Fund, as well as expenses, which is consistent with the range in similar common fund settlements like this. Of course, here, if Class Counsel is awarded 40% of the common fund created by the Settlement, the requested award of $7,272,759 represents 16.5% of the total value of the Settlement once the injunctive relief's monetary value is considered. This percentage is well within the range of reasonableness. *See*, *e.g.*, *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022) (affirming award of "fees total[ing] $1,300,000, 43% of the common fund" in class action alleging mortgage servicer violated federal and state consumer-protection laws); *Jernigan v. Protas, Spivok & Collins, LLC*, No. CV ELH-16-03058, 2017 WL 4176217, at *5 (D. Md. Sept. 20, 2017) ("Fees awarded under 'the percentage-of-recovery' method in settlements under $100 million have ranged from 15% to 40%." (citation omitted)); *Pierce v. Statebridge Co., LLC*, No. 1:20CV117, 2021 WL 1711784, at *3 (M.D.N.C. Apr. 29, 2021) ("The other method for determining fees, the percentage of the fund method, reduces class members' recovery by a benchmark percentage, typically 33% to 40% of the common fund.").

The Settlement authorizes each Plaintiff to seek a Service Award of $5,000. This amount is well within the range of approval for class action settlements that provide significant benefits to the class. *See*, *e.g.*, *Robinson v. Nationstar Mortg. LLC*, No. 8:14-CV-03667-TJS, 2020 WL 8256177, at *4 (D. Md. Dec. 11, 2020), *aff'd sub nom. McAdams v. Robinson*, 26 F.4th 149 (4th Cir. 2022) (awarding $5,000 service award in class action against mortgage servicer); *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238(DJN), 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016) (noting that "[v]arious studies have found that the average incentive award per plaintiff ranged from $9,355 to $15,992" (citing Newberg on Class Actions § 17.8 (5th ed.))).

*Fourth*, Class Counsel and counsel for Carrington are experienced in the litigation, certification, trial, and settlement of nationwide litigation. Dkt. 53-3, Simplicio Decl. ¶ 27. Class Counsel have settled a number of class action cases involving mortgage servicers like Carrington involving Convenience Fees, as well as other debt collection issues, and continue to litigate cases against several others. *Id.* ¶¶ 28-29. *See also* Dkt. 53-2, Appendix A. In negotiating the Settlement Agreement, Class Counsel had the benefit of years of experience and familiarity with the factual and legal bases for this case, as well as other cases involving servicers, financial institutions, and fees. Dkt. 53-3, Simplicio Decl. ¶¶ 28-30; *See* Dkt. 60-6, Robinson Decl. ¶¶ 5-8. This understanding of the intricacies of the consumer finance and mortgage servicing industry provided Class Counsel with the tools and perspective to achieve an outstanding recovery for the Settlement Class—and prepared them to fight this Action to a successful conclusion if necessary. *Id.* ¶¶ 8-10; *see also In re Am. Cap. S'holder Derivative Litig.*, No. CIV. 11-2424 PJM, 2013 WL 3322294, at *4 (D. Md. June 28, 2013) (noting satisfaction with class counsel due to "affiliat[ion] with well-regarded law firms with strong experience" in the relevant field). In Class Counsel's experience and informed judgment, the benefits of settling outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with litigation, discovery, and possible appellate review. Courts afford due consideration to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Gaston*, 2021 WL 244807, at *6 ("The opinion of experienced and informed counsel in favor of settlement should be afforded due consideration in determining whether a class settlement is fair and adequate.").

## 2.    The Settlement is Adequate

Each of the *Jiffy Lube* adequacy factors is satisfied, showing that the Settlement is adequate and warrants final approval. The first two factors (the relative strength of the plaintiffs' case on

the merits and the existence of any difficulties of proof or strong defenses) evaluate "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult one." *In re The Mills Corp. Securities Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009).

