# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ASHLY ALEXANDER, CEDRIC BISHOP, AMY THOMAS-LAWSON, WILLIAM GREEN, BRENDA BOLEY, MIGUEL PADILLA, and VICTORIA DAWKINS<br><br>*On behalf of themselves individually and similarly situated persons.*<br><br>Plaintiffs,<br><br>v.<br><br>CARRINGTON MORTGAGE SERVICES, LLC,<br><br>Defendants. | Case No. 1:20-cv-02369-RDB |

## ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins, individually and on behalf of the proposed Settlement Class,[1] seek final approval of a proposed Settlement of claims against defendant Carrington Mortgage Services LLC ("Carrington"). For the reasons set forth herein, the Court GRANTS the motion.

## I.   BACKGROUND

Plaintiffs commenced separate actions in Maryland, California, and Florida, each challenging Carrington's practice of charging borrowers fees to make mortgage payments over the phone or online, alleging violations of applicable state or federal laws. On July 10, 2020, Plaintiffs

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the parties' Settlement Agreement, attached as Exhibit 1 to the Declaration of Kristen G. Simplicio ("Simplicio Decl."), Dkt. 53-3.

Ashly Alexander initiated a class action in the Circuit Court for Baltimore County, alleging that Carrington violated the Maryland Consumer Debt Collection Act ("MCDCA"), the Maryland Consumer Protection Act ("MCPA"), and Maryland's usury law. Dkt. 3. Carrington removed the case to this Court on August 17, 2020, Dkt. 1, and, on September 8, 2020, Plaintiffs filed an amended complaint, adding Plaintiff Cedric Bishop and an allegation that Carrington violated the federal Fair Debt Collection Practices Act ("FDCPA"). *See* Dkt. 20. Plaintiffs Amy Thomas-Lawson, William Green, Brenda Boley, and Miguel Padilla initiated a class action lawsuit in this District, Case No. 1:19-cv-03567-CCB (D. Md.), which was transferred to the Central District of California on August 13, 2020, Case No. 2:20-cv-07301-ODW(Ex) (C.D. Cal.). Plaintiffs Thomas-Lawson, Green, Boley, and Padilla alleged that Carrington violated the FDCPA, California's Rosenthal Fair Debt Collections Act ("Rosenthal Act") and Unfair Competition Law ("UCL"), the Texas Debt Collection Act ("TDCA"), and the MCDCA and MCPA, as well as breached its contracts with the class members. *See Thomas-Lawson v. Carrington*, Case No. 2:20-cv-07301-ODW(Ex) (C.D. Cal.), ECF No. 1. And, on May 20, 2020, Plaintiff Victoria Dawkins initiated a class action in the Southern District of Florida against Carrington, alleging violations of the Florida Consumer Collection Practices Act ("FCCPA") and the Florida Deceptive Unfair Trade Practices Act ("FDUTPA"), as well as breach of contract and unjust enrichment. *See Dawkins v. Carrington*, Case No. 0:20-cv-60998-RAR (S.D. Fla.), ECF No. 1.

Before this Court in this action, Carrington moved to dismiss the amended complaint filed by Plaintiffs Alexander and Bishop. Dkt. 24. The Court granted the motion. Dkts. 32, 33. Plaintiffs appealed the dismissal of the MCDCA and MCPA claims, and, on January 19, 2022, the Fourth Circuit reversed the dismissal of the claims brought under the MCDCA and reversed in part and

2

affirmed in part the claims brought under the MCPA. *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 376 (4th Cir. 2022).

After the Parties reached the proposed Settlement, they agreed that, to preserve the resources of the Parties and the various courts, Plaintiffs' claims should be consolidated and a single Settlement Agreement considered and approved by this Court, rather than proceeding piecemeal. Thus, in advance of this Motion, the Plaintiffs filed, with the consent of Carrington for settlement purposes only, the current operative Second Amended Complaint consolidating their claims before this Court and also notified the *Thomas-Lawson* and *Dawkins* courts of the pending Settlement. The Parties have agreed to dismiss those cases following final approval of this Settlement.

Plaintiffs' counsel and Carrington's counsel had at least three pre-mediation conferences where the discovery and the Parties' respective positions on the merits and damages were discussed. The proposed Settlement was negotiated during a fourteen-hour mediation before an experienced mediator, Jeff Kichaven. Following the mediation, the Parties continued to negotiate the details of the Settlement before arriving at the Settlement Agreement currently before the Court for final approval.