While confident in the strength of their claims, Plaintiffs and Class Counsel are also pragmatic and recognize the risks inherent in litigation of this magnitude. *See* Dkt. 53-3, Simplicio Decl. ¶ 16. Carrington argues that Plaintiffs' claims are unfounded, denies any liability, and has indicated a willingness to litigate vigorously as demonstrated by the *Attix Appeal*.  Should the case proceed in litigation, Plaintiffs could see their claims dismissed or narrowed by a motion for summary judgment, at trial, or on a subsequent appeal. *Id.* They also face the risk that class certification could be denied. *Id.* ¶ 17. Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in *zero* recovery for the class. *Id.* ¶ 18. And even if Plaintiffs prevailed at trial, any recovery would likely be delayed for years by further appeals. *Id.* ¶ 19.

Plaintiffs face substantial risks to their claims should the Settlement not be approved. In that event, the Settlement Class Complaint will be treated as null and void, and each Plaintiff will proceed with their respective action before this court, the Ninth Circuit Court of Appeals (and perhaps back to the Central District of California), and the Southern District of Florida. Since the motion for preliminary approval, the *Attix* Appeal was resolved favorably for Carrington, *see Attix Appeal*, which casts doubt on whether certain Plaintiffs and some of the class members they seek to represent could be compelled to arbitration, even though the Fourth Circuit has issued a favorable decision on the question of arbitration.  *See, e.g.*, *Lyons v. PNC Bank, Nat'l Ass'n*, 26 F.4th 180 (4th Cir. 2022).  And each case faces other serious risks. For Alexander and Mr. Bishop,

the Fourth Circuit's reversal of this Court's dismissal of the Amended Complaint is not ultimately a guarantee of success on the merits, and they, like the other Plaintiffs, could face challenges on class certification, as discussed further below. *See Edelen v. Am. Residential Servs., LLC*, No. CIV.A. DKC 11-2744, 2013 WL 3816986, at *9 (D. Md. July 22, 2013) (finding the "existence of [] disputed legal and factual issues creates uncertainty and risk for all parties moving forward"). And Carrington could appeal any order granting class certification or any judgment.

Though the Fourth Circuit found that the *Alexander* matter survived Carrington's pleadings challenge, the *Thomas-Lawson* and *Dawkins* matters have not yet cleared the Rule 12(b) hurdle. Plaintiffs Thomas-Lawson, Green, Boley, and Padilla appealed the dismissal of their FDCPA and California statutory claims, but if the Settlement is not approved, the appeal will be ripe for resolution. And even if the Ninth Circuit reverses the dismissal of their claims, Carrington could seek *en banc* review or petition the Supreme Court. Moreover, even if the Southern District of Florida finds that the Eleventh Circuit's *Attix* decision does not also compel arbitration of Ms. Dawkins's claims, Ms. Dawkins faces many of the same challenges that the other Plaintiffs face. Florida courts have dismissed similar claims on the merits, and thus, there is potential for more uncertainty there once the stay is lifted. *See, e.g., Cooper v. PennyMac Loan Servs., LLC*, 509 F. Supp. 3d 1325, 1332 (S.D. Fla. 2020) ("Even if Plaintiff could allege that Defendant was collecting a debt by charging and receiving a processing fee, Plaintiff failed to allege that Defendant had no legal right to do so."); *Turner v. PHH Mortg. Corp.*, 467 F. Supp. 3d 1244, 1248 (M.D. Fla. 2020) (finding defendant was not a debt collector and convenience fees did not violate Florida or federal debt collection law); *Lang v. Ocwen Loan Servicing, LLC*, No. 3:20-cv-81-J-20MCR, 2020 WL 5104522, at *2-3 (M.D. Fla. July 17, 2020) (same); *Bardak v. Ocwen Loan Servicing*, No. 19-1111, 2020 WL 5104523, at *4 (M.D. Fla. Aug. 12, 2020) (same).