On July 6, 2022, this Court granted preliminary approval of the proposed settlement and approved the issuance of notice to the Class. Dkt. 56. On September 27, 2022, Class Counsel filed a Motion for Fees, Costs, and Service Awards. Dkt. 60. A hearing on final approval was held on November 10, 2022.

## II.   SETTLEMENT TERMS

### A.   The Proposed Settlement Class

The Settlement Agreement contemplates certification of the following Settlement Class for settlement purposes only:

3

All persons who paid a fee to Carrington for making a mortgage loan payment by telephone, IVR, or via the internet, between January 1, 2016 through December 31, 2021 ("Convenience Fees") who fall into one or more of the following groups:

> (1) were borrowers on residential mortgage loans on properties located in California, Texas, New York, Maryland, or Florida;
>
> (2) were borrowers on residential mortgage loans on properties in the United States to which Carrington acquired servicing rights when such loans were 30 days or more delinquent on loan payment obligations; or
>
> (3) were borrowers on residential mortgage loans on properties located in the United States insured by the Federal Housing Administration.

The proposed Settlement Class is identical to the class definition included in the Second Amended Complaint.

### B. Benefits to the Settlement Class

The Settlement Agreement, if approved, will create a $18,181,898.65 cash common fund and will resolve the claims of Plaintiffs and the Settlement Class Members deriving from Carrington's practice of charging fees for making mortgage payments by telephone, IVR, or via the internet ("Convenience Fees"). The common fund, which represents approximately 35% of the total Convenience Fees collected by Carrington from the Class during the class period, will provide cash payments to Settlement Class Members, as well as Administrative Costs to provide notice and administer the settlement, and any Fee and Expense Award and Service Awards that the Court may approve. Settlement Class Members need not submit a claim form in order to receive monetary compensation. Settlement Class Members who paid at least one Convenience Fee are entitled to receive a payment of $5.00 from the Net Settlement Fund, with the remainder paid to Settlement Class Members on a *pro rata* basis, based upon the amount of Convenience Fees paid by each Settlement Class Member during the Class Period.

In addition to the common fund, the Settlement includes valuable, prospective injunctive relief. As of January 1, 2022, Carrington ceased charging Convenience Fees to any borrower, while

allowing borrowers to make payments by telephone, IVR or the internet for free. Carrington agrees to refrain from the charging or collecting Convenience Fees for allowing borrowers to make payments by telephone, IVR or the internet, for a period of at least three years after entry of the Final Approval Order. Carrington agrees that Plaintiffs' Lawsuits were a substantial factor in its decision to stop charging Convenience Fees. Based on the overall amounts collected from Class Members, the Court notes that Carrington was collecting at least an average of $8,000,000 per year from the class in Convenience Fees.

### C. Settlement Administrator and Administration Costs

The proposed Settlement Administrator is Epiq Systems, Inc. ("Epiq"), a leading class action administration firm in the United States. Plaintiffs' counsel obtained and reviewed proposals from several prominent settlement administrators before deciding on Epiq based on overall cost and value to the Settlement Class. The Administrative Costs will be paid from the Gross Settlement Fund.

### D. Class Member Release

Upon the Effective Date, and in consideration for the Settlement Payment and for Carrington's other promises contained herein, each Settlement Class Member, for and on behalf of their present and future spouses (and common law spouses), children, parents, relations, successors, beneficiaries, heirs, next of kin, assigns, attorneys, executors, administrators, and/or estate, or any and all other persons who could claim through them, hereby unconditionally and irrevocably remises, releases, and forever discharges the Released Entities from the Released Claims and further covenants not to sue any of the Released Entities with respect to any of the Released Claims.

"Released Claims" means any and all claims, counterclaims, actions, causes of action, suits, set-offs, costs, losses, expenses, sums of money, accounts, reckonings, debts, charges,

5

complaints, controversies, disputes, damages, judgments, executions, promises, omissions, duties, agreements, rights, and any and all demands, obligations and liabilities, of whatever kind or character, direct or indirect, whether known or unknown, at law or in equity, by right of action or otherwise, arising out of, based upon, or related in any way to the facts, allegations, disputes that are the subject matter of the Lawsuits or the charging, collection, or attempted collection of Convenience Fees from the beginning of the world to the Effective Date, which the Settlement Class Member ever had or may have in the future.