19

Importantly, all Plaintiffs would need to persuade the relevant court that Convenience Fees violate provisions of Maryland, California, Texas and Florida debt collection law incorporating the substantive provisions of the FDCPA, as well as the common laws of those states and the state of New York. For example, Carrington may persuade a court to dismiss the breach of contract claims, something that some servicers have had success doing (even though generally they are not a party to the contract). *See Dees v. Nationstar Mortg., LLC*, 496 F. Supp. 3d 1043, 1050–51 (S.D. Tex. 2020) ("Without a contractual prohibition against the assessment of these optional Convenience Fees, Plaintiffs do not assert a viable breach of contract claim."); *Caldwell v. Freedom Mortg. Corp.*, No. 3:19-CV-2193-N, 2020 WL 4747497, at *2 (N.D. Tex. Aug. 14, 2020) (finding no breach of contract based on collection of convenience fees). *See also Alvarez v. LoanCare, LLC*, No. 20-2187-CIV-ALTONAGA/Goodman, 2021 WL 184547, at *11 (S.D. Fla. Jan. 19, 2021) ("The mere absence of express authority to charge fees does not mean fees are prohibited."). In short, there are any number of legal arguments that Carrington could successfully make that could result in Plaintiffs' claims being substantially narrowed at the motion to dismiss stage, summary judgment, or trial.

Moreover, no class has been certified in any of the underlying cases and there is no guarantee that this Court or any other would certify a class. In fact, the Southern District of Florida recently declined to certify a class in a case raising claims based on nearly identical fees under Florida law. *See Alvarez*, 2021 WL 184547, at *17-18. In *Alvarez*, the court found class certification inappropriate because, according to the court, there was no legal basis for the claims and because certification "would require, inter alia, individualized inquiries into each mortgage's terms . . . and the circumstances of the making of each particular processing fee agreement, whether by phone or online." *Id.* at *15. While Plaintiffs believe the *Alvarez* court's conclusion was

incorrect because the uniform terms of the underlying mortgages and the common questions of law satisfy the commonality and predominance requirements; there is no guarantee that all three courts will agree—or that the Fourth, Ninth, and Eleventh Circuits would agree as well, should Carrington appeal.

Of course, Plaintiffs believe their claims are meritorious and that they would prevail if their cases proceeded to trial. But ultimately, the claims of any one state class are relatively small, and unless states can be bundled together in such a way to ensure economies of scale, each state's class members risk the possibility that in any individual state settlements, notice and administration costs could dwarf the cost of recovery. The same is true for the potential for a complete loss at trial, or the risks or costs of further potential appellate proceedings. All that is certain is that if the case continues in litigation, the class members will need to wait much longer before receiving any recovery at all. *See Robinson v. Carolina First Bank NA*, No. 7:18-CV-02927-JDA, 2019 WL 719031, at *8 (D.S.C. Feb. 14, 2019) ("There is a strong judicial policy in favor of settlement to conserve scarce resources that would otherwise be devoted to protracted litigation.").

While litigation presents serious risks at many stages, not to mention substantial expense and delay without any guarantee of additional benefit to the Settlement Class, the Settlement provides immediate and substantial benefits to over 442,000 Settlement Class Members. And these benefits are substantial: 35% of damages is one of the best results in any of these cases, particularly given the size of the fund and the significant injunctive relief. *See* Dkt. 53-2, Appendix A. Because Settlement Class Members thus stand to gain significant relief, without further risks attendant to protracted litigation, the first two *Jiffy Lube* adequacy factors weigh in favor of approval. *See Decohen*, 299 F.R.D. at 480 (finding settlement adequate where despite reversal of dismissal of claims, there was no guarantee the court would certify a class, and "the road to recovery—

particularly for the class as a whole—likely would be protracted and costly if the settlement were not approved").