"Released Entities" means Carrington and each of its past, present and future directors, officers (whether acting in such capacity or individually), shareholders, advisors, owners, partners, joint venturers, principals, trustees, creditors, law firms, attorneys, representatives, employees, managers, parents, direct or indirect subsidiaries, divisions, subdivisions, departments, entities in common control, affiliates, insurers, reinsurers, control persons, predecessors, and successors or any agent acting or purporting to act for them or on their behalf, as well as any investor on whose behalf Carrington services any loan to any Settlement Class Member, and each of their past, present and future directors, officers (whether acting in such capacity or individually), shareholders, advisors, owners, partners, joint venturers, principals, trustees, creditors, law firms, attorneys, representatives, employees, managers, parents, direct or indirect subsidiaries, divisions, subdivisions, departments, entities in common control, affiliates, insurers, reinsurers, control persons, predecessors, and successors or any agent acting or purporting to act for them or on their behalf, and, any entity on whose behalf Carrington services any loan to any Class Member.

### E.   Notice to the Settlement Class

Notice was sent to Class members pursuant to the Settlement Agreement and the Court's Order granting preliminary approval. The Class Notice consisted of direct notice in the form of Postcard Notice and Email Notice, as well as a Settlement Website where Class Members could

6

view and request to be sent the Long Form Notice. The Class Notice adequately described the litigation and the Settlement Agreement and the procedures to opt out and object. The Notices further explained the amount of the Settlement, the plan of allocation, Class Counsel's intent to apply for an award of attorneys' fees and expenses and for Class Representative Service Awards. Notice was also provided to state and federal officers as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

### F. Attorneys' Fees and Costs and Service Award

The Settlement Agreement contemplates Class Counsel petitioning the Court for an award of attorneys' fees, plus documented, customary costs incurred by Class Counsel. The Settlement Agreement provides that Class Counsel may seek attorneys' fees in an amount not to exceed forty percent of the Gross Settlement Fund (40%) as well as reasonable expenses incurred in the litigation. Any approved Fee and Expense Award will be paid from the Gross Settlement Fund prior to distribution to Settlement Class Members. The Settlement Agreement also authorizes Class Counsel to petition the Court for Service Awards of up to $5,000 each for Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins as compensation for their time and effort in the Action. Any approved awards will be deducted from the Gross Settlement Fund before distribution to Settlement Class Members.

Neither final approval, nor the size of the Common Fund, are contingent upon approval of the full amount of requested Fee and Expense Award or Service Awards.

### III. LEGAL STANDARD FOR FINAL APPROVAL

Settlement of class actions must be approved by the Court. Fed. R. Civ. P. 23(e); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991); *Whitaker v. Navy Fed. Credit Union*, No. 09CV2288, 2010 WL 3928616, at *2 (D. Md. Oct. 4, 2010); *McDaniels v. Westlake Servs., LLC,* No. CIV.A. ELH-11-1837, 2014 WL 556288, at *8 (D. Md. Feb. 7, 2014).

As of December 1, 2018, Fed. R. Civ. P. 23(e) provides specific guidance to federal courts in considering whether to grant final approval of a class action settlement. The Fed. R. Civ. P. 23(e)(2) final approval factors include whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at an arm's length; (C) the relief provided is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);[2] and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Before 2018, to determine whether a settlement meets the requirements of Fed. R. Civ. P. 23 and warrants final approval, the Fourth Circuit adopted a bifurcated analysis involving inquiries into the fairness and adequacy of the settlement, still utilized today. *Scardelletti v. Debarr*, 43 F. App'x 525, 528 (4th Cir. 2002); *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158; *Donaldson v. Primary Residential Mortg., Inc.*, No. CV ELH-19-1175, 2021 WL 2187013, at *3-4 (D. Md. May 28, 2021) (citing Fed. R. Civ. P. 23(e)(2) factors and *Jiffy Lube* factors in assessing final approval).

In assessing the fairness of a proposed settlement, the Court looks to the following Fourth Circuit factors: (1) posture of the case at the time the settlement is proposed; (2) extent of discovery that has been conducted; (3) circumstances surrounding the negotiations; and (4) experience of counsel in the relevant area of class action litigation. *Scardelletti*, 43 F. App'x at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Robinson v. Nationstar Mortg. LLC,* No. 8:14-CV-03667-TJS, 2020 WL 8256177, at *2 (D. Md. Dec. 11, 2020), *aff'd sub nom. McAdams v. Robinson*, 26 F.4th 149 (4th Cir. 2022).

---

[2] The Settlement Agreement is the only relevant agreement here.