The third *Jiffy Lube* adequacy factor (the anticipated duration and expense of additional litigation) also favors approval. This case is settling in its early stages; if the Settlement is not approved, the parties will likely need to litigate through multiple dispositive motions and a motion for class certification. Dkt. 53-3, Simplicio Decl. ¶¶ 16-17. The litigation would likely take years to resolve and involve expensive expert discovery and substantial time engaging in in protracted and expensive discovery disputes. *Id.* ¶ 22. And of course, all parties would need to spend significant resources preparing for trial. The drawn out and expensive process that further litigation would entail would lead to significant legal costs to both sides, but would not necessarily lead to a better result for the class, particularly where there would likely be duplication of effort and consumption of the parties' and the court system's resources and time across the three separate actions. Thus, this factor favors approval. *See Edelen*, 2013 WL 3816986, at *9 (approving settlement where absent approval, "litigation of this dispute could prove to be long and expensive" and "require substantial time by the parties' attorneys").

As to the fourth *Jiffy Lube* adequacy factor (the solvency of the defendant and the likelihood of recovery on a litigated judgment), there is nothing to indicate that Carrington could not satisfy a judgment if one were entered. But, as previously noted, it is clear that continued litigation would be expensive and consume significant resources of the parties and the court system. Thus, "[o]n balance, the risks, delays, and costs associated with further litigation weigh in favor of granting" final approval. *Edelen*, 2013 WL 3816986, at *9.

Finally, the fifth *Jiffy Lube* factor—the degree of opposition to the settlement—also weighs heavily in favor of final approval. Of the around 442,045 Settlement Class Members, only seven

requested to opt-out of the Settlement, Sperry Decl. ¶ 22, and none submitted an objection to the settlement, *id.* ¶ 23. "A small number of objections and a low opt-out rate suggest that the proposed settlement is adequate." *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales Pracs.*, No. 115MD2627AJTTRJ, 2018 WL 11203065, at *6 (E.D. Va. Oct. 9, 2018), *aff'd sub nom. In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) ("Finally, only 94 of the 178,859 class members who responded to the class-action settlement notice opted out of the settlement (about 0.05%), and 12 class members objected thereto (about 0.006%). Those figures provide further support for the settlement's adequacy."); *see also Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014) ("The fact that no class member objected supports final approval of the Settlement as fair, adequate, and reasonable."). This support is particularly notable given that over 3,989 Class Members contacted the Settlement Administrator directly via telephone, and there were 21,654 visitors to the Settlement Website. Sperry Decl.  ¶¶ 19, 21.[3]

### 3.    The Allocation of the Settlement is Fair and Reasonable

The allocation of the Settlement Fund is also fair and reasonable, and the manner of administering relief will be effective. Under the settlement, Carrington will provide a $18,181,898.65 cash common fund. The cash common fund, which represents approximately 35% of damages, will provide cash payments to Settlement Class Members, as well as Administrative Costs to provide notice and administer the settlement, and any Fee and Expense Award and Service Awards that the Court may approve. Settlement Class Members who paid at least one Convenience Fee are entitled to receive a payment of $5.00 from the Net Settlement Fund, with the remainder

---

[3] It should be noted also that Class Counsel also received direct calls from numerous class members which were unanimously positive.

paid to Settlement Class Members on a *pro rata* basis, based upon the amount of Convenience Fees paid by each Settlement Class Member during the Class Period.

This method is consistent with the distribution of common funds in other fee cases. *See*, *e.g.*, *Lembeck v. Arvest Cent. Mortg. Co.*, No. 3:20-cv-03277-VC, 2021 WL 5494940 (N.D. Cal. Aug. 26, 2021) (approving settlement from which class members would receive *pro rata* distribution of common fund based on number of fees paid); *Fernandez v. Rushmore*, Case No. 8:21-cv-00621-DOC-(KEXc) (C.D. Cal. Feb. 14, 2022) (same); *Phillips v. Caliber Home Loans, Inc.*, Case No. 0:19-cv-2711, 2022 WL 832085 (D. Minn. Mar. 21, 2022) (same). Importantly, this method for calculating each class member's recovery equitably compensates each class member based on the amount of Convenience Fees they were charged during the class period.