In determining the adequacy of the proposed settlement, the Fourth Circuit factors instruct the Court to consider: (1) the relative strength of plaintiff's case on the merits; (2) existence of any difficulties of proof or strong defenses plaintiff is likely to encounter if the case proceeds to trial; (3) anticipated duration and expense of additional litigation; (4) solvency of defendant and likelihood of recovery of a litigated judgment; and (5) degree of opposition to the settlement. *Scardelletti*, 43 F. App'x at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Robinson*, 2020 WL 8256177, at *2. Many of these factors overlap with the Rule 23(e) factors cited above.[3]

## IV. FINDINGS AND ORDER

The Court finds that the Settlement Agreement is fair, reasonable, and adequate and warrants final approval under the applicable Fed. R. Civ. P. 23 and Fourth Circuit factors.

1. With respect to the adequacy and experience of counsel, Class Counsel and Carrington's Counsel are experienced in class action litigation. Moreover, it appears to the Court that the Class Representatives and Class Counsel have adequately represented the proposed Settlement Class. Class Counsel are experienced and sophisticated, with years of experience in complex class action litigation and litigation involving mortgage servicers, financial institutions, and fees. The Class Representatives have also supervised the litigation by reviewing pleadings, reviewing the Settlement, and communicating with Class Counsel regarding the litigation. Rule 23(e)(2)(A) and the fourth fairness factor are satisfied.

2. The Court finds that the Settlement was negotiated at arm's length before an experienced mediator and between experienced and sophisticated counsel. The settling Parties

---

[3] The Fourth Circuit has recognized that these "factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 n.8 (4th Cir. 2020).

vigorously contested motions to dismiss, contested appeals from rulings on the motions, and engaged in formal settlement mediation with the assistance of a professional mediator. "These adversarial encounters dispel any apprehension of collusion between the parties." *In re NeuStar, Inc. Sec. Litig.*, No. 1:14–CV–885(JCC/TRJ), 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015). The Settlement was negotiated with the assistance of Jeff Kichaven, an experienced mediator, after extensive litigation, that enabled each side to assess the strengths and weaknesses of their claims. Further, the Parties did not discuss attorneys' fees or a Service Award until after agreeing upon the material terms of the Settlement. The Settlement satisfies Fed. R. Civ. P. 23(e)(2)(B), and the third *Jiffy Lube* fairness factor.

3.  As to the posture of the case, it appears that the Settlement was reached after significant work was performed, including motions practice with respect to motions to dismiss and motions to compel arbitration, as well as appeals before the Fourth and Ninth Circuits. Although the Parties did not engage in formal discovery, it appears Carrington provided substantial informal discovery to allow Class Counsel to intelligently evaluate the Settlement offered against the risks and benefits of continued litigation. The provision of informal damages discovery is sufficient to satisfy this fairness factor. *In re Jiffy Lube*, 927 F.2d at 159 (recognizing that informal discovery can provide satisfactory information prior to preliminary approval). Thus, the first two fairness factors are met: the case was sufficiently advanced and sufficient discovery was completed.

6.  With regard to the adequacy of the Settlement, Fed. R. Civ. P. 23(e)(2)(C)(i), and the first two *Jiffy Lube* adequacy factors focus on the relief provided, in light of (1) the strength of the plaintiffs' case on the merits, and (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; Fed. R. Civ. P. 23(e)(2)(C)(i) (requiring evaluation of the relief provided, taking into

account the costs and risks of trial and appeal). These factors weigh "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult one." *In re The Mills Corp. Securities Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009). The Settlement relief is fair, reasonable, and adequate when balanced against the probable outcome of further litigation, liability, and damages issues, and potential appeals of rulings. The amount offered in Settlement represents approximately 35% of the total Convenience Fees collected by Carrington from the Class during the class period, as well as significant injunctive relief.

Although the Fourth Circuit reversed this Court's dismissal of Plaintiff Alexander and Bishop's amended complaint, there are still numerous factual and legal issues in dispute. In addition, Plaintiff Thomas-Lawson, Green, Boley, and Padilla's appeal of the dismissal of their FDCPA and state law claims is still pending before the Ninth Circuit, and there are open questions regarding whether Carrington could compel arbitration of some of the Plaintiffs' and class members' claims. Plaintiffs' motion for final approval describes the legal issues that would remain to be decided by this Court and the *Thomas-Lawson* and *Dawkins* courts should the settlement not be approved, both on the merits and at class certification.

4.  Fed. R. Civ. P. 23(e)(2)(C)(i) and *Jiffy Lube* adequacy factor three require the Court to consider the likely duration and expense of continued litigation. While litigation presents serious risks at many stages, not to mention substantial expense and delay without any guarantee of additional benefit to the Settlement Class, the Settlement provides immediate and substantial benefits to over 442,000 Class Members.

5.  Carrington appears to be solvent, so the fourth *Jiffy Lube* adequacy factor is neutral.

11

6. The fifth *Jiffy Lube* adequacy factor—the degree of opposition to the settlement—also weighs in favor of final approval. Of the around 442,000 Settlement Class Members, only seven requested to opt-out of the Settlement, and none submitted an objection to the Settlement. "A small number of objections and a low opt-out rate suggest that the proposed settlement is adequate." *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales Pracs.*, No. 115MD2627AJTTRJ, 2018 WL 11203065, at *6 (E.D. Va. Oct. 9, 2018), *aff'd sub nom. In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020).

7. Finally, it appears to the Court that the Parties' proposed allocation of the Settlement, and plan for distribution is equitable and effective, as required by Rule 23(e)(2)(C)(ii). Settlement Class Members who paid at least one Convenience Fee are entitled to receive a payment of $5.00 from the Net Settlement Fund, with the remainder paid to Settlement Class Members on a *pro rata* basis, based upon the amount of Convenience Fees paid by each Settlement Class Member during the Class Period. According to this allocation, Class Members are treated fairly as to one another because they are compensated according to the amount of Convenience Fees they were charged. *See* Fed. R. Civ. P. 23(e)(2)(D). This method is consistent with the distribution of common funds in other fee cases. *See, e.g., Lembeck v. Arvest Central Mortgage Co.*, Case No. 3:20-cv-03277-VC, 2021 WL 5494940 (N.D. Cal. Aug. 26, 2021) (approving settlement from which class members would receive *pro rata* distribution of common fund based on number of fees paid); *Fernandez v. Rushmore*, Case No. 8:21-cv-00621-DOC-(KEXc) (C.D. Cal. Feb. 14, 2022) (same); *Phillips v. Caliber Home Loans, Inc.*, Case No. 0:19-cv-2711 (WMW/LIB), 2022 WL 832085 (D. Minn. Mar. 21, 2022) (same). A *pro rata* distribution means that Settlement Class Members who paid more Convenience Fees will receive a relatively larger share of the Settlement

Fund, and those who paid fewer will receive less. This allocation treats Settlement Class Members equitably.

8. The Court finds that early resolution of this Action will conserve the resources of the Parties and the Court, while at the same time, the Parties have vigorously litigated the legal issues and Carrington provided sufficient informal discovery to permit Class Counsel and the Court to intelligently evaluate the Settlement offered against the risks and benefits of continued litigation.

9. In addition to the Gross Settlement Fund, the Settlement includes valuable injunctive relief that, when taken into account as additional monetary benefit to the Settlement Class, means that the attorneys' fees requested by Class Counsel are significantly less than 40% of the total monetary benefit to the Settlement. The value of the injunctive relief is over $26 Million, which combined with the Gross Settlement Fund, means the total monetary value of the Settlement is at least $44,181,898.65. The Court finds that the amount of attorneys' fees requested by Class Counsel, 40% of the Gross Settlement Fund and 16.5% of the total monetary benefit to the Settlement Class, to be reasonable and aligns with other class actions where Maryland courts have awarded attorneys' fees. *See e.g., Dickman v. Banner Life Ins. Co.*, No. 1:16-CV-00192-RDB, 2020 WL 13094954, at *5 (D. Md. May 20, 2020), *aff'd sub nom. 1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513 (4th Cir. 2022) (awarding fees of 39.5% of common fund); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 685 (D. Md. 2013) (citing cases, noting that courts award fees ranging from 15 to 40% in settlements under $100 million).

10. Class Counsel are entitled to reimbursement of reasonable out-of-pocket litigation expenses. Fed. R. Civ. P. 23(h). "It is well-established that plaintiffs who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their

overall award." *Kabore v. Anchor Staffing, Inc.*, No. L–10–3204, 2012 WL 5077636, at *10 (D. Md. Oct. 17, 2012). The Fourth Circuit has stated that such costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988) (internal quotations omitted). Here, Class Counsel seeks reimbursement of $15,138.96 in litigation expenses, which includes the cost of a private mediator. They have provided records that document their claim. *See* Dkt. 60-1, Declaration of Kristen G. Simplicio in Support of Plaintiffs' Motion for Fees, Costs, and Service Awards ¶ 42 & Dkt. 60-3, Exhibit B to Simplicio Declaration; Dkt. 60-4, Declaration of James L. Kauffman ¶ 21; Dkt. No. 60-6, Declaration of Phillip Robinson in Support of Plaintiffs' Fee, Expense, and Service Award Application ¶ 33. The court therefore finds that these submissions support an award of $15,138.96 in costs.

11.   Service Awards are routinely made to class representatives in Fed. R. Civ. P. 23 class actions. *See, e.g.*, *In re Tyson Foods, Inc.*, No. RDB–08–1982, 2010 WL 1924012, at *4 (D. Md. May 11, 2010). "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). To determine whether an incentive payment is warranted, a court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* Here, the Plaintiffs came forward to represent the interests of thousands of others, with very little personally to gain, as their individual alleged damages were very small. Before and during litigation, Plaintiffs had their highly sensitive financial information regarding their mortgage agreements inspected. Plaintiffs participated in the litigation by reviewing the complaint and other filings and making themselves

14

available to assist with discovery. And Plaintiffs all worked with counsel to initiate separate cases, taking the substantial risk they might, at a minimum, lose their case and pay the other side's costs. Thus, the Court approves a $5,000 award each for Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins.

12. The Court confirms the certification for settlement purposes of the Settlement Class for the reasons stated in the Preliminary Approval Order, none of which have changed.

13. The Court confirms the appointment of Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins as Class Representatives.

14. The Court confirms the appointment of Hassan A. Zavareei, Kristen G. Simplicio, James L. Kauffman, and Phillip Robinson as Class Counsel.

15. The Court finds that the approved Class Notice constituted the best notice practicable under the circumstances and was in full compliance with the applicable laws and the requirements of due process. The Court further finds that the Class Notice fully and accurately informed the Class Members of all material elements of the proposed Settlement, of their right to be excluded from the Settlement, and of their right and opportunity to object to the Settlement. The Court also finds that the Class Notice complied with the Class Action Fairness Act, 28 U.S.C. § 1715.

15. There are no objections to the Settlement.

16. All members of the Settlement Class who timely requested exclusion are excluded from the Settlement.

17. The Court confirms the *cy pres* recipient as NeighborWorks America and the Maryland Consumer Rights Coalition.

18. All Class Members who did not timely request exclusion are hereby bound by the terms of the Settlement Agreement, including the release.

Accordingly, the Court having considered the Motion for Final Approval of Class Action Settlement, it is hereby ORDERED that:

1. The Motion is GRANTED;

2. The proposed Settlement is approved as being fair, reasonable, and adequate pursuant to Rule 23(e);

3. Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins are confirmed as Class Representatives;

4. Hassan A. Zavareei, Kristen G. Simplicio, James L. Kauffman, and Phillip Robinson Kauffman are confirmed as Class Counsel;

5. The Court awards $7,272,759.46 in attorneys' fees and $15,138.96 in reimbursed costs to Class Counsel;

6. The Court approves Service Awards of $5,000 to each of Ashly Alexander, Cedric Bishop, Amy Thomas-Lawson, William Green, Brenda Boley, Miguel Padilla, and Victoria Dawkins;

7. Without affecting the finality of the Court's judgment in any way, the Court retains jurisdiction over this matter for purposes of resolving issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement;

8. Based on the foregoing, the Court sets the following schedule should no appeal be taken by no person:

| | |
|---|---|
| Settlement Effective Date | 12/12/2022 |
| Settlement Administrator shall calculate the Net Settlement Fund | 12/27/2022 |
| Settlement Administrator shall pay by wire any Fee and Expense Award and Service Awards approved by Court | 12/27/2022 |
| Settlement Administrator shall send Class Counsel final list of each Settlement Class | 12/27/2022 |

| | |
|---|---|
| Member, their percentage of the Net Settlement Fund, and their payment amount | |
| Settlement Administrator shall email Class Members allowing them to select digital payment method and informing them if they do not, their payment will be received via check | 12/27/2022 |
| Settlement Administrator shall effectuate payments for Class Members who selected digital payment option and mail checks to Class Members who did not select the digital payment option | 1/11/2023 |
| Settlement Administrator shall void individual, uncashed checks | 4/11/2023 |
| Settlement Administrator shall effectuate a secondary distribution or administer remaining funds to NeighborWorks America and the Maryland Consumer Rights Coalition | 7/10/2023 |

9.   This Action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: __NOVEMBER 10, 2022__

_____
Hon. Richard D. Bennett
United States District Judge