Carrington has also agreed to refrain from the charging or collection of Convenience Fees from borrowers, while allowing borrowers to make payments by telephone, IVR or the internet for free, for a period of at least three years after entry of the Final Approval Order. The prospective relief of this settlement term is expected, based upon the discovery exchanged, to have an approximate value of $26 million going forward for the putative class members who still have loans serviced by Carrington. All current and future Carrington borrowers benefit from the practice changes required by the Settlement.

The proposed method of distributing relief is also effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). The parties have agreed upon an experienced Settlement Administrator to administer the settlement. *See generally* Dkt. 53-3, Simplicio Decl. ¶ 33. Class members are not required to fill out an unwieldy claim form or even submit claims at all. Settlement Class Members will have the option to choose to receive their payments digitally, and for those who do not so

choose, the Settlement Administrator will mail checks to the Settlement Class Members, after running their addresses through the National Change of Address database.

## IX.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

For all of the same reasons the Court preliminarily certified the Settlement Class, none of which have changed, the Court should now grant final certification. Ascertainability is satisfied in this case, as the members of each class are identifiable based on objective criteria applied to Carrington's well-maintained records during the class period which it is required by regulation to maintain. *See* 12 U.S.C.A. § 2605(k)(E); 12 C.F.R. §§ 1024.38(a), 1024.38(b)(1)(i), 1024.38(b)(1)(iv), and 1024.38(c)(2)(i)(iv); Md. Code Regs. 09.03.06.05. The Settlement Class is sufficiently numerous, including over 442,000 Settlement Class Members. There are common issues concerning Carrington's practices and policies that predominate over individual issues. Class Representatives Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins are typical of the Class because all their claims and the class claims against Carrington arise from the same course of conduct: charging borrowers Convenience Fees when making their monthly mortgage payments. The proposed Class Representatives have no conflicts with the Class, participated in this action, and are adequate. Class Counsel are experienced and adequate. Finally, class treatment is superior because classwide resolution is the only practical method of addressing the alleged violations at issue in this case. There are thousands of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Decohen*, 299 F.R.D. at 478 (finding superiority satisfied where "denial of the settlement will effectively foreclose relief for most class members as the harm each individual suffered will likely not justify the high costs of individual suits").

## X.    CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court (1) grant this Motion, (2) finally approve the proposed Settlement, (3) affirm the certification of the Settlement Class for settlement purposes only, (4) affirm the appointment of Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins as Class Representatives, (5) affirm the appointment of Hassan A. Zavareei and Kristen G. Simplicio of Tycko & Zavareei LLP, James L. Kauffman of Bailey Glasser LLP, and Phillip R. Robinson of Consumer Law Center LLC as Class Counsel, (6) retain jurisdiction over this matter to resolve issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement, and (7) enter Final Judgment dismissing this action.

By the separate motion filed on September 27, 2022, Dkt. 60, Plaintiffs also request that the Court grant a Service Award of $5,000 to each of the Class Representatives and award Class Counsel reasonable attorneys' fees of $7,272,759.46 and reimbursement of litigation expenses of $15,138.96 which, as set forth in the Settlement, shall be paid out of the Settlement Fund.


Dated: October 27, 2022                    Respectfully submitted,

                                           */s/ Hassan A. Zavareei*
                                           Hassan A. Zavareei
                                           Kristen G. Simplicio
                                           Dia Rasinariu
                                           **TYCKO & ZAVAREEI LLP**
                                           1828 L Street NW, Suite 1000
                                           Washington, D.C. 20036
                                           Telephone: 202-973-0900
                                           Facsimile: 202-973-0950
                                           hzavareei@tzlegal.com
                                           ksimplicio@tzlegal.com
                                           drasinariu@tzlegal.com

James L. Kauffman
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, NW
Washington, D.C. 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
jkauffman@baileyglasser.com

Phillip R. Robinson
**CONSUMER LAW CENTER, LLC**
10125 Colesville, MD, Suite 378
Silver Spring, MD 20901
Telephone: (301) 448-1304
phillip@marylandconsumer.com

*Attorneys for Plaintiffs